**EXHIBIT "A"**

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made and entered into as of June 22, 2020, by and among the following "Parties":  (a) Rochester Drug Co-Operative, Inc., as the debtor and debtor in possession in the Chapter 11 Case described below (the "Debtor"); (b) the Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Case described below; (c) Manufacturers and Traders Trust Company ("M&T Bank"); and (d) the United States of America ("USA"), acting through the United States Department of Justice ("DOJ"), on behalf of the Drug Enforcement Agency ("DEA").

# RECITALS

WHEREAS, on March 12, 2020 (the "Petition Date"), the Debtor commenced a chapter 11 case (the "Chapter 11 Case") under title 11 of the United States Code (the "Bankruptcy Code") that are presently pending in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court").

WHEREAS, the Debtor is the borrower under that certain Amended and Restated Credit Facility Agreement, dated as of December 10, 2014 (as amended, restated, supplemented or otherwise modified, the "Credit Agreement"), with the lenders from time to time party thereto and M&T Bank, in its capacities as administrative agent for the lenders, arranger, swingline lender and letter of credit issuer.

WHEREAS, the obligations under the Credit Agreement are secured by valid and perfected liens on substantially all of the Debtor's assets, including the Debtor's equipment, furnishings, inventory, receivables, cash and the Debtor's distribution facility located at 116-117 Lehigh Drive #3013, Fairfield, New Jersey (the "Fairfield Facility") and the Debtor's headquarters and operating distribution center located at 50 Jet View Drive, Rochester, New York (the "Rochester Facility").

WHEREAS, on April 22, 2019, the Debtor (i) entered into a Deferred Prosecution Agreement ("DPA") with the Criminal Division of the United States Attorney's Office for the Southern District of New York ("USAO") in connection with a three-count Information charging the Debtor with conspiracy and knowingly failing to furnish suspicious order reports to the DEA in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq. ("CSA") and (ii) executed a Stipulation and Order of Settlement and Dismissal with the Civil Division of the USAO resolving related civil violations of the CSA (the "Civil Stipulation").

WHEREAS, under the terms of the DPA and the Civil Stipulation, the Debtor agreed to pay the USA $20 million (the "Forfeiture Amount"), which represents a substitute *res* for moneys furnished to RDC in exchange for controlled substances.  The DPA also includes certain compliance and monitoring obligations of the Debtor concerning controlled substances.

WHEREAS, the Debtor breached the DPA and Civil Stipulation by failing to timely pay certain installments of the Forfeiture Amount prior to the Petition Date.

WHEREAS, the USA asserts that (i) the DPA is binding on any purchaser of, or successor-in-interest to, the Debtor's assets or operations and (ii) the USA may assert civil

3567639.1

Case 2-20-20230-PRW,    Doc 436-1,    Filed 06/24/20,    Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 2 of 11

forfeiture actions under 21 U.S.C. § 881 against the Fairfield Facility and the Rochester Facility as a result of the Debtor's violation of the DPA.

WHEREAS, on the Petition Date, the Debtor filed the *Debtor's Motion for Entry of an Order: (I) Authorizing the Debtor to use Cash Collateral on an Interim Basis; (II) Granting Adequate Protection pursuant to 11 U.S.C. §§ 105, 361 And 363; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Cash Collateral Motion") [Docket Nos. 19 and 73].

WHEREAS, the Bankruptcy Court entered two interim cash collateral orders (together, the "Interim Cash Collateral Orders") [Docket Nos. 31 and 157] and a final cash collateral order (the "Final Cash Collateral Order" [Docket No. 235], and together with the Interim Cash Collateral Orders, the "Cash Collateral Orders").

WHEREAS, pursuant to the Cash Collateral Orders, among other things, M&T Bank consented to the Debtor's use of its cash collateral to fund the costs and expenses of administering the Chapter 11 Case, and M&T Bank was granted superpriority administrative claims (the "Superpriority Claims") and adequate protection liens (the "Adequate Protection Liens") on substantially all of the Debtor's assets to protect against any diminution in value of its prepetition collateral.

