UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    Rochester Drug Cooperative, Inc.,            Bankruptcy Case No. 20-20230-PRW
                                              Chapter 11

                      Debtor.

_____

**DECISION AND ORDER**
**DENYING MOTION OF MEAD SQUARE PHARMACY, INC. *ET AL.***
**SEEKING RELIEF FROM THE AUTOMATIC STAY**

PAUL R. WARREN, U.S.B.J.

      Mead Square Pharmacy, Inc.[1] has moved for an order lifting the automatic stay, so that it may seek permission to amend its answer, in a state court civil action brought by the Debtor to recover trade debts, to assert a number of counterclaims against the Debtor. Mead Square described the proposed counterclaims as sounding in setoff and recoupment. The motion is opposed by the Debtor and the Creditors' Committee. For the reasons that follow, the motion is, in all respects, **DENIED**.

**I.**

**JURISDICTION**

      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1]     The movants consist of two corporations, Mead Square Pharmacy, Inc. and The Casey Group, LLC, and three individuals, Christopher Casey, Kevin Casey, and Lucia Casey. For simplicity's sake, the movants are collectively referred to as Mead Square.

## II.

## ISSUES

The initial question presented is whether Mead Square has demonstrated cause to lift the automatic stay, under 11 U.S.C. § 362(d)(1), to allow Mead Square to seek leave, from the state trial court, to amend its answer to assert counterclaims against the Debtor—described by Mead Square as simple setoff counterclaims (but more accurately described as counterclaims arising out of alleged criminal misconduct by the Debtor). The answer is no.

Assuming for the sake of argument that Mead Square has demonstrated cause to lift the automatic stay, the corollary question is whether application of the factors established by the Second Circuit weigh in favor of lifting the automatic stay. The answer to this question is also no.

## III.

## FACTS

This Chapter 11 case was filed on March 12, 2020, for the purpose of winding-down the Debtor's operations and liquidating its assets. (ECF Nos. 1, 8 ¶¶ 43-44). Shortly before filing its Chapter 11 petition, the Debtor commenced an action against Mead Square in the Monroe County Supreme Court, to collect sizeable trade debts allegedly owed to the Debtor. (ECF No. 411, Ex. A). After the state court complaint was served, but before Mead Square filed its answer, this Chapter 11 case was filed.[2] Mead Square attempted (post-petition) to serve its answer, including counterclaims, to the Debtor's state court complaint, but that answer was rejected by the Debtor

---

[2]     The Chapter 11 case is moving on a fairly fast track. By Order entered June 15, 2020, the Court established a claims bar date. (ECF No. 401). The bar date for filing proofs of claim by unsecured creditors is July 31, 2020.

as being in violation of the automatic stay, because it included counterclaims. (ECF No. 411 ¶ 12 & Ex. B). As a result, Mead Square filed its answer, without counterclaims. (*Id.* ¶ 15, Ex. C).

Mead Square now moves to lift the automatic stay, so that it can seek leave in the state court to amend its answer to assert counterclaims against the Debtor. (ECF No. 411). The proposed counterclaims are repeatedly and generically described by Mead Square as sounding in "off-set and recoupment." (*Id.* ¶¶ 16, 17). Painting with a very broad brush, Mead Square asserts in its motion that it merely seeks "to offset a mutual debt" between the parties. (*Id.* at 1). But, a more forthcoming description of the proposed counterclaims is provided in Mead Square's supporting memorandum of law:

> Debtor's criminal conduct, which was concealed from its shareholders/members thereby preventing them from securing adequate supply chain replacements, has placed Movants and other similarly situated independent pharmacies in peril of financial disaster. . . . Movants seek to plead counterclaims against Debtor alleging breach of implied contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and fraudulent inducement.

(ECF No. 411-1, at 5). Mead Square correctly acknowledges that it bears the burden of proving the existence of the elements necessary to assert a setoff claim, absent which cause has not been demonstrated and the stay should not be lifted. (*Id.* at 8).

