**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| ROCHESTER DRUG CO-OPERATIVE, INC., | Case No. 20-20230 (PRW) |
| Debtor. | |

## OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (1) MOTION OF ECHO DRUGS, INC. FOR RELIEF FROM THE AUTOMATIC STAY AND (2) MOTION OF NELROY DRUGS, INC. *ET AL* TO RECONSIDER ORDER DENYING RELIEF FROM THE AUTOMATIC STAY

The Official Committee of Unsecured Creditors (the "**Committee**") of Rochester Drug Co-Operative, Inc., the above-captioned Debtor, hereby submits an omnibus objection (the "**Objection**") to the *Motion for Relief From the Automatic Stay to the Extent Necessary to Assert All Mutual Debt Related Counterclaims and Defenses in the Kindgs County, New York State Supreme Court Collection Action* [Docket No. 772] ("**Stay Motion**") filed by Echo Drugs, Inc. ("**Echo Drugs**") and the *Motion to Reconsider Order Denying Modifying the Automatic Stay to Assert All Affirmative Defenses, Including, But Not Limited to Set-off* [Docket No. 797] ("**Reconsideration Motion**") filed by Nelroy Drugs Inc. d/b/a Medicine Cabinet Pharmacy, Haljay Drug Co., Inc. d/b/a Conrad's Pharmacy, Smithtown Prescription Center, Inc. d/b/a Smithtown Prescription Center, Joy Drugs Inc. d/b/a East Hills Pharmacy, F.G.L. Drug Corp. d/b/a Nordon Drug, Sarit Roy, Aliance Nelson, and Saurav Chatterjee (collectively, the "**Roy Defendants**") (Echo Drugs and the Roy Defendants, collectively, the "**Defendants**"). In support of its Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.     This Court has previously addressed creditor stay motions seeking relief from the automatic stay to assert affirmative defenses and/or counterclaims against the Debtor in pending

state and federal court litigation. *See, e.g.,* Docket Nos. 411, 432, 443, and 664. In each instance, based on the facts presented, the Court denied relief from stay. The Stay Motion filed by Echo Drugs and the Reconsideration Motion filed by the Roy Defendants are no different and should be denied.

2.      While it is unusual to file an omnibus objection to a relief from stay motion and a reconsideration motion filed by different parties, the Committee believes that the Defendants have raised the same fundamental complaints and legal relief should be denied on the same grounds. Specifically, the Defendants have not, and cannot, demonstrate a legal basis for setoff vis a vis the pharmaceutical goods purchased for which they owe money to the Debtor, on the one hand, and their alleged right or entitlement to receive patronage dividends from the Debtor from the years 2018 forward arising from a declaration of profits by the Debtor's board of directors, on the other hand. The debts are not mutual because they are not in the same right, between the same parties, or standing in the same capacity. In the interest of judicial economy and to avoid repetition, the Committee submits this single omnibus Objection.

3.      Echo Drugs seeks relief from the automatic stay to "seek permission from the State Court to amend its Answer to include Counterclaims of setoff and recoupment against the Debtor." Stay Motion, p. 4 of 15. Echo Drugs is a defendant in litigation pending before the New York Supreme Court, County of Kings (the "**State Court Action**"), for goods sold and delivered by the Debtor. Echo Drugs has not identified its proposed counterclaims in the State Court Action, but they evidently would be based on Echo Drugs' status as a shareholder of the Debtor and its expectation of annual patronage dividends from the Debtor. The Stay Motion should be denied because 362(a)(7) expressly stays any setoff, and Echo Drugs fails to

DOCS_SF:104256.2 75015/002

demonstrate cause under section 362(d) to prosecute any alleged counterclaims for setoff against the Debtor.

4.      The Stay Motion should be denied because Echo Drugs fails to demonstrate that mutuality exists for purposes of a setoff of prepetition debts under Bankruptcy Code section 553(a), at the very least because the alleged debts at issue are not owed in the same capacity. On this basis alone, the Court may deny the Stay Motion without further consideration.

5.      Echo Drugs filed a supplemental affidavit [Docket No. 847] in a futile attempt to establish mutuality of debts with respect to goods allegedly returned for which it seeks credit *and* patronage dividends that were not issued. The supplemental affidavit does not establish mutuality under 553(a). Even assuming *arguendo* that Echo Drugs may be entitled to eventually setoff certain mutual debts between the same parties based on a judgment entered in the State Court Action, which Echo Drugs has not demonstrated, the *Sonnax* factors weigh against granting relief from stay. Echo Drugs has filed two proofs of claim against the Debtor for alleged dividends owed to Echo Drugs. First, the Committee disputes that Echo Drugs is entitled to any dividends absent approval by the Debtor's board of directors and/or because the Debtor was insolvent. Second, an alleged setoff does not require resolution by the State Court, and any determination regarding mutuality of debts under section 553 should be resolved by this Court. The commencement of new and unrelated counterclaims would diminish estate assets, thwart judicial economy, and otherwise delay the State Court Action.

6.      Separately, the Nelroy Defendants seek reconsideration of the Court's order denying relief from stay [Docket No. 743] pursuant to Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure ("Rule") 60(b)(1) on the grounds that the Court made a "mistake." There was no mistake, factually or legally. The Nelroy Defendants' contentions

amount to re-argument and the affidavits of Richard Cullen and Sarit Roy do not support reconsideration of the existing order.

## RELEVANT BACKGROUND

### A.     The Bankruptcy Case

7.      On March 12, 2020 (the "**Petition Date**"), the Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtor is authorized to continue to operate its business and remain in possession of its property as a debtor in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.  The Debtor is a distributor of pharmaceutical drugs that is owned and directed by approximately 307 stockholding pharmacists and pharmacies.  The Debtor is winding up its operations through the Chapter 11 Case.

8.      On March 27, 2020, the Debtor filed Amended Schedules and a Statement of Financial Affairs [Docket No. 105] ("**Schedules**" and "**SOFA**," respectively).  Echo Drugs is identified on the Schedules' List of Equity Security Holders as a common shareholder.

9.      On April 7, 2020, the United States Trustee for Region 2 appointed the Committee pursuant to section 1102 of the Bankruptcy Code.  *See Appointment of Creditors' Committee* [Docket No. 138].  The Committee consists of five unsecured creditors of the Debtor.

10.      Echo Drugs filed two proofs of claim against the Debtor for alleged general unsecured obligations.  On June 12, 2020, Echo Drugs filed Claim Number 154 in the unsecured amount of $800,000 for alleged "dividends and payments due on shares held in debtor," which it contends is subject to a right of setoff based on the Debtor's disputed claim against the creditor. On July 30, 2020, Echo Drugs filed a second claim (not amended, through counsel to the Stay Motion), Claim Number 281 in the unsecured amount of $1,090,681.74 for alleged "unpaid patronage dividends as part of the product sales program."  The proof of claim includes as an

4

attachment the Debtor's Confidential Summary Offering Statement dated May 23, 2016

("**Offering Statement**") (*see* Exhibit 1 to the Debtor's *Objection to Motion for Relief from the Automatic Stay* and Kinney Declaration, Docket No. 480), discussed below. Both proofs of claim seek recovery and/or setoff based on an alleged entitlement to patronage dividends.

B.     **The Stay Motion**

11.     Echo Drug's Stay Motion was initially scheduled for hearing on October 2, 2020, and was continued to October 23, 2020 by Case Management Order [Docket No. 807].

12.     Pursuant to the Affidavit of Lev Rivkin submitted in support of the Stay Motion (Exhibit 4), Echo Drugs asserts that it has been a shareholder since 2010 and received patronage dividends from the Debtor based on the total cost of products purchased each year since becoming a member, but Echo Drugs did not receive dividends in 2017, 2018, and 2019. Mr. Rivkin makes generalized statements to the effect that unidentified employees of the Debtor led him to believe that the Debtor would issue patronage dividends over the last three years, but it did not, and he believes he was "coerced" into continuing to buy product from the Debtor to Echo Drugs' detriment. *See* Stay Motion, Exhibit 4. Echo Drugs submits affidavits by six additional pharmacy entities and a former sales manager of the Debtor that repeat these allegations. *Id.,* Exhibits 5-11.

13.     Records made available to the Committee indicate that the Debtor issued a patronage dividend to its shareholders for the fiscal year ending 2017 in the total amount of $22,132,463, payable as approximately 1.4 percent of each shareholder's total annual purchases. For the 2017 fiscal year, Echo Drugs received a patronage dividend of $372,428. The Debtor's other shareholders, including affiants to the Stay Motion, also received patronage dividends for the fiscal year 2017.

5

14.     Echo Drugs has not described the State Court Action, including, for example when it filed an answer or why it should be allowed to amend its answer at this time to pursue counterclaims against the Debtor pertaining to patronage dividends from 2017 forward.  The Committee understands that the State Court Action was commenced in 2020 by the Debtor for goods sold and delivered, and otherwise has no material information.

15.     On October 15, 2020, Echo Drugs filed a *Supplemental Affidavit of Lev Rivkin* [Docket No. 847] in support of the Stay Motion.  Mr. Rivkin belatedly seeks to establish mutuality of obligations with respect to Echo Drugs' debts for goods sold and delivered and (a) credits for goods allegedly returned to the Debtor, and (b) patronage dividends allegedly owed by the Debtor.  Exhibit A to the affidavit is a series of credit requests and Exhibit B is an account statement reflecting unpaid invoices.  Mr. Rivkin claims that the same invoices appear on each and, therefore, "there is a clear mutuality of debt."  Supp. Rivkin Aff., ¶ 8.  The record is not in the least bit clear as to mutuality.  Even assuming a particular invoice was the subject of specified credit requests (Exhibit A), the outstanding accounts receivable statement reflects the balance owed on the specified invoices (Exhibit B) and there is no evidence that Echo Drugs was not credited or that it is entitled to a mutual setoff.[1]  Echo Drugs' purported right of setoff threatens to cause delay and confusion, and to prejudice other creditors if a state court judge is granted authority to decide the issue inconsistent with bankruptcy standards.

16.     Mr. Rivkin attaches a page from the Debtor's Offering Statement as Exhibit C to his supplemental affidavit to additionally argue that the Debtor could setoff customer receivables against shareholder patronage dividends.  Supp. Rivkin Aff., ¶ 9.  For reasons discussed below,

---

[1] For example,  viewing the most legible credit request at Exhibit A, p. 6 of 7 [Dkt. 847], there are three requested credits pertaining to Invoice Nos. 3532517, 3532616, and 3532617, all dated January 24, 2020, in the amounts of $414.68, $5,309.39, and $449.24, respectively.  The same three invoices are the subject of outstanding receivables (*id.,* Exhibit B, p. 4 of 5), but there is no apparent overlap or relationship to the credits requested.  The dollar amounts are not the same and there are no product descriptions.

the Committee disputes that Echo Drugs, as a shareholder, is entitled to any patronage dividends and any determination regarding mutuality of debts under section 553 should be resolved by this Court as part of the claims resolution process and consistent with its treatment of similarly situated shareholders.

### C.      The Reconsideration Motion

17.      The Nelroy Defendants filed a motion for relief from stay on August 24, 2020 [Docket No. 664], seeking permission to pursue an amended answer in state court, including alleged affirmative defenses purportedly for "setoff."  Like Echo Drugs, the Nelroy Defendants argued, then and now, that they detrimentally relied on alleged implied promises of rebates and historical patronage dividends from the Debtor and should be permitted to setoff alleged damages against accounts payable owed to the Debtor.  The Court denied relief from stay on September 11, 2020 [Docket No. 743], following a hearing and oral arguments.  Seventeen days later, on September 28, 2020, the Nelroy Defendants filed their Reconsideration Motion.

18.      By their Reconsideration Motion, the Nelroy Defendants allege that they were "induced… to continue ordering pharmaceuticals from the Debtor under the mistaken impression that the Debtor's revenues would be sufficient to fund the Patronage Dividend Program." Reconsideration Motion, ¶¶ 23-24.  The Nelroy Defendants further allege that the pharmaceutical entities are separate and distinct from other named defendants in the state court action.  *Id., ¶ 25*.  The Nelroy Defendants re-submit an affidavit presented by Echo Drugs and an affidavit by Sarit Roy.  These facts, even assuming they could appropriately be raised at this point, do not alter the mutuality analysis.  The prepetition accounts payable for goods sold and delivered and related personal guarantees are not subject to setoff against anticipated, but undeclared profits payable to shareholders as patronage dividends.

DOCS_SF:104256.2 75015/002

19.     On September 29, 20202, this Court entered a Case Management Order by which it set the Reconsideration Motion for hearing on October 23, 2020 and rescheduled Echo Drugs' Stay Motion for the same date.  *See* Docket No. 807.

## LEGAL ARGUMENT

**A.     Stay Relief Should Be Denied Because Echo Drugs
          Fails to Demonstrate Cause Under Bankruptcy Code Section 362(d).**

20.     Pursuant to Bankruptcy Code section 362(a), the filing of a bankruptcy petition operates as an automatic stay to give a debtor a short respite from creditors' demands, during which a debtor will "have the opportunity to develop and implement plans" to right its financial affairs.  *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002) (citing *In re 160 Bleecker St. Assocs.*, 156 B.R. 405, 411 (S.D.N.Y. 1993)).

21.     In addition to precluding the commencement or continuation of claims against the debtor, the automatic stay expressly prohibits any setoff against the debtor.  Bankr. Code § 362(a)(7) (petition operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title").  *See, e.g., In re Lehman Bros. Inc.,* 458 B.R. 134, 143-44 (Bankr. S.D.N.Y. 2011) (enforcing automatic stay, denying right of setoff, and compelling payment by secured creditor).

22.     The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws."  *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494, 503 (1986).  The purpose of the automatic stay is to allow a debtor to focus its attention on reorganization efforts without the distraction of having to defend against outside litigation.  *CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 32 (S.D.N.Y. 1990).  It maintains the status quo to protect a debtor's ability to control the sale or other disposition of property of the estate.  COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2020).  Additionally,

the automatic stay prevents the state-law "race to the courthouse," and is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).

23.     In general, relief from the stay may be granted after notice and a hearing, among other reasons, "for cause." 11 U.S.C. § 362(d)(1). The party seeking to lift or modify the automatic stay bears the initial burden to show cause as to why the stay should be modified or lifted and "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (hereafter, "*Sonnax*"). Only after the movant has shown cause, must the party opposing the motion show that it is entitled to the continuing protections of the automatic stay in order to defeat the motion. *See In re Enron*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004) (citing *In re M.J. & K. Co.*, 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993)); *see also In re RCM Global*, 200 B.R. 514, 526 (Bankr. S.D.N.Y. 1996). Absent such initial showing, therefore, relief from the effect of a stay will be denied. *Bogdanovich*, 292 F.3d at 110 (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999)).

24.     The burden of demonstrating "cause" for relief from stay to prosecute an unsecured claim is especially heavy, and relief should not be granted absent extraordinary circumstances:

> If the movant is an unsecured creditor, the policies of the automatic stay weigh against granting the relief requested. **The general rule is that**

9

> **claims that are not viewed as secured in the context of § 362(d)(1)
> should not be granted relief from the stay unless extraordinary
> circumstances are established to justify such relief.**

*In re Residential Capital, LLC,* 501 B.R. 624, 643-44 (Bankr. S.D.N.Y. 2013) (emphasis added;

citing *In re Leibowitz,* 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992). *See also In re Breitburn*

*Energy LP,* 571 B.R. 59, 65 and 68-69 (Bankr. S.D.N.Y. 2017) (describing burden as "especially

heavy," requiring extraordinary circumstances "lest the unsecured creditor receive a distributive

advantage contrary to the principle of equality of distribution;" relief from stay to assert

unsecured tort claims denied).

25.     Here, Echo Drugs complains that it will lose money if it cannot pursue dollar-for-

dollar counterclaims against the Debtor in the State Court Action.  Stay Motion, ¶ 17.  Echo

Drugs fails to articulate any cause, let alone extraordinary circumstances, that would or should

take their counterclaims outside of the claim resolution process established under the Bankruptcy

Code.  *See In re Residential Capital, LLC,* 501 B.R. at 644 (relief from stay to prosecute pending

appeal denied; "[Movant] must be treated as any other unsecured creditors and litigate his claims

in this Court along with the Debtors' other similarly situated creditors.").  Notwithstanding

statements by Echo Drugs that it seeks to assert "mutual debt counterclaims of setoff and

recoupment" (Stay Motion, ¶ 17), the debts are not mutual or subject to setoff and recoupment

and there is no showing of such.  While Echo Drugs may ultimately be entitled to a setoff for

certain goods returned, which it has not demonstrated by the Supplemental Rivkin Affidavit, the

Committee believes that the argument is a pretext to raise the alleged grievance that is the focus

of the Stay Motion – namely, that Echo Drugs did not receive patronage dividends for the last

three years for which it seeks a right of setoff against amounts due.  *See* Stay Motion, Exhibit 4

(original affidavit); and proofs of claim nos. 154 and 281.  Echo Drugs' entitlement to patronage

dividends as a shareholder and at the discretion of the Debtor's board of directors is distinct from its trade payable obligations as a customer, and there is no need to assert (let alone resolve) the alleged counterclaims in the State Court Action. Having failed to meet its initial burden to show cause, the Stay Motion should be denied.

**B.** **Stay Relief Should Be Denied Because Echo Drugs**
**Is Not Entitled to Setoff Under Bankruptcy Code Section 553.**

26. Echo Drugs concedes that it is aware of the Court's stated position for denying relief from the automatic stay to Mead Square Pharmacy to raise counterclaims in a state court action. Stay Motion, ¶ 18 (citing *Decision and Order*, Docket No. 542). Echo Drugs continues by arguing that the question before the court (which court?) is the creditor's actual and correct debt. *Id.* In fact, the State Court can and should determine the amount owed by Echo Drugs to Debtor for goods sold and delivered. This Court can and should determine the propriety of Echo Drugs' proofs of claim against the Debtor, including any alleged right of setoff, all of which the Committee disputes. At present, the Stay Motion should be denied because Echo Drugs cannot satisfy the requirements for a setoff of mutual prepetition debts under Bankruptcy Code section 553(a).[2] *See Decision and Order Denying Motions to Lift Stay by Merck & Co., Inc. (et al.) and Novartis to Assert Setoff Claims in Defense of Unrelated Antitrust Class Actions* [Docket No.

---

[2] Bankruptcy Code section 553(a) provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
(1) the claim of such creditor against the debtor is disallowed;
(2) such claim was transferred, by an entity other than the debtor, to such creditor— …; or
(3) the debt owed to the debtor by such creditor was incurred by such creditor—
(A) after 90 days before the date of the filing of the petition;
(B) while the debtor was insolvent; and
(C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

11

549] at p. 7 ("Absent proof of mutuality of claims, the Movants fail to demonstrate a critical element necessary to show that cause exists to justify stay relief.")

27.     A creditor asserting a right of setoff bears the burden of demonstrating a preexisting right of setoff under nonbankruptcy law and its entitlement to setoff in accordance with section 553 of the Bankruptcy Code.  *See generally* COLLIER ON BANKRUPTCY ¶ 553.04 (section 553 does not create a right of setoff, but "preserves certain rights of setoff that exist under nonbankruptcy law"); *Felton v. Noor Staffing Gp., LLC (In re Corporate Res. Servs. Inc.),* 564 B.R. 196, 203-07 (Bankr. S.D.N.Y. 2017) (burden on creditor to establish valid setoff right under state law and satisfaction of requirements of 553); *In re Ionosphere Clubs, Inc.,* 164 B.R. 839, 843 (Bankr. S.D.N.Y. 1994) (same; setoff narrowly construed to prevent preferential treatment of creditors because creditor with right to setoff independent debt effectively receives full payment and is therefore in a preferred position vis a vis other creditors).

28.     Under section 553 of the Bankruptcy Code, setoff is only available when the prepetition obligations between the debtor and the creditor are mutual. *See generally* COLLIER ON BANKRUPTCY ¶ 553.03[3].  Mutuality of obligations, while not defined by the Code, is strictly construed under case law.  *Id.*  "Debts are mutual when the debts and credits are in the same right and are between the same parties, standing in the same capacity.  The proponent of setoff must establish all three elements to prove mutuality."  *Scherling v. Hellman Electric Corp. (In re Westchester Structures, Inc.),* 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995) (citations omitted; summary judgment denied based on questions of fact regarding mutuality).  Mutuality of debts is absent when the parties are not strictly the same.  *Gray v. Rollo,* 85 U.S. 629, 633 (1873) (partnership not the same as partner); *McColley v. Rosenberg (In re Candor Diamond Corp.),* 76

12

B.R. 342, 352 n. 12 (Bankr. S.D.N.Y. 1986) (principal of corporation not the same as corporation); *In re Lehman Bros. Inc.,* 458 B.R. at 136-37 (triangular setoff lacks mutuality).

29.     In the State Court Action, the Debtor is pursuing claims against Echo Drugs (and probably its principal or guarantor) for collection matters.  By its Stay Motion, Echo Drugs seeks to assert counterclaims in the State Court Action for patronage dividends that it allegedly relied upon – i.e., a return of profits from the Debtor irrespective of its solvency, and for alleged credits based on returned goods.  To the extent that the State Court Action involves additional defendants who are not shareholders, the parties are not the same.  The same is true of the Nelroy Defendants (notwithstanding the most recent Roy Affidavit) because the state court defendants are comprised of pharmacy entities and individuals, not all of whom are shareholders.

30.     Furthermore, mutuality is absent where the debts are not in the same capacity or the same right.  *In re Ionosphere Clubs, Inc.,* 164 B.R. at 843 (mutuality narrowly construed; claims or debts must be owed "between the same parties in the same right or capacity"). *See also Gray v. Rollo,* 85 U.S. at 632 ("Courts of equity, following the law, will not allow a setoff of a joint debt against a separate debt, or conversely, of a separate debt against a joint debt; or to state the proposition more generally, they will not allow a setoff of debts accruing in different rights;" internal quotation omitted).

31.     Here, Echo Drugs cannot demonstrate the required elements for setoff with respect to patronage dividends, or how its purported counterclaims for patronage dividends might qualify for setoff under Bankruptcy Code section 553.  What is clear is that Echo Drugs and similarly situated shareholders had no fixed right to a payment of patronage dividends each year.  The Debtor's Offering Statement repeatedly stated that ownership carries a high degree of risk.  *See* Docket No. 480, Kinney Declaration at ¶¶ 9-12 and Offering Statement, Introductory

13

pages ("THIS INVESTMENT INVOLVES A HIGH DEGREE OF RISK."), p. 4, Risk Factors

("THERE ARE SIGNIFICANT RISKS ASSOCIATED WITH AN INVESTMENT IN THE

VOTING COMMON STOCK.").  With respect to the Dividend Policy, the Offering Statement

further provided:

> Approximately 76% of the Company's sales during the fiscal year ended March 31, 2015 were to holders of its Voting Common Stock, which own or operate a licensed pharmacy.  **Shareholders are eligible to receive distributions when, as and if declared by the Board of Directors of the Company**, in amounts related to the shareholder's purchases… **There can be no assurance that funds will be available to pay patronage dividends in any year.**

*Id.,* p. 14 (emphasis added).  Under these circumstances, Echo Drugs' eligibility for patronage

dividends pursuant to its stock ownership is not a right or obligation in the same capacity as its

obligation to pay for pharmaceutical goods pursuant to an invoice or credit agreement.

Accordingly, the debts are not mutual or subject to setoff.

32.    Echo Drugs received a patronage dividend for the fiscal year ending 2017, but it

had no right to receive a patronage dividend in 2018 or 2019.  To the extent that Echo Drugs'

purported counterclaims may arise under a tort theory of promissory estoppel or of alleged

misrepresentations, the counterclaims claims are similarly not subject to setoff against trade

payables under 553 because there is a lack of mutuality.  Echo Drugs should not receive a dollar-

for-dollar reduction of its trade payable liability ahead of other general unsecured creditors based

on unsupported expectations of dividends/profits from the Debtor.

33.    Echo Drugs additionally argues that it should be granted relief from stay to assert

counterclaims for alleged credits and returned goods.  The evidence submitted raises numerous

questions, including whether credits were or were not recognized, and fails to definitively

establish any right of setoff, whether equitable or contractual.  Under these circumstances, Echo

14

Drugs has failed to establish cause to lift the automatic stay. The prospect of unspecified counterclaims in the State Court Action for setoff based on alleged product returns, as distinct from defenses and denial of the common claims, threatens to delay and disrupt the litigation. Echo Drugs should not be granted relief to assert any affirmative claims against the Debtor.

**C.  Reconsideration Should Be Denied Because the Nelroy Defendants Fail to Demonstrate Controlling Decisions or Facts That the Court Overlooked <u>That Might Reasonably Have Altered the Result.</u>**

34.     The standard for granting a motion for reconsideration under Rule 60(b)(1) is strict, as evidenced by the Nelroy Defendants' own citations. Reconsideration Motion, ¶ 17; citing *Banco de Seguros Del Esato v. Mutual Marine Offices, Inc.,* 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002) (reconsideration only appropriate where court overlooks controlling decisions or factual matters that might have altered the result; reconsideration denied); *Nemaizer v. Baker,* 793 F. 2d 58, 61-63 (2d Cir. 1986) (requires showing of exceptional circumstances; moving party failed to demonstrate "mistake, inadvertence, surprise, or excusable neglect" sufficient to afford Rule 60(b)(1) relief). *See also Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'") (citing Wright & Miller, Federal Practice & Procedure; reconsideration denied).

35.     The Nelroy Defendants fail to demonstrate a change of controlling case law or facts that the Court overlooked, much less any that might have altered the decision to deny stay relief. The Nelroy Defendants essentially re-argue many of the facts submitted by Echo Drugs – i.e., that shareholders of the Debtor expected continuing profits and patronage dividends from the Debtor on an annual basis and the shareholders were misled into buying a greater volume of goods and services than the shareholders otherwise would have purchased. These facts and

15

others, which were previously raised, do not establish a legal basis for setoff under Bankruptcy Code section 553 and applicable case law against accounts payable owed to the Debtor.

36.     In addition, the Nelroy Defendants acknowledge that a motion for reconsideration must be timely filed within 14 days after entry of the order from which relief is sought, or the timeframe to appeal a judgment or order.  Reconsideration Motion, p. 7 fn. 1.  The Nelroy Defendants inexplicably state that the motion is timely because the Order "was dated March 21, 2016." *Id.*  The Reconsideration Motion was filed on September 28, 2020, seventeen days after the Court's order was issued and is therefore untimely.

**D.      Stay Relief Should Be Denied Because the *Sonnax* Factors Weigh Strongly Against Echo Drugs' Assertion of Counterclaims for Setoff and Continue to Weigh Against Similar Counterclaims Raised by the Nelroy Defendants.**

37.     In *Sonnax*, the Second Circuit established a set of twelve factors that have become the standard by which courts in this Circuit consider whether to modify the automatic stay.[3]  *See In re Lehman Bros. Holdings Inc.*, 435 B.R. 122, 138 (S.D.N.Y. 2010) ("*Sonnax* . . . is routinely referenced as the leading relief from stay precedent in this Circuit."), *aff'd sub nom. Suncal Cmtys. I LLC v. Lehman Commercial Paper, Inc.*, 402 F. App'x 634 (2d Cir. 2010).  Although the Court in *Sonnax* outlined twelve factors, courts need not consider each factor, but may

---

[3] The *Sonnax* factors are:
      (1) whether relief would result in a partial or complete resolution of the issues;
      (2) lack of any connection with or interference with the bankruptcy case;
      (3) whether the other proceeding involves the debtor as a fiduciary;
      (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
      (5) whether the debtor's insurer has assumed full responsibility for [a defense];
      (6) whether the action primarily involves third parties;
      (7) whether litigation in another forum would prejudice the interests of other creditors;
      (8) whether the judgment claim arising from the other action is subject to equitable subordination;
      (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
      (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
      (11) whether the parties are ready for trial in the other proceeding; and
      (12) [the] impact of the stay on the parties and the balance of harms.
  *Sonnax*, 907 F.2d at 1286.

consider only the factors that are relevant to the particular case. Not every one of these factors will be relevant in every case. *In re Mazzeo*, 167 F.3d at 143. Notably, the *Sonnax* Court itself considered only four of the twelve factors as relevant in that case. *Sonnax*, 907 F.2d at 1286. Additionally, courts need not assign equal weight to each factor, and have discretion in weighing the factors against one another. *RCM Global*, 200 B.R. at 526 ("A court should apply these factors on a case-by-case basis . . . assigning to each factor whatever weight the court feels is appropriate.").

38.     The *Sonnax* factors are only applicable if the moving party satisfies its threshold burden of demonstrating cause to lift the automatic stay. *Sonnax,* 907 F. 2d at 1285; *In re Project Orange Assoc., LLC,* 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citing *Sonnax*; if moving party fails to demonstrate cause, court should deny relief without further inquiry). Even if Echo Drugs could meet its burden of demonstrating cause based on alleged rights of setoff, the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying Echo Drugs' request for relief to assert unspecified counterclaims in the State Court Action.

### (i) Whether Relief Would Result in a Partial or Complete Resolution of the Issues

39.     The first *Sonnax* factor weighs in favor of denial of the Stay Motion. Echo Drugs' counterclaims will not resolve any of the trade payable issues and would merely complicate and delay the State Court Action. As set forth below, the bankruptcy court is in the best position to evaluate the application of section 553 and whether there are, in fact, mutual debts and obligations.

### (ii) Lack of Any Connection with or Interference with the Bankruptcy Case

40.     The second *Sonnax* factor also weighs heavily in favor of denial of the Stay Motion. Echo Drugs' right of setoff, or lack thereof, is a core proceeding. Bankr. Code

§ 157(b)(2)(B) (allowance or disallowance of claims against the estate), (K) (determinations of the validity, extent, or priority of liens), and (O) proceedings affecting the adjustment of the debtor-creditor relationship).  What constitutes mutual debts between the same parties and in the same capacity under section 553 is a mixed question of fact that is best determined by the bankruptcy court.

41.     Here, the Committee disputes that there is a mutuality of obligations (or that the Debtor owed dividends to its shareholders in 2018 and 2019).  Even assuming that Echo Drugs is entitled to a setoff in some amount against an eventual judgment in the State Court Action, the nature of the setoff and dollar amount should be determined by the bankruptcy court.  Echo Drugs should not be permitted to raise counterclaims as alleged setoffs in the State Court Action that are unrelated to the collection claims and would give Echo Drugs preferential treatment over similarly situated unsecured creditors, including, without limitation, other shareholders who had fully paid for goods and services from the Debtor as of the Petition Date.

### (iii) **Whether the Other Proceeding Involves the Debtor as a Fiduciary**

42.     This *Sonnax* factor is inapplicable.

### (iv) **Whether a Specialized Tribunal with the Necessary Expertise Has Been Established to Hear the Cause of Action**

43.     This *Sonnax* factor also supports denial of the Stay Motion.  The New York Supreme Court is properly overseeing the State Court Action.  It is not a "specialized tribunal" that has been established to resolve core issues under bankruptcy law.  In fact, this Court is that specialized tribunal.  Claims against the Debtor for setoff can and should be resolved by the proof of claim process or consistent with the Debtor's Schedules.  *Koken v. Reliance Gp. Holdings, Inc. In re Reliance Gp. Holdings, Inc.)*, 273 B.R. 374, 393 (Bankr. E.D. Pa. 2002), ("a determination of what is property of the estate and concurrently, of what is available for

DOCS_SF:104256.2 75015/002

distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive [i.e. "core"] jurisdiction."); *see also In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *15 (Bankr. S.D.N.Y. Aug. 7, 2012) ("This Court can and does interpret and apply state law to resolve claims through the bankruptcy process.") (citing *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009)).

### (v) Whether the Debtor's Insurer has Assumed Full Responsibility for a Defense

44.     This *Sonnax* factor is not relevant to the Stay Motion.

### (vi) Whether the Action Primarily Involves Third Parties

45.     This *Sonnax* factor weighs in favor of denying the Stay Motion. "Actions which are only remotely related to the case under title 11 or which involve the rights of third parties often will be permitted to proceed in another forum." *Sonnax,* 907 F. 2d at 1886 (citing *Collier*). Echo Drugs acknowledges that the State Court Action does not involve the rights of third parties. Stay Motion, ¶ 30. The fact that the Debtor initiated the State Court Action does not alter the analysis. There is no need to resolve Echo Drugs' alleged counterclaims (which have been raised in filed proofs of claim) in the State Court Action, as opposed to before the bankruptcy court.

### (vii) Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors

46.     Contrary to Echo Drugs' contention, this *Sonnax* factor also weighs in favor of denial of the Stay Motion. Claims for setoff under section 553 should be resolved by the bankruptcy court as part of the claim resolution process. The claim resolution process permits a consistent process and forum among all creditors who may assert setoff claims, and deviation from the process would prejudice the interests of other creditors of the Debtor. In particular, by seeking to offset its trade payable debt in "whole dollars" (Stay Motion, ¶ 31), Echo Drugs is

19

necessarily prejudicing the rights of unsecured creditors who were not indebted to the estate as of the Petition Date. The same may be said of the Nelroy Defendants. Those whole dollars should be available to pay all unsecured creditors, and any alleged claims regarding patronage dividends should be resolved on a uniform basis by the bankruptcy court and not as a recovery available only to Echo Drugs or to the Nelroy Defendants based on their unpaid invoices. *See, e.g., In re Ionosphere Clubs, Inc.,* 164 B.R. at 843 (creditor with setoff right "may effectively receive full payment and is therefore in a preferred position vis a vis other creditors").

    **(viii) Whether the Judgment Claim Arising**
          **From the Other Action Is Subject to Equitable Subordination**

47.    This *Sonnax* factor is not relevant to the Stay Motion.

    **(ix) Whether the Movant's Success in the**
          **Other Proceeding Would Result in a Judicial Lien Avoidable by the Debtor**

48.    This *Sonnax* factor is not relevant to the Stay Motion.

    **(x) The Interests of Judicial Economy and the**
          **Expeditious and Economical Resolution of Litigation**

49.    This *Sonnax* factor weighs heavily against the relief sought in the Stay Motion. Echo Drugs admits that amendment of its answer in the State Court Action to assert counterclaims would cause some delay. Stay Motion, ¶ 34. The fact that plaintiff's counsel expects to move for summary judgment in the immediate future (*id.*) supports continuation of streamlined litigation without unnecessary competing claims that can and should be resolved by the bankruptcy court. To the extent that Echo Drugs proposes counterclaims against the Debtor that arguably may be raised by other shareholders, all such claims should be resolved by the bankruptcy court in a coherent fashion and consistent with principles of setoff under section 553 of the Bankruptcy Code. Allowing Echo Drugs to assert counterclaims in the State Court Action

would undermine judicial efficiency by complicating and delaying the State Court Action based on facts and legal issues that should be determined by the bankruptcy court.

### (xi) **Whether the Parties Are Ready for Trial in the Other Proceeding**

50.    This *Sonnax* factor is neutral.  Echo Drugs has not alleged any pending trial date in the State Court Action.  The Committee contends that there is no need to burden the State Court Action with additional factual claims and unrelated counterclaims based on Echo Drugs' status as a shareholder.

### (xii) **The Impact of the Stay on the Parties and the Balance of Harms**

51.    Echo Drug argues that it should be allowed to "defend itself correctly" by raising counterclaims for "mutually related debts."  Stay Motion, ¶ 36.  In fact, Echo Drugs seeks a dollar-for-dollar reduction of liability by virtue of wholly unrelated claims.  Echo Drugs does not require any counterclaims to defend itself in the State Court Action.  Echo Drugs and the Nelroy Defendants can adequately defend themselves by denying or disproving the Debtor's collection claims to the extent such facts exist.  The automatic stay does not prejudice Echo Drugs or the Nelroy Defendants because any right(s) with respect to patronage dividends can be assessed and resolved by the bankruptcy court through the claim resolution process.

52.    Echo Drugs' recitation of the *Sonnax* factors fails to demonstrate cause for relief from stay and fails to demonstrate the existence of viable setoff claims that could or should be asserted as counterclaims.  Moreover, even if viable setoff claims exist in favor of Echo Drugs and/or the Nelroy Defendants, application of the *Sonnax* factors weighs in favor of maintaining the automatic stay for the benefit of the estate and its general unsecured creditors.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court deny the Stay

Motion and the Reconsideration Motion in their entirety and grant such other and further relief as

is just and proper.

Date: October 20, 2020

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Ilan D. Scharf*
James I. Stang (*pro hac vice*)
Ilan D. Scharf
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:     jstang@pszjlaw.com
             ischarf@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

DOCS_SF:104256.2 75015/002