UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

  Rochester Drug Cooperative, Inc.,              Bankruptcy Case No. 20-20230-PRW
                                                                                      Chapter 11

                               Debtor.

_____

**DECISION AND ORDER
GRANTING IN PART AND DENYING IN PART
MOTION OF ECHO DRUGS SEEKING
RELIEF FROM THE AUTOMATIC STAY**

PAUL R. WARREN, U.S.B.J.

      Echo Drugs, Inc. has moved for an order lifting the automatic stay, so that it may seek permission to amend its answer in a state court civil action to assert counterclaims against the Debtor. Echo describes the proposed counterclaims as sounding in setoff and recoupment. The motion is opposed by the Debtor and the Committee. For the reasons that follow, the motion is **GRANTED in part,** solely to permit Echo to assert its proposed counterclaim concerning "credits" allegedly due from the Debtor for near-date or post-dated drugs that Echo claims to have returned to the Debtor. The balance of the motion, seeking to assert a counterclaim against the Debtor for "shareholder patronage dividends" allegedly due for 2017, 2018 and 2019, is **DENIED**.

## I.

## JURISDICTION

      The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II.

## FACTS

The Debtor, a once proud Rochester business that was founded over 100 years ago, filed this Chapter 11 case in March 2020, to wind-down its business operations and liquidate its assets. (ECF Nos. 1; 8 ¶¶ 43-44). Prior to filing for bankruptcy protection, the Debtor became the first pharmaceutical distributor in the United States criminally charged with drug trafficking.[1] The narcotics at the heart of the criminal charges were opioids.

Several months after filing its Chapter 11 petition, the Debtor commenced an action in state court against Echo to collect an outstanding accounts receivable of approximately $1.2 million. (ECF No. 865, Ex. A). Lev Rivkin, the principal of Echo, was named as a co-defendant as guarantor of Echo's obligation to the Debtor. (ECF No. 865 ¶¶ 7-8). Echo filed its answer, asserting a number of affirmative defenses, including that "the Defendants are entitled to offset and recoupment based upon amounts paid, which [the Debtor] has failed to account for." (*Id.* ¶ 9 (internal quotation marks omitted)).

Echo has moved to lift the automatic stay for the purpose of seeking permission from the state court to amend its answer to assert counterclaims against the Debtor. (ECF No. 772). Echo points to two distinct potential counterclaims it wishes to assert, although Echo blurs the distinction between its proposed counterclaims. The first proposed counterclaim is for the amount of unpaid "shareholder patronage dividends" for 2017, 2018 and 2019. (*Id.* ¶¶ 4-11). The second proposed counterclaim is for unpaid "credits" amounting to approximately $354,000, for the value of returned near-date and post-dated drugs, credit for which the Debtor is alleged to have failed to

---

[1] William K. Rashbaum, *For First Time, Pharmaceutical Distributor Faces Federal Criminal Charges Over Opioid Crisis*, N.Y. Times (Apr. 23, 2019), https://www.nytimes.com/2019/04/23/nyregion/opioid-crisis-drug-trafficking-rochester.html.

2

provide. (*Id.* ¶¶ 12-13). Echo asserts that its proposed counterclaims should be permitted as setoff and recoupment defenses to the Debtor's action seeking to collect an outstanding receivable against Echo. (*Id.* ¶ 15).

The Committee and Debtor have both objected to stay relief. (ECF Nos. 862 & 865). The objections focus on (and separate) the two proposed setoff counterclaims for analysis. First, as to the claim for unpaid "shareholder patronage dividends," the objections assert that mutuality is absent, because Echo's claim concerning patronage dividends and the trade debt owed to the Debtor by Echo are not debts owing between the same parties and in the same capacity. (ECF Nos. 862 ¶¶ 29-32; 865 ¶¶ 17-23). The Debtor argues that Echo's claim concerning unpaid patronage dividends are derivative tort claims for misconduct by the Debtor and its management, which claims belong to the Debtor's estate for the benefit of all creditors. (ECF No. 865 ¶ 22). Second, as for Echo's proposed claim for unpaid credits for returned stale pharmaceuticals, the Committee argues that Echo has not provided sufficient proof to support that claim. (ECF No. 862 ¶ 33). The Debtor goes even farther, challenging the merits of Echo's claim and offering facts to demonstrate that the proof offered by Echo, to substantiate the existence of a sizeable credit owed by the Debtor for returned "stale" products, cannot sustain scrutiny. (ECF No. 865 ¶¶ 24-28). However, neither the Committee nor the Debtor assert that mutuality is lacking as to Echo's proposed counterclaim for returned product credits.

## III.

## DISCUSSION

Echo has acknowledged that it is aware of the Court's recent decision in this case involving Mead Square Pharmacy, in which stay relief was denied—and Echo has done its level best to

3

distinguish its situation from that of Mead Square. *See In re Rochester Drug Coop., Inc.*, No. 20-20230-PRW, 2020 Bankr. LEXIS 1935 (Bankr. W.D.N.Y. July 22, 2020). Echo's situation is different from Mead Square in one respect and substantially similar in another. The difference here is that Echo is seeking to assert a counterclaim in state court for an unpaid "credit" of approximately $354,000 for the value of stale products allegedly returned to the Debtor. The similarity here is that Echo, like Mead Square, also seeks to assert a counterclaim for unpaid "shareholder patronage dividends" that Echo (and Mead Square) would have received, but for alleged misconduct and misrepresentations by the Debtor's management. Echo has been careful to avoid being too forthcoming about its legal theory in pursuing recovery of the unpaid "shareholder patronage dividends," but there is little doubt that it is based on alleged misrepresentations made by the Debtor's management to Echo and other shareholder-purchasers of products from the Debtor. (*See* ECF No. 772 ¶¶ 3-11). The two proposed counterclaims are very different and must be considered separately.

**A. <u>Legal Standard Applicable</u>**

Echo, in it is motion, and the Debtor and Committee, in their opposition, point to the "*Sonnax* factors" in support of their respective and competing positions. (ECF Nos. 772 ¶¶ 22-37; 862 ¶¶ 37-52; 865 ¶¶ 29-38); *see In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990). As this Court recently discussed:

> As an initial matter, it is unnecessary for a Court to consider the *Sonnax* factors unless and until [Echo] has carried its initial burden of proof of demonstrating cause to lift the stay. *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010)). It is well-settled that "[i]f the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *In re Sonnax*, 907 F.2d at 1285. Here, [Echo seems to] acknowledge[] that, in order to demonstrate that cause exists to lift the stay, it must prove that it has mutual claims to setoff in the state court action. [ECF No. 772 ¶¶ 15-21]. . . . For mutuality to exist, the claims or debts must be owed "between the same parties in the same right

4

or capacity." *In re Ionosphere Clubs, Inc.*, 164 B.R. 839, 843 (Bankr. S.D.N.Y. 1994). *See also In re Bennett Funding Grp.*, 146 F.3d 136, 139 (2d Cir. 1998); *In re Cairns*, 372 B.R. at 660 ("mutual debts are due to and from the same person in the same capacity") *quoting In re Sentinel Prods. Corp., P.I., Inc.*, 192 B.R. 41, 45 (N.D.N.Y. 1996) (internal quotation marks omitted)).

"[The] allowance of a setoff is a decision that lies within the sound discretion of the bankruptcy court." *In re Bennett Funding*, 146 F.3d at 140 (citing *In re Ionosphere*, 164 B.R. at 841). And, setoff must be scrutinized in light of the goals and objectives of the Bankruptcy Code. (*Id.*). "In general, the Bankruptcy Code is oriented toward the prevention of preferential treatment of creditors." *In re Ionosphere*, 164 B.R. at 843 (citing *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941)). To ensure equality of treatment of the holders of unsecured claims, the requirement of mutuality has been narrowly interpreted by the courts, to "ensure[] that setoff is allowed only in situations in which the equitable considerations are strongest: namely where the claims or debts are owed *between the same parties in the same right or capacity*." *In re Ionosphere*, 164 B.R. at 843 (emphasis added).

*In re Rochester Drug Coop., Inc.*, 2020 Bankr. LEXIS 1935, at *5-7.

With those principles in mind, the Court turns to the two proposed setoff counterclaims for which Echo seeks stay relief.

**B. The Proposed Setoff Counterclaim for Near-Date and Post-Dated Returned Product "Credits" Satisfies the Mutuality Requirement**

The Debtor has sued Echo in state court to recover $1.2 million for pharmaceutical goods allegedly sold and delivered to Echo. (ECF No. 865, Ex. A.) Echo seeks stay relief so that it may assert a counterclaim to setoff for approximately $354,000 in "credits" allegedly due from the Debtor, for the value of goods Echo claims to have returned because they were too old to sell. (ECF No. 772 ¶¶ 12-13). The Committee acknowledges that, subject to proof that certain goods were actually returned, "Echo Drugs may ultimately be entitled to a setoff for [the value of] certain goods returned." (ECF No. 862 ¶ 25). The Committee's concern, however, is that Echo has raised the "credit claim" as a mere pretext to assert a counterclaim for unpaid shareholder "patronage dividends." (*Id.*). The Debtor, on the other hand, engages in a factual analysis in an attempt to prove that Echo is not and could not be due credit for returned goods. (ECF No. 865 ¶¶ 24-28).

5

The issue here is not whether Echo will ultimately prevail on its claim that it is owed credit from the Debtor for the cost of returned outdated goods. The issue is whether Echo has demonstrated that it has a plausible claim for credits for the value of returned goods, to setoff against the debt owed to the Debtor for the value of goods Echo did purchase, did not return, and did not pay for. The Court finds that the Debtor's claims against Echo for the value of goods sold and delivered, and Echo's proposed counterclaim against the Debtor for the value of goods returned (as stale) and not properly credited, are debts owed "between the same parties in the same right or capacity." *In re Rochester Drug Coop., Inc.*, 2020 Bankr. LEXIS 1935, at *6. Therefore, the necessary element of mutuality is present with respect to the proposed counterclaim for "returned goods credit" sought by Echo. Because the Debtor's collection action, if successful, will generate assets for the estate, it is equitable and fair to allow Echo to attempt to reduce that recovery by the value of returned goods for which it did not receive credit—if, of course, Echo can prove its claim to the state court. *See Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir. 1978). Echo has demonstrated cause to lift the stay under § 362(d)(1), with respect to its proposed "returned goods credit" setoff claim.

Having carried its initial burden of proving that cause exists to lift the stay, the issue becomes whether this Court should permit Echo to assert its setoff counterclaim in the state court litigation. The answer is derived from application of the well-worn *Sonnax* factors, which are:

(1)  whether relief would result in a partial or complete resolution of the issues;
(2)  lack of any connection with or interference with the bankruptcy case;
(3)  whether the other proceeding involves the debtor as a fiduciary;
(4)  whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5)  whether the debtor's insurer has assumed full responsibility for defending it;
(6)  whether the action primarily involves third parties;
(7)  whether the litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claims arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). "The Second Circuit has recognized that the courts need not consider all twelve factors in every case—only those factors relevant to the case need be considered. *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). And, the Court need not assign equal weight to those factors deemed to be applicable. *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (S.D.N.Y. 1994) (quoting *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994))." *In re Rochester Drug Coop., Inc.*, 2020 Bankr. LEXIS 1935, at *9.

Here, the Court finds that the relevant *Sonnax* factors are 1, 2, 7, 10 and 12, with the last three factors weighing most heavily in favor of granting stay relief for Echo to assert its setoff counterclaim for the "returned goods credit" it claims to be owed. Permitting Echo to assert its counterclaim, seeking a setoff for returned goods claimed to be owed, will allow the state court to fully determine whether and in what amount the Debtor is owed money by Echo for goods sold and delivered. *(Sonnax* factor 1) There is little or no interference with the bankruptcy because the Debtor is the aggressor in the state court litigation. The ultimate value of the Debtor's claim against Echo, after setoff for any returned goods "credits" proved to be owing, will establish the actual value of the Debtor's claims against Echo—a necessary step in the plan confirmation process. *(Sonnax* factor 2) The litigation in state court does not prejudice the interests of other creditors, because Echo's alleged setoff claim for returned goods credit is not a claim available to all of the unsecured creditors—it is unique to Echo (and perhaps a handful of other trade creditors).

7

(*Sonnax* factor 7) Judicial economy is served by allowing Echo to resolve its setoff claim for returned goods credit in the state court, in a single proceeding. (*Sonnax* factor 10) Finally, the balance of harms tips decidedly in favor of Echo. The Debtor claims that Echo owes the estate $1.2 million for the value of goods sold and delivered. Echo claims that the Debtor's claim should be reduced by the value of near-date or post-dated products that Echo returned to the Debtor, for which Echo did not receive credit—and that credit is asserted to be approximately $354,000. (*Sonnax* factor 12)

The stay is, therefore, lifted to permit Echo to assert its proposed setoff counterclaim seeking credit for the value of near-date and post-dated goods allegedly returned to the Debtor. However, in no event is the amount of Echo's setoff counterclaim for these credits to exceed the total amount of the judgment that the Debtor might recover against Echo on its action to recover the value of goods sold and delivered to Echo. Further, in no event is Echo to attempt to assert, within its setoff counterclaim for "returned goods credit," any claim concerning or related to unpaid "shareholder patronage dividends" for 2017, 2018 and 2019—or any other years. Any attempt by Echo to end-run this decision, by asserting in its state court setoff counterclaim, any claim related to allegedly unpaid "shareholder patronage dividends" will be considered by this Court to be a violation of the automatic stay, punishable by appropriate sanctions. Echo is to conduct itself accordingly.

C. **The Proposed Counterclaim for Unpaid "Shareholder Patronage Dividends" Does Not Satisfy the Mutuality Requirement**

In addition to requesting stay relief to assert a setoff claim for returned product credits, Echo also seeks stay relief to assert a setoff counterclaim for unpaid "shareholder patronage dividends" for 2017-2019. (ECF No. 772 ¶¶ 3-11). Echo is exceedingly vague in articulating the legal theory underlying its proposed setoff claim for patronage dividends, perhaps in an attempt to

8

Case 2-20-20230-PRW, Doc 894, Filed 10/28/20, Entered 10/28/20 15:13:19, Description: Main Document , Page 8 of 10

avoid this Court's earlier decision concerning Mead Square (another shareholder). *In re Rochester Drug Coop., Inc.*, No. 20-20230-PRW, 2020 Bankr. LEXIS 1935 (Bankr. W.D.N.Y. July 22, 2020) [*Mead Square* for the sake of clarity].

In *Mead Square*, the shareholder sought stay relief to assert a counterclaim in the Debtor's state court collection action arising out of an alleged breach of fiduciary duty by the Debtor to its shareholders. *Id*. at *7. The Court held that such claims were derivative in nature and, as such, those claims are property of the estate to be pursued by the Committee on behalf of all unsecured creditors. *Id.* Here, Echo appears to tip-toe around describing its proposed counterclaim as arising out of a claim of corporate mismanagement or a breach of fiduciary by the Debtor to its shareholders. Instead, Echo asserts that "the debtors [*sic*] own sales manager indicates how the *shareholders were intentionally kept in the dark* about if and when payments would be forthcoming." (ECF No. 772 ¶ 10 (emphasis added)). Despite Echo's best efforts to mask the basis for its proposed setoff counterclaim for unpaid "shareholder patronage dividends," it is clear that Echo's claim (as a shareholder) is derivative in nature. Such a claim belongs to the estate and is, therefore, not Echo's claim to advance.

Further, Echo has failed to show that it has a mutual claim to setoff as regards the "shareholder patronage dividends." Echo has made no effort to demonstrate that the unpaid "shareholder patronage dividend," that Echo claims is owed by the Debtor, and the debt Echo owes to the Debtor for goods Echo failed to pay for, are "mutual debts [that] are due to and from the same person *in the same capacity*." *In re Rochester Drug Coop., Inc.*, 2020 Bankr. LEXIS 1935, at *6 (citations omitted) (emphasis added). Instead, Echo merely offers its conclusory assertion that the obligations are mutual. (*E.g.,* ECF No. 772 ¶ 21). Having failed to demonstrate that mutuality is present, the Court holds that Echo has failed to carry its burden of demonstrating cause

9

under § 362(d)(1) with respect to the "shareholder patronage dividend" claim. *In re Rochester Drug Coop., Inc.*, 2020 Bankr. LEXIS 1935, at *6-7. As a consequence, it is unnecessary for the Court to consider the *Sonnax* factors with respect to the "shareholder patronage dividend" claim.

## IV.

## CONCLUSION

For the reasons stated, the motion of Echo Drugs, Inc., is **GRANTED in part,** solely to permit Echo to assert its proposed setoff counterclaim concerning "credits" allegedly due from the Debtor, for near-date or post-dated drugs that Echo claims to have returned to the Debtor. The balance of the motion, seeking to assert a counterclaim against the Debtor for "shareholder patronage dividends" allegedly due for 2017, 2018 and 2019, is **DENIED**.

**IT IS SO ORDERED.**

DATED: October 28, 2020  _____/s/_____
    Rochester, New York  HON. PAUL R. WARREN
                                               United States Bankruptcy Judge