UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:

Rochester Drug Cooperative, Inc.,          Bankruptcy Case No. 20-20230-PRW
                                                       Chapter 11

                    Debtor.

---

## DECISION AND ORDER
## DENYING STAY RELIEF AS REQUESTED
## BY MOVANT AND GRANTING
## LIMITED STAY RELIEF TO PERMIT MOVANT
## TO SEEK TO INTERVENE IN RELATED LITIGATION
## PENDING IN THE DISTRICT COURT

PAUL R. WARREN, U.S.B.J.

       Laurence F. Doud, III was the chief executive officer of the Debtor from 1991 until April 1, 2017. (ECF No. 922 ¶ 3). Mr. Doud seeks relief from the automatic stay to obtain an advance of the costs of defending a criminal action pending against him in the Southern District of New York. (*Id.* ¶¶ 3-4). Specifically, Mr. Doud seeks to access insurance proceeds under a "Private Company Management Liability Insurance" policy issued by Hiscox Insurance Company, Inc. (*Id.* ¶ 6). The coverages available under that insurance policy are the subject of a civil action pending before the District Court, pitting the Debtor against Hiscox. That civil action pre-dates this bankruptcy case. The motion is vigorously opposed by the Debtor and the Creditors' Committee. (ECF Nos. 948, 1174, 1238).

       For the reasons that follow, the relief as requested by Mr. Doud is **DENIED**. However, in the exercise of its discretion, the Court grants limited stay relief to Mr. Doud to allow him to seek to intervene in the civil action pending before Judge Wolford, under Rule 24 FRCP, to seek declaratory relief from the District Court. Further, the Court grants limited stay relief to Mr. Doud

to seek direct payment from Hiscox solely under the "Additional Executive Limit of Liability," set out in Endorsement No. 3 of the Hiscox policy. Finally, the denial of stay relief is without prejudice to Mr. Doud to seek stay relief in the future, after the entry of a final judgment by the District Court in the Hiscox litigation (after time for any appeals have expired, without any appeal having been taken), to seek any proceeds remaining after the satisfaction of any final judgment in favor of the Debtor.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II.

## PROCEDURAL POSTURE

On November 17, 2020, Mr. Doud filed a motion seeking an order "authorizing Hiscox to advance Defense Costs" to Mr. Doud. (ECF No. 922 ¶ 10). The motion was made returnable on December 10, 2020. The parties agreed to adjourn the motion several times. (ECF Nos. 956, 1004, 1030). An initial hearing on the motion was held on January 29, 2021, after which the Court ordered the parties to submit memoranda of law in support of their positions. (ECF No. 1186). On February 23, 2021, the parties submitted their memoranda in keeping with the Court's Order. (ECF Nos. 1238, 1240). After reading the supplemental memoranda of the parties, and having heard oral argument on January 29, 2021, the Court took the motion under submission without the need to hear additional oral argument. (ECF No. 1251).

# III.

# FACTS

On March 8, 2017, the Debtor obtained a "Private Company Management Liability Insurance Policy" from Hiscox Insurance Company (Policy No. UVA 1901769.17). (ECF Nos. 922 ¶ 6; 948 ¶ 8). The Policy covered a one-year period, ending March 8, 2018. (*Id.*). Included among the various coverages is "Directors & Officers Liability Coverage," and it is that coverage which is at issue here. (ECF No. 948 ¶ 10). As described by the parties, the Policy includes typical side A and side B coverages—side A covering directors and officers for covered losses and side B covering the Debtor in the event it indemnifies a director or officer for such losses. (*Id.*; *see also* ECF No. 922 ¶ 7). In the motion, Mr. Doud mentions only the side A and side B coverages under the Policy. However, there is additional entity coverage for the Debtor, in the form of side C and side D coverages—side C covering the Debtor for certain claims and side D covering certain reputational losses by the Debtor. (ECF No. 948 ¶ 10).

Mr. Doud seeks stay relief, apparently at the urging of Hiscox, so as to obtain from Hiscox an "advance [of] Defense Costs" under the side A coverage of the Policy. (ECF No. 922 ¶ 9). As Mr. Doud would have it, under the Order of Payments provision in the Policy, the coverage available for directors and officers (under side A) takes priority over the entity coverage available to the Debtor (under side C). (ECF No. 1240 at 5-10). The Debtor interprets the Order of Payments provision as granting the Debtor "the option of directing Hiscox as to which claims to pay in which order." (ECF No. 948 at 16 n.6). Therein lies the rub.

As interpreted by the Debtor, the Policy would provide the Debtor with entity coverage totaling $6 million. (*Id.* at ¶ 12). In addition, the Policy provides an additional $1 million in coverage for officers and directors exclusively. (*Id.*). The total available under the Hiscox Policy,

3

according to the Debtor, is $7 million. (*Id.*). Doud, on the other hand, argues that the $1 million coverage under the "Additional Executive Limit of Liability" is not available until the $5 million in coverage under sides A, B and C is exhausted. (ECF No. 1240 at 5). Doud reaches that conclusion because Hiscox advised him that is how Hiscox interprets its own Policy. (*Id.*).

Before this chapter 11 case was filed, the Debtor asserted a claim under the Policy for the entire $6 million in entity coverage. (ECF No. 948 ¶ 16). After initially agreeing to provide the Debtor with coverage, Hiscox subsequently denied coverage under the Policy. (ECF No. 1174 ¶ 9). As a result, the Debtor commenced an action in the District Court for the Western District of New York, demanding payment under the Policy. (ECF No. 948 ¶ 17). The District Court litigation, titled *Rochester Drug Co-Operative, Inc. v. Hiscox Insurance Company, Inc.*, Case No. 20-cv-06025 (W.D.N.Y. filed Jan. 10, 2020), remains pending before Judge Wolford. If the Debtor is successful in the Hiscox litigation, it would recover $6 million of insurance proceeds for the benefit of its creditors. (ECF No. 948 ¶ 20). If Mr. Doud is permitted to draw upon the Policy proceeds, as requested in the lift stay motion, there would be a dollar-for-dollar reduction in the amount remaining for the Debtor under the Policy. (*Id.*). Further, if Mr. Doud is permitted to draw on the side A coverage for the $2 million he seeks, Hiscox will avoid $1 million in potential exposure under the Executive Coverage. Simply put, instead of facing potential coverage exposure totaling $7 million, Hiscox would face exposure of $6 million under the sides A, B, C coverage under the Policy.

Mr. Doud argues that he will be harmed more grievously than will the Debtor if he is not allowed to immediately access the Hiscox Policy proceeds. Mr. Doud reasons that, as an 80-year-old man facing the potential prison term of 10 years to life (if convicted), the "stakes" are higher than the loss of a couple million dollars by the Debtor's creditors. (ECF No. 1240 at 10). However,

4

as the Creditors' Committee counters, if convicted, Mr. Doud will be required to repay Hiscox all insurance proceeds that Hiscox advanced for Mr. Doud's defense costs. (ECF No. 1174 ¶ 35). The Committee further argues that, if stay relief is to be granted at all, it should be limited to allow Mr. Doud to seek declaratory relief in the District Court concerning the obligations of Hiscox to advance $1 million to him under the Additional Executive Limit of Liability coverage. (*Id.* ¶ 36).

IV.

DISCUSSION

A. **The Hiscox Policy and the Proceeds of the Policy Are Assets of the Estate**

An insurance *policy* issued to a debtor is property of the estate. *See* 11 U.S.C. § 541(a); *accord Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988). Further, the *proceeds* of the insurance policy are property of the estate if depletion of those proceeds will adversely affect the estate. *In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 202-03 (Bankr. S.D.N.Y. 2014). Where an insurance policy provides direct entity coverage, covering losses of the debtor, the *policy* and its *proceeds* are estate property. *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399-1400 (5th Cir. 1987).

Here, the Policy provides direct entity coverage to the Debtor. (ECF No. 922 ¶ 7 & Ex. A). And, the Debtor has made claims against that Policy for the full Policy limit of $6 million. (ECF No. 948 ¶ 16). The Debtor's claims were made before this chapter 11 case was filed and long before Mr. Doud sought stay relief. While Hiscox initially acknowledged coverage for the Debtor under the Policy, Hiscox subsequently denied coverage. (ECF No. 1174 ¶ 9). The denial of coverage by Hiscox is the subject of an action pending before the District Court. *Rochester Drug Co-Operative, Inc. v. Hiscox Insurance Company, Inc.*, Case No. 20-cv-06025 (W.D.N.Y.

5

filed Jan. 10, 2020) (Wolford, J.). (ECF No. 948 ¶¶ 13-20). If the Debtor is successful in its action before the District Court, the entire $6 million of coverage proceeds will be exhausted. But, if Mr. Doud is permitted to receive an advance of $2 million of the insurance proceeds from Hiscox, the proceeds remaining for the Debtor's direct coverage claims will have been reduced by $2 million. Consequently, *both* the insurance policy and the proceeds of that policy are assets of the Debtor's Estate. *See In re MF Glob. Holdings Ltd.*, 515 B.R. at 202-03.

**B. Application of the *Sonnax* Factors Weigh in Favor of Denying Stay Relief**

Both the Debtor and Committee argue that Mr. Doud has failed to demonstrate cause to lift the stay under § 362(d)(1). It is fair to say that Mr. Doud pays little attention to the need to demonstrate cause. Instead, the motion focuses primarily on *Sonnax* factor 12 as the basis upon which stay relief is requested. The Court finds that Mr. Doud has failed to carry his burden to demonstrate that cause exists to lift the automatic stay—by failing to prove that the proceeds of the insurance policy are not Estate assets and that diminution of those assets will not harm the Estate. Assuming, in the alternative and for the sake of argument, that Mr. Doud has made a threadbare showing of cause, application of the relevant *Sonnax* factors convinces the Court, in the exercise of its discretion, that stay relief should not be granted in the manner requested by Mr. Doud.

The Second Circuit has identified twelve factors for the courts to consider in determining whether to lift the automatic stay. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). The *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

6

(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether the litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claims arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Id.*

The Second Circuit has recognized that the courts need not consider all twelve factors in every case—only those factors relevant to the case need be considered. *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999). And, the Court need not assign equal weight to those factors deemed to be applicable. *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship*, 183 B.R. 682, 688 (S.D.N.Y. 1994) (quoting *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)).

Of course, the Court need only concern itself with the *Sonnax* factors if Mr. Doud has carried his threshold burden of demonstrating cause under § 362(d)(1) of the Code. Here, the Court has found that Mr. Doud has failed to carry his burden to demonstrate cause that exists to lift the automatic stay—by failing to prove that the proceeds of the insurance policy are not Estate assets and that diminution of those assets will not harm the Estate. While the discussion could be ended at this point, the Court will consider the relevant *Sonnax* factors, which provide an alternative basis for denying Mr. Doud relief from the automatic stay. Here, the relevant *Sonnax* factors are 2, 4, 10 and 12.

7

### 1. *Sonnax Factor 2 – Lack of Connection or Interference with Bankruptcy Case*

This factor weighs heavily against the granting of stay relief. If Mr. Doud is permitted to jump-the-line, and obtain from Hiscox an advance of insurance proceeds of $2 million, the Debtor's ability to recover $6 million on its claim against Hiscox (if successful) would be reduced by $2 million—to the detriment of the Estate.

### 2. *Sonnax Factor 4—Whether a Specialized Tribunal with the Necessary Expertise Has Been Established to Hear the Cause of Action*

This factor weighs against granting stay relief, in the form requested. While the District Court is not a specialized tribunal in the purest sense contemplated by the *Sonnax* Court, here the District Court does have the subject matter expertise to hear the dispute concerning coverage of the Hiscox Policy and the priority of competing claims against that Policy. One such coverage issue is whether Mr. Doud may be entitled to payment under the $1 million Executive Coverage, while the Hiscox action remains pending.

### 3. *Sonnax Factor 10—The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation*

This factor weighs heavily against granting stay relief. Granting relief, in the form requested by Mr. Doud, would directly interfere with the Hiscox litigation pending before the District Court. The Debtor has asked the District Court to determine its right to obtain payment totaling $6 million on its claims under the Hiscox Policy. That litigation is well underway in the District Court. Mr. Doud seeks, apparently with Hiscox's encouragement, to grab $2 million of policy proceeds from the $6 million at issue in the Hiscox litigation. Whether Mr. Doud is entitled to do so, is a decision to be made by the District Court in connection with the Hiscox litigation.

However, in order to afford Mr. Doud the ability to press his claim to priority over the claims of the Debtor, this Court will grant *limited* stay relief to permit Mr. Doud to seek to

intervene in the Hiscox litigation under Rule 24 FRCP. This would afford Mr. Doud the ability to seek declaratory relief in the District Court concerning the interplay of side A and side C coverage, as well as his ability to access the additional $1 million under the Executive Coverage endorsement. This approach will best serve the interest of judicial economy and the expeditious (and fair) resolution of the competing coverage claims of the Debtor and Mr. Doud.

4. *Sonnax Factor 12—The Impact of the Stay on the Parties and the Balance of the Harms*

This factor weighs heavily against granting stay relief, in the form requested by Mr. Doud. As Mr. Doud would have it, because he is 80 years old and potentially facing a lengthy prison sentence if convicted, he faces a harm greater than that facing the Debtor. (ECF No. 1240 at 9-10). After all, as Mr. Doud sees it, the loss of $2 million in insurance proceeds to the Debtor will merely reduce the size of the Estate available to pay creditor claims.

Here, the Debtor make claims for direct entity coverage of $6 million against the Hiscox Policy. Those claims pre-date this chapter 11 case and pre-dated the request by Mr. Doud for an advancement of Policy proceeds under the side A coverage. Mr. Doud fails to explain his reason for delay in seeking an advancement of his defense costs until now, more than two years after his indictment. And, he has seemingly been paying for the costs of his defense to this point, without looking to Hiscox for coverage. Because the Debtor's claims are not merely hypothetical, and because the Estate would immediately lose $2 million in Policy proceeds if the stay relief sought by Mr. Doud was granted, the balance of harms is greater on the Debtor and the Estate.

Taken as a whole, the relevant *Sonnax* factors all weigh in favor of denial of the motion to lift stay, at least in the form sought by Mr. Doud. However, while not requested by Mr. Doud, the Court will grant *limited* stay relief to allow Mr. Doud to seek to intervene in the Hiscox litigation, under Rule 24 FRCP. In the exercise of its discretion, after application of the relevant *Sonnax*

9

factors, the Court declines to grant relief from the automatic stay in the form requested by Mr. Doud. Further, in the exercise of its discretion, the Court grants Mr. Doud limited stay relief to seek to intervene in the Hiscox litigation pending before the District Court, should he wish to do so.

V.

CONCLUSION

For the foregoing reasons, the relief as requested by Mr. Doud is **DENIED**. However, in the exercise of its discretion, the Court grants limited stay relief to Mr. Doud to allow him to seek to intervene in the civil action pending in the District Court, under Rule 24 FRCP. In the further exercise of its discretion, the Court grants limited stay relief to Mr. Doud to seek direct payment from Hiscox solely under the "Additional Executive Limit of Liability," set out in Endorsement No. 3 of the Hiscox Policy. Finally, the denial of stay relief is without prejudice to Mr. Doud to seek stay relief in the future, after the entry of a final judgment by the District Court in the Hiscox litigation (after time for any appeals have expired, without any appeal having been taken), to seek any proceeds remaining after the satisfaction of any final judgment in favor of the Debtor.

**IT IS SO ORDERED.**

DATED: March 22, 2021  _____/s/_____
      Rochester, New York        HON. PAUL R. WARREN
                                                 United States Bankruptcy Judge