WHEREAS, on March 30, 2020, the Debtor filed a motion seeking approval of bidding procedures for the sale of substantially all of the Debtor's assets [Docket No. 106] ( the "Initial Sale Motion").

WHEREAS, on April 7, 2020, the Office of the United States Trustee for the Western District of New York appointed the Committee [Docket Nos. 138 and 141].

WHEREAS, the USA [Docket No. 145] and the Committee [Docket No. 161] filed a reservation of rights and an objection, respectively, to the Initial Sale Motion.

WHEREAS, on May 26, 2020, the Debtor filed a motion seeking approval of bidding procedures for the sale of the Fairfield Facility and equipment, including the approval of a stalking horse bid [Docket No. 334] ( the "Fairfield Sale Motion").

WHEREAS, on June 1, 2020, the Debtor filed a letter withdrawing the Initial Sale Motion [Docket No. 374].

WHEREAS, on June 12, 2020, the Debtor entered into an asset purchase agreement for the sale of the Rochester Facility to a stalking horse bidder and the Debtor intends to file a motion seeking approval of bidding procedures for the sale of the Rochester Facility and equipment, including the approval of the stalking horse bid ( the "Rochester Sale Motion").

WHEREAS, contemporaneously herewith, the Parties are negotiating the terms of a plan of liquidation (a "Plan"), pursuant to which the parties are agreeing, among other things, to support an orderly liquidation of the Debtor's remaining assets and the satisfaction of existing debt and other obligations of the Debtor through the creation of the liquidating trust (the "Litigation Trust") on the terms set forth therein.

- 2 -

3567639.1

Case 2-20-20230-PRW, Doc 436-1, Filed 06/24/20, Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 3 of 11

WHEREAS, to avoid the expense and uncertainty of protracted litigation among the Parties regarding, among other things, the validity, priority and extent of M&T Bank's and the USA's asserted liens on and claims to the Debtor's assets, the Parties desire to settle their disputes according to the terms of this Agreement.

**AGREEMENT**

NOW, THEREFORE, after good faith, arms' length, extensive negotiations without collusion, and for good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties agree to the following terms:

1. <u>Effective Date</u>. This Agreement is conditioned upon occurrence of the "<u>Effective Date</u>," which means the first date by which each of the following conditions has occurred:

 (a) this Agreement is executed by each of the Parties; and

 (b) the Bankruptcy Court enters an order approving this Agreement in form and substance acceptable to the Parties, <u>provided</u> that such order has not been stayed.

Within two (2) business days following execution of this Agreement, the Debtor shall file a motion with the Bankruptcy Court (the "<u>9019 Motion</u>"), in a form reasonably satisfactory to all the Parties, requesting approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

2. <u>USA and M&T Bank Distribution Caps</u>.

 (a) The USA hereby agrees that distributions of net sale proceeds received and on claims described in the USA Distributions (as defined below) shall not exceed, in the aggregate, $10 million (the "<u>USA Distribution Cap</u>"). Upon the receipt by the USA of distributions or recoveries totaling $10 million on account of its allowed claims related to the DPA and Civil Stipulation, the USA shall release the remainder, if any, of such allowed claims.

 (b) M&T Bank hereby agrees that principal distributions to M&T Bank's post-petition (including from the Liquidating Trust) shall not exceed, in the aggregate, the M&T Bank revolver and term loan balance as of the Petition Date <u>less</u> $1,800,000 (the "<u>M&T Distribution Cap</u>"). As of June 19, 2020, the Parties agree that the outstanding amount of the M&T Distribution Cap is $19,752,466.87 ($21,552,466.87 less $1,800,000).

 (c) M&T Bank hereby agrees that funds otherwise payable to M&T Bank on account of the $1,800,000 voluntary reduction in its claim set forth in <u>clause (b)</u> above shall be used by the Debtor to fund the KEIP, KERP and Modified CEO Incentive Payment Plan proposed by the Debtor in the amount of $214,050.00, with the balance of $1,585,950 to be used for the benefit of the Debtor's estate.

3. <u>Real Property Waterfall</u>.

 (a) The Parties hereby agree that (i) the Fairfield Facility and the Rochester Facility shall be sold in the Bankruptcy Court pursuant to sales under Section 363 of the

- 3 -

3567639.1

Case 2-20-20230-PRW, Doc 436-1, Filed 06/24/20, Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 4 of 11

Bankruptcy Code (including, without limitation, pursuant to the Fairfield Sale Motion and the Rochester Sale Motion) and (ii) the net proceeds of the sales shall be distributed to M&T Bank and the USA within 10 business days after closing as follows (the "Real Property Waterfall"):

    i. in the case of the Fairfield Facility, (i) first, 100% to M&T Bank until M&T Bank receives $8,250,000; and (ii) second, 50% to M&T Bank and 50% to the USA; and

    ii. in the case of the Rochester Facility, (i) first, 100% to the USA until the USA receives $3,000,000; and (ii) second, 50% to the USA and 50% to M&T Bank.

(b) M&T Bank hereby agrees that it will not credit bid on the Rochester Facility.

4.     M&T Bank Treatment.

(a) In consideration for entering into this Agreement and providing the consideration set forth herein, M&T Bank shall receive the following (collectively, the "M&T Distributions"):

    i. M&T Bank's portion of the Fairfield Facility and Rochester Facility net proceeds pursuant to the Real Property Waterfall;

    ii. on or before June 30, 2020, a distribution from Cash Collateral (as defined in the Final Cash Collateral Order) in the amount of $7,000,000; provided that any cash sweeps by M&T Bank pursuant to the Final Cash Collateral Order between June 15, 2020 and June 30, 2020 shall be credited to such distribution;

    iii. on or before July 31, 2020, a distribution from Cash Collateral in the amount of $200,000;

    iv. on the effective date of the Plan (the "Plan Effective Date"):

        1. $500,000 of Cash Collateral (the "Trust Reserves") will be used for the initial funding of a liquidating trust to be established under the Plan (the "Liquidating Trust");

        2. $500,000 of Cash Collateral will be used the funding of reserves for allowed administrative claims and priority claims under the Plan (the "Claims Reserve"); and

        3. After each of the Claims Reserve and the Trust Reserves are funded, M&T Bank will receive a distribution of Cash Collateral in an amount up to $800,000 (the "Plan Effective Date Distribution");

    v. to the extent there is not sufficient cash on hand on the Plan Effective Date to fund the Liquidating Trust and the Claims Reserve in accordance with

- 4 -

3567639.1

clause (iv) above, M&T Bank hereby agrees that funds otherwise payable to M&T Bank pursuant to the Real Property Waterfall from the Rochester Facility may be used to fund the Claims Reserve;

vi. If there is not sufficient cash on hand to fund the Plan Effective Date Distribution after the Litigation Trust and the Claims Reserve are funded in accordance with clause (iv) above, M&T Bank will receive 100% of cash on hand at the Plan Effective Date and post-confirmation collections by the Liquidating Trust on a rolling basis until M&T Bank receives payments in an amount equal to the Plan Effective Date Distribution;

vii. all cash on hand at the Plan Effective Date in excess of the amounts set forth in clause (iv) above (if any) and all post-confirmation collections by the Liquidating Trust, will be distributed 50% to M&T Bank and 50% to the Liquidating Trust on a rolling basis until either (A) the Liquidating Trust is funded in an aggregate amount of $1,250,000 (in addition to the Trust Reserves) or (B) M&T Bank receives payments in an amount equal to the M&T Distribution Cap (whichever comes first);

viii. once the Liquidating Trust is fully funded in accordance with clause (vii) above, 100% of post-confirmation collections by the Liquidating Trust will be distributed to M&T Bank on a rolling basis until M&T Bank reaches the M&T Distribution Cap;

ix. 100% of post-confirmation collections by the Liquidating Trust received after M&T Bank receives payments in an amount equal to the M&T Distribution Cap shall be paid to the Liquidating Trust; and

x. adequate protection payments and M&T Bank's professional fees shall continue to be paid in accordance with the Final Cash Collateral Order until the M&T Distribution Cap is reached.

(b) In exchange for the foregoing, upon the Effective Date, M&T Bank hereby agrees to waive (i) any deficiency claim after application of the M&T Distributions; and (ii) its Adequate Protection Liens and Superpriority Claim.

5. USA Treatment.

(b) In consideration for entering into the Settlement Agreement and providing the consideration set forth therein, and subject to the USA Distribution Cap, the USA shall receive the following (collectively, the "USA Distributions"):

i. an allowed $10,000,000 civil forfeiture claim which claim shall constitute a substitute *res* for the Fairfield Facility and the Rochester Facility used by the Debtor in connection with the conduct described in the DPA and Civil Stipulation, and shall receive priority treatment based on the USA's forfeiture rights under 21 U.S.C. § 881 pursuant to the Real Property

- 5 -

3567639.1

Case 2-20-20230-PRW, Doc 436-1, Filed 06/24/20, Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 6 of 11

Waterfall, with any deficiency treated *pari passu* with all other allowed, non-subordinated general unsecured claims; and

    ii. an allowed $55,000,000 general unsecured claim on account of civil penalties asserted against the Debtor, which shall (i) be treated *pari passu* with all other general unsecured claims, (ii) not be entitled to priority and (iii) not be subject to subordination or reconsideration.

    (c) In exchange for the foregoing, the USA hereby agrees (i) not file a complaint for forfeiture against either the Fairfield Facility or the Rochester Facility, and the USA's claims related to the DPA and Civil Settlement shall be deemed resolved and (ii) that any non-insider purchaser of the Debtor's assets (including the Fairfield Facility and the Rochester Facility) shall not be liable, obligated, or responsible for any obligations arising under the DPA and the Civil Settlement; provided that the USA reserves all rights to object, if necessary, to a 363 sale for reasons not related to the DPA and the Civil Settlement.

    (d) The Parties agree that the DEA shall be permitted to inspect the Fairfield Facility and the Rochester Facility prior to the closing of any sale to confirm that the Debtor is no longer in possession of, or selling, any Schedule II-V controlled substances, and that such facilities complied with the Controlled Substances Act, including with regard to the sale or disposal of controlled substances that were maintained on such facilities; provided, however, that the DEA shall not request extensions of the sale closing dates beyond the closing dates established under the applicable purchase agreements or orders approving the sales for the purpose of conducing its inspections.

    6.    Plan Support Agreement.

    (a) The Debtor, the Committee and M&T Bank agree to support a Plan consistent with this Agreement (including the milestones set forth below) and M&T Bank agrees to vote its claim(s) (as applicable) to accept the Plan by delivering its duly executed and completed ballot accepting the Plan on a timely basis following the commencement of the solicitation of the Plan.

    (b) The Parties' agreements contained in this Section 6 shall be conditioned on the satisfaction of the following milestones:

    i. no later than August 31, 2020, the Bankruptcy Court shall have entered a confirmation order for the Plan; and

    ii. no later than September 15, 2020, the Plan Effective Date shall have occurred.

The milestones set forth above (i) shall be calculated in accordance with Rule 9006 of the Federal Rules of Bankruptcy Procedure and (ii) may be extended or waived with the prior written consent of each of the Committee, the Debtor and M&T Bank (such consent, in the case of M&T Bank, not to be unreasonably delayed, withheld or conditioned); provided, that M&T Bank, the Debtor and the Committee shall agree to extend the milestones set forth

- 6 -

3567639.1

Case 2-20-20230-PRW, Doc 436-1, Filed 06/24/20, Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 7 of 11

above if and to the extent there is insufficient cash on hand to fund contemplated payments as of the Effective Date.

7. <u>Releases and Bar Order</u>. In addition to, and without limitation of, the releases and other provisions of the Final Cash Collateral Order:

(a) Upon the Effective Date, the Committee and the Debtor and the Debtor's estate, each on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs and assigns, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully, forever waives and releases M&T Bank, and each of M&T Bank's former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys and predecessors in interest of any and all claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights existing as of the Effective Date in any way related in any way to the Debtor or the Secured Obligations, the Prepetition Liens, the Prepetition Collateral or the Loan Documents (as such terms are defined in the Final Cash Collateral Order) or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity (collectively, the "<u>Released Claims</u>"), including, without limitation, any so-called "lender liability," recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or international law and any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or the claims of M&T Bank.

(b) From and after the Effective Date, (i) the Secured Obligations shall constitute allowed claims for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case and (ii) the Secured Obligations, the Prepetition Liens, the Prepetition Collateral, the Loan Documents and M&T Bank shall not be subject to any further challenge and all parties in interest, including any successor thereto (including any estate representative or a chapter 11 or chapter 7 trustee), shall be forever enjoined and barred from seeking to exercise the rights of the Debtor's estate to assert any Released Claim.

8. <u>Party Representations</u>. Each Party hereby represents and warrants that: (a) such Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered by such Party and constitutes the legal, valid, and binding obligations of such Party, enforceable against it in accordance with their respective terms; (d) such Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Party; and (e) such Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

- 7 -

3567639.1

Case 2-20-20230-PRW, Doc 436-1, Filed 06/24/20, Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 8 of 11

9. <u>Continuing Bankruptcy Court Jurisdiction</u>.  The Debtor, M&T Bank and Committee agree that the Bankruptcy Court shall have exclusive jurisdiction over any disputes regarding the validity, interpretation, or performance of this Agreement so long as the Bankruptcy Cases are pending, and the Debtor, M&T Bank and Committee consent to personal jurisdiction and venue in the Bankruptcy Court in connection with any such disputes; <u>provided</u>, <u>however</u>, that if the Bankruptcy Cases are no longer pending, or if the Bankruptcy Court cannot or does not exercise jurisdiction, such jurisdiction and venue shall belong to the federal courts in the Western District of New York.

10. <u>Voluntary Agreement</u>.  Each Party acknowledges that it has read all of the terms of this Agreement, has had an opportunity to consult with counsel of its own choosing, or has voluntarily waived such right and enters into this Agreement voluntarily and without duress.

11. <u>Further Assurances</u>.  Each Party agrees, without further consideration, to execute and deliver such other documents and to take such other action as may be necessary to consummate the purposes of this Agreement.

12. <u>No Admission</u>.  This Agreement is for settlement purposes only and shall not be construed or deemed an admission by any Party to this Agreement of wrongdoing, liability, fault, or the validity of any claims.

13. <u>Valid Provisions Remain Effective</u>.  If any provision in this Agreement shall be invalid, inoperative or unenforceable, the remaining provisions of this Agreement shall remain in effect if both the economic and legal substance of the terms contemplated hereby are not materially affected in any manner adverse to any Party.  Otherwise, the Parties shall negotiate in good faith to rewrite any such provision so as to, as nearly and fairly as possible, approach the economic and legal substance originally intended.

14. <u>Construction</u>. The language used in this Agreement will be deemed to be the language chosen by the Parties to express their mutual intent, and no rule of strict construction will be applied against any Party, nor will any rule of construction that favors a non-draftsman be applied.  A reference to any statute will be deemed also to refer to all rules and regulations promulgated under the statute, unless the context requires otherwise.  Unless specifically otherwise provided or the context otherwise requires, the singular includes the plural and the plural the singular; the word "or" is deemed to include "and/or", the words "including", "includes" and "include" are deemed to be followed by the words "without limitation", and references to sections are to those of this Agreement.  Headings in this Agreement are included for convenience of reference only and do not constitute a part of this Agreement for any other purpose.

15. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement.  Delivery of a signature page to this Agreement by facsimile or other electronic means shall be effective as delivery of the original signature page to this Agreement. The Parties authorize their counsel to sign this Agreement on their behalf.

- 8 -

3567639.1

Case 2-20-20230-PRW, Doc 436-1, Filed 06/24/20, Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 9 of 11

16. <u>Applicable Law</u>.  The validity, interpretation, and performance of this Agreement shall be construed and interpreted according to the laws of the State of New York, except to the extent that (a) provisions of the Bankruptcy Code apply, in which event the Bankruptcy Code shall control, or (b) applicable federal law preempts state law.

17. <u>Entire Agreement</u>.  This document, together with the Final Cash Collateral Order, contains the entire Agreement among the Parties as to the matters addressed herein, and may only be modified in writing signed by the Parties or their duly appointed agents.  All prior agreements and understandings among the Parties concerning the subject matter hereof (other than the Final Cash Collateral Order) are superseded by the terms of this Agreement.

18. <u>Successors and Assigns</u>.  This Agreement shall be binding on and inure to the benefit of the Parties and their respective agents, employees, affiliates, successors, and assigns (including any chapter 11 or chapter 7 trustee hereafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).  In addition, this Agreement shall be binding on any and all representatives of the Debtor's bankruptcy estate, including any chapter 11 or chapter 7 trustee or any party that has or is granted standing to pursue claims or causes of action on behalf of the Debtor's estate.

19. <u>Third Party Beneficiaries</u>.  There are no third party beneficiaries of this Agreement.

20. <u>USA Reservation of Rights</u>.  Except with respect to the terms explicitly set forth herein, nothing in this Agreement shall affect the rights and claims of any federal entity or agency (i) concerning any civil, criminal or administrative liability arising under Title 26 of the United States Code, (ii) concerning any civil, criminal or administrative liability or obligations arising under Titles 18 and 21 of the United States Code or (iii) concerning any civil, criminal or administrative liability under federal environmental laws.  Further, nothing in this Agreement shall preclude or limit the USA from asserting and exercising its setoff rights, if any, and any defenses the Debtor may have thereto will be explicitly preserved.  Amounts set off by the USA may be applied toward, and be counted as part of, the USA Distributions.

21. <u>Notices</u>.  All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when:  (a) delivered by hand (with written confirmation of receipt) or (b) received by the addressee, if sent by email, in each case to the appropriate addresses and representative (if applicable) set forth in the signature page(s) attached hereto (or to such other addresses and representative as a Party may designate by notice to the other Parties in accordance with this paragraph).

[*Remainder of Page Intentionally Left Blank; Signature Pages Follow*]

- 9 -

3567639.1

Case 2-20-20230-PRW,   Doc 436-1,   Filed 06/24/20,   Entered 06/24/20 10:11:50, Description: Exhibit A - Settlement Agreement, Page 10 of 11

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date written in the opening paragraph hereof.

**BOND, SCHOENECK AND KING, PLLC**

By: /s/ Stephen A. Donato
    Stephen A. Donato
    One Lincoln Center
    Syracuse, New York 13202
    Email: sdonato@bsk.com

*Attorneys for the Debtor and Debtor in Possession*

**PACHULSKI STANG ZIEHL & JONES LLP**

By: /s/ Ilan D. Scharf
    Ilan D. Scharf
    780 Third Avenue, 34th Floor
    New York, New York 10017
    Email: ischarf@pszjlaw.com

*Attorneys for the Committee*

**LUSKIN STERN & EISLER LLP**

By: /s/ Michael Luskin
    Michael Luskin
    Eleven Times Square
    New York, New York 10036
    Email: luskin@lsellp.com

*Attorneys for Manufacturers and Traders Trust Company*

**UNITED STATES DEPARTMENT OF JUSTICE**

By: /s/ Mary A. Schmergel
    Mary A. Schmergel
    U.S. Department of Justice
    1100 L Street, NW, Room 7110
    Washington, DC 20005
    Email: mary.schmergel@usdoj.gov

[*Signature Page to Settlement Agreement*]

3567639.1