The Debtor opposes the motion, arguing that Mead Square has not carried its burden of proving mutuality of claims—a necessary element to any setoff—and, therefore, has failed to show cause necessary to lift the stay under § 362(d)(1). (ECF No. 480 ¶¶ 15-18). Alternatively, the Debtor argues that the factors established by the Second Circuit in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990) weigh in favor of not lifting the stay. (*Id.* ¶¶ 30-36). The Creditors' Committee also opposes the motion, arguing that the proposed counterclaims are claims for intentional torts unrelated to the state court complaint, and that those tort claims—alleging breach of fiduciary duty—are derivative

3

claims that belong to the Debtor's Estate, not the Mead Square movants. (ECF No. 485 ¶¶ 9-12, 17). The Committee asserts that Mead Square has failed to meet its burden of showing cause necessary to obtain stay relief under § 362(d)(1). Additionally, the Committee also argues that application of the Second Circuit's *Sonnax* factors weighs heavily in favor of denial of the Mead Square motion. (*Id.* ¶¶ 18-37).

By Case Management Order entered July 13, 2020, the Court deemed submissions closed and took the motion under advisement, without the need for oral argument. (ECF No. 490). This Decision is issued well within the time period established by § 362(e)(1) of the Code.

## IV.

## DISCUSSION

### A. Mead Square Has Failed to Show Cause Necessary to Lift the Automatic Stay Under § 362(d)(1)

As an initial matter, it is unnecessary for a Court to consider the *Sonnax* factors unless and until Mead Square has carried its initial burden of proof of demonstrating cause to lift the stay. *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010). It is well-settled that "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax*, 907 F.2d at 1285. Here, Mead Square acknowledges that, in order to demonstrate that cause exists to lift the stay, it must prove that it has mutual claims to setoff in the state court action. (ECF No. 411-1 at 8). But, beyond simply parroting the legal standard necessary to asset a setoff claim, Mead Square makes no effort to prove that mutuality of claims exists—a necessary element to a setoff claim.

4

It is not enough to simply state that the Debtor owes Mead Square a debt that arose prepetition. And, that's all that Mead Square offers. "[T]he debt and claim must be mutual." *In re Cairns & Assocs.*, 372 B.R. 637, 660 (Bankr. S.D.N.Y. 2007). For mutuality to exist, the claims or debts must be owed "between the same parties in the same right or capacity." *In re Ionosphere Clubs, Inc.*, 164 B.R. 839, 843 (Bankr. S.D.N.Y. 1994). *See also In re Bennett Funding Grp.*, 146 F.3d 136, 139 (2d Cir. 1998); *In re Cairns*, 372 B.R. at 660 ("mutual debts are due to and from the same person in the same capacity") *quoting In re Sentinel Prods. Corp., P.I., Inc.*, 192 B.R. 41, 45 (N.D.N.Y. 1996) (internal quotation marks omitted)).

"[The] allowance of a setoff is a decision that lies within the sound discretion of the bankruptcy court." *In re Bennett Funding*, 146 F.3d at 140 (citing *In re Ionosphere*, 164 B.R. at 841). And, setoff must be scrutinized in light of the goals and objectives of the Bankruptcy Code. (*Id.*). "In general, the Bankruptcy Code is oriented toward the prevention of preferential treatment of creditors." *In re Ionosphere*, 164 B.R. at 843 (citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941)). To ensure equality of treatment of the holders of unsecured claims, the requirement of mutuality has been narrowly interpreted by the courts, to "ensure[] that setoff is allowed only in situations in which the equitable considerations are strongest: namely where the claims or debts are owed *between the same parties in the same right or capacity*." *In re Ionosphere*, 164 B.R. at 843 (emphasis added).

Here, the Court holds that the necessary element of mutuality of claims is not present. First, the movants consist of two separate corporations and three individuals. The alleged claims of the individual movants are separate and distinct from the claims of the corporate movants. And, the claims of the five movants, *inter se*, are also separate and distinct from each other. The five movants each stand in different rights and capacities *vis-à-vis* the Debtor.

5

Further, as the Committee observes, the counterclaims that Mead Square proposes to bring against the Debtor in state court are derivative claims that belong to the Estate. (ECF No. 485 ¶ 12). In describing those counterclaims, Mead Square acknowledges as much: "*Debtor owed and owes a fiduciary duty to its shareholder members*, which it violated by maintaining . . . that it was in compliance with state and federal laws, rules and regulations, while it, and its CEO and COO were being investigated for, and ultimately charged with a number of crimes." (ECF No. 411 ¶ 10 (emphasis added)). Any claims for breach of fiduciary duty or mismanagement against the Debtor or its management are property of the Estate, to be pursued by the Committee on behalf of all unsecured creditors—if at all. To the extent Mead Square has claims that are not derivative, those claims can be litigated in this Court.

Mead Square has failed to carry its threshold burden to show cause exists to lift the automatic stay under § 362(d)(1). Having failed to make an initial showing of cause, the motion of Mead Square is **DENIED**.

**B.  In the Alternative, Application of the *Sonnax* Factors Weigh in Favor of Denying Stay Relief**

Even if the Court has been led down the primrose path, in finding that Mead Square has failed to establish cause to lift the stay under § 362(d)(1), application of the relevant *Sonnax* factors convinces the Court, in the exercise of its discretion, that stay relief should not be granted.

The Second Circuit has identified twelve factors for the bankruptcy courts to consider in determining whether to lift the automatic stay. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The *Sonnax* factors are:

(1)  whether relief would result in a partial or complete resolution of the issues;
(2)  lack of any connection with or interference with the bankruptcy case;
(3)  whether the other proceeding involves the debtor as a fiduciary;
(4)  whether a specialized tribunal with the necessary expertise has been established to hear the cause of action

6

(5)      whether the debtor's insurer has assumed full responsibility for defending it;

(6)      whether the action primarily involves third parties;

(7)      whether the litigation in another forum would prejudice the interests of other creditors;

(8)      whether the judgment claims arising from the other action is subject to equitable subordination;

(9)      whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)    the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)    whether the parties are ready for trial in the other proceeding; and

(12)    impact of the stay on the parties and the balance of harms.

*Id.* at 1286.

The Second Circuit has recognized that the courts need not consider all twelve factors in every case—only those factors relevant to the case need be considered. *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). And, the Court need not assign equal weight to those factors deemed to be applicable. *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (S.D.N.Y. 1994) (quoting *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)).

Of course, the Court need only concern itself with the *Sonnax* factors if the movant has carried its threshold burden of demonstrating cause under § 362(d)(1) of the Code. Here, the Court has found that Mead Square has failed to carry its burden to show cause to lift the automatic stay—by proving it has the right to assert a setoff counterclaim. While the discussion can be ended at that point, the Court will consider the relevant *Sonnax* factors, to provide an alternative basis for denying Mead Square relief from the automatic stay.

7

## 1. *Whether Relief Would Result in Partial or Complete Resolution of Issues*

This factor weighs heavily in favor of denial of the motion. To the extent there exist viable intentional tort claims for corporate waste and mismanagement, those claims are Estate assets, over which this Court has exclusive jurisdiction. *See Gen. Growth Props.*, 426 B.R. 71, 76 (Bankr. S.D.N.Y. 2010); 5 *Collier on Bankruptcy* ¶ 541.07[5] (Richard Levin & Henry J. Sommer eds., 16th ed.). At best, the state court could provide only partial resolution of the issues.

## 2. *Lack of Any Connection with or Interference with the Bankruptcy Case*

This factor also weights heavily in favor of denial of the motion. As described by Mead Square in the motion, the proposed counterclaims involve Estate assets and, as such, those claims are not Mead Square's to advance. (ECF No. 411-1 at 9). As the Committee correctly argues, if Mead Square holds claims not involving assets of the Estate, those claims must be asserted in a proof of claim, to be determined by this Court through the claims allowance process. (ECF No. 485 ¶¶ 23-24).

## 3. *Whether the Other Proceeding Involves the Debtor as a Fiduciary*

This factor, while relied on heavily by Mead Square, is not relevant or, if relevant, is entitled to very little weight. If claims exist against the Debtor and its management for breach of fiduciary duty, those claims are not Mead Square's to assert.

## 4. *Whether a Specialized Tribunal with the Necessary Expertise Has Been Established to Hear the Cause of Action*

This factor weighs in favor of denial of the motion. That state court is not a specialized tribunal established to resolve the causes of action described in the motion. Mead Square can adjudicate its claims for setoff and recoupment before this Court, as part of the proof of claim review process. Despite the effort of Mead Square to create the

8

impression that, absent the ability to assert counterclaims in the state court collection action, it is being deprived of the ability to defend itself. Mead Square can assert its "counterclaims" in a proof of claim filed in this Court.

### 5. *Whether the Debtor's Insurer Has Assumed Full Responsibility for a Defense*

This factor is not relevant.

### 6. *Whether the Action Primarily Involves Third Parties*

This factor weighs in favor of denial of the motion. The state court action does not primarily involve third parties.

### 7. *Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors*

This factor weighs heavily in favor of denial of the motion. Claims for breach of fiduciary duty and corporate mismanagement are Estate property under § 541 of the Code. Only a Chapter 11 trustee or committee can prosecute such claims, for the benefit of all unsecured creditors—not for the benefit of the first creditor to reach the courthouse. Mead Square proposes to prosecute those claims for its sole benefit, to the detriment of the other unsecured creditors. Additionally, allowing Mead Square to assert an offset counterclaim in the state court collection action would enable Mead Square to reduce its liability to the Debtor in whole dollars (and in short order), while other unsecured creditors with claims against the Debtor would be left to recover only pennies on the dollar (realized over a long period, if at all, under a Chapter 11 Plan). That would afford Mead Square a decided advantage over other unsecured creditors.

9

**8.** ***Whether the Judgment Claim from the Other Action Is Subject to Equitable Subordination***

To the extent that this factor is relevant, it weighs in favor of denial of the motion. To the extent the movants recovered a judgment in state court in their capacity as shareholders, that judgment may be subject to equitable subordination under § 510 of the Code. If that issue becomes relevant, it is the Court's province to hear and determine that issue.

**9.** ***Whether the Movant's Success in the Other Proceeding Would Result in a Judicial Lien Avoidable by the Debtor***

This factor is of no concern here.

**10.** ***There Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation***

This factor weighs in favor of denying the motion. This Court can best provide an expeditious resolution of the movants' claims for setoff and recoupment, through the proof of claim review process. Those claims have not yet been asserted in either the state court or this Court. So, there is no reason to believe the assertion by Mead Square that the state court action is likely to proceed more expeditiously, than will the claims review proceedings in this Court. The claims review process is streamlined and likely to outpace the state court litigation.

**11.** ***Whether the Parties Are Ready for Trial in the Other Proceeding***

This factor weighs in favor of denial of the motion. The state court action is in its infancy. It appears that discovery has not yet begun. It is a fair guess that trial of the state court action is a long way off.

**12.** ***The Impact of the Stay on the Parties and the Balance of Harms***

This final factor also weighs in favor of denial of the motion. Mead Square complains that the Debtor is hiding behind the automatic stay, while also using the stay as a sword. (ECF No.

411-1 at 10). Not so. If Mead Square wishes to assert claims for setoff and recoupment, this Court provides the forum to resolve those claims. The balance of harms tips in favor of the Debtor, because lifting the stay would force the Estate to incur the expense of seeking dismissal of the proposed counterclaims in state court, so that those claims can be adjudicated by the Committee in this Court.

Taken as a whole, the relevant *Sonnax* factors all weigh in favor of denial of the motion to lift stay. The notion that Mead Square is being made to defend itself in state court, while being disadvantaged by not being permitted to assert unrelated counterclaims, does not survive scrutiny. The proposed claims can be litigated by Mead Square in this Court, in connection with the claims review process. In the exercise of its discretion, after application of the relevant *Sonnax* factors, the Court declines to grant relief from the automatic stay.

## V.

## CONCLUSION

Based upon the foregoing alternative holdings, the motion of Mead Square is, in all respects, **DENIED**.

*It should be noted by Mead Square that the Court has set a claims bar date in this case. That bar date is July 31, 2020. It is incumbent on Mead Square to be guided accordingly.*

**IT IS SO ORDERED.**

DATED: July 22, 2020      _____/s/_____
       Rochester, New York      HON. PAUL R. WARREN
                      United States Bankruptcy Judge