**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re*: | **Chapter 11** |
| ROCHESTER DRUG CO-OPERATIVE, INC. | **Case No. 20-20230 (PRW)** |
| Debtor. | |

### LIMITED OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF AN
### ORDER APPROVING THE PROPOSED SETTLEMENT AGREEMENT AND RELEASES

This Limited Objection ("Objection") is respectfully submitted on behalf of interested parties GARRY MROZEK ("Mrozek"), JOSEPH LECH ("Lech"), BORIS MANTELL ("Mantell"), and JOSEPH SCOTT MISKOVSKY ("Miskovsky") (collectively, the "Directors"), by and through the undersigned counsel, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, in opposition to ADVISORY TRUST GROUP LLC's ("Trustee") Motion Pursuant to Rule 9019(a) of the Federal Rules of Civil Procedure for Entry of an Order Approving a Settlement Agreement and Releases between the Trustee and Hiscox Insurance Company, Inc. (the "Motion") filed with this Honorable Court on April 5, 2022, Trustee Mot., ECF No. 1585.

### SUMMARY OF GROUNDS FOR OBJECTION

- For the reasons provided herein, the Directors oppose the Proposed Settlement Agreement to Release and Bar Claims (collectively, "Proposed Settlement Agreement"), between Trustee on behalf of Rochester Drug Co-Operative, Inc. ("Debtor" or "RDC") and Hiscox Insurance Company, Inc. ("Hiscox") and object to the release and bar of claims that relate to the Directors as Individual Insureds and their rights under the contractual insurance policy ("Policy").

- Approval of the Proposed Settlement Agreement, as is, is extremely prejudicial and will cause imminent and substantial harm to the Directors as Trustee is agreeing to take away each

1

Directors' individual rights, on the one hand, and then pursue an adversary proceeding without those rights available to the Directors, on the other hand. *See* Trustee Mot., ECF No. 1585-2, Ex. B, Proposed Settlement Agreement.

- Under New York law, certain proceeds at issue here are not property of the RDC Bankruptcy Estate (the "Estate") as the Directors hold a cognizable property interest in those proceeds.

- Further, the Proposed Settlement Agreement does not satisfy basic principles of equity required to be observed for approval of a settlement agreement in a bankruptcy proceeding under the *Iridium* factors.

- Lastly, the Proposed Settlement Agreement and resulting bar order is unfair and extremely prejudicial to Directors as it completely extinguishes the Directors' rights. Additionally, the Proposed Settlement Agreement cannot have been made in good faith considering the Trustee is stripping the Directors of their rights and then pursuing the Adversary Proceeding against them without those rights in place as further discussed in Section E, *infra.*

- For all of the legal and factual reasons provided herein, the Directors hereby request this Court issue an order denying the Motion to Approve Settlement Agreement and Releases and other relief the Court may deem just and proper. In the alternative, should the Court be inclined to approve the Proposed Settlement Agreement, the Directors request any language and terms affecting their rights be removed from the Proposed Settlement Agreement. Finally, the Directors hereby request an evidentiary hearing on the Motion and the objections thereto.

### **POLICY COVERAGE PROVISIONS AND PROCEDURAL HISTORY**

#### **A. Procedural History**

1. In brief background, on March 12, 2020 (the "Petition Date"), RDC filed a voluntary

2

petition in the United States Bankruptcy Court, Western District of New York (the "Bankruptcy Court"), for relief under Chapter 11 of the United States Bankruptcy Code. On January 15, 2021, Trustee was appointed to serve in the capacity of Liquidating Trustee pursuant to the terms and conditions of the *Second Amended Chapter 11 Plan of Liquidation* Bk Plan, ECF No. 1145 (the "Plan"), confirmed by the Bankruptcy Court on February 26, 2021.

2.      Importantly, on or about March 8, 2022, Trustee filed an Adversary Proceeding (Case No. 2-22-02073-PRW) (the "Adversary Proceeding") in connection with the Bankruptcy matter. Trustee's Complaint seeks seven causes of action for breach of fiduciary duties and recovery of wrongful declaration of dividends, among other accompanying causes of action, against the members of RDC's Board of Directors, including, but not limited to, the Directors.

3.      On April 5, 2022, less than one month after filing the Adversary Proceeding, the Trustee filed the Motion at issue herein with the Bankruptcy Court seeking approval of the Proposed Settlement Agreement, Releases, and Bar Order entered into by and between Trustee and Hiscox. *See* Trustee Mot., ECF No. 1585. Importantly, the Directors are not a party to the Proposed Settlement Agreement. *See* Trustee Mot., ECF No. 1585, Ex. B.

4.      In sum, the Proposed Settlement Agreement provides for a cash payment of $3.4 million to the Trust in exchange for a release of all claims and a buyback of RDC's Policy with "an appropriate Bar Order." *See* Trustee Mot., ECF No. 1585, ¶ 2.

5.      Relevant to this Objection, the release of claims as contained in the Proposed Settlement Agreement contains a Policy exhaustion provision acknowledging that the settlement between Trustee and Hiscox intends to fully exhaust all claims that may be made under the Policy — this includes, without limitation, any and all claims that may be brought by RDC's former Executives pursuant to the Policy's applicable Directors and Officers Liability Coverage Part

("D&O Coverage"). *See* Trustee Mot*.*, ECF No. 1585, Ex. B.  Specifically, the Proposed Settlement Agreement provides, in pertinent part:

> Each Party understands, acknowledges, and agrees that, effective upon the Settlement Payment having been made, and in further consideration of the mutual agreements and covenants contained herein, this Agreement shall result in the termination of the Trustee's and RDC's rights under the Policy, and, to the fullest extent permitted under the Plan or otherwise by law or in equity, ***shall result in the termination of any and all obligations of Hiscox under the Policy, and that the limits of liability of the Policy potentially available shall be deemed fully exhausted***.

*See* Trustee Mot., ECF No. 1585, Ex. B, Proposed Settlement Agreement, ¶ 8 (emphasis added).

6.     Moreover, the Proposed Settlement Agreement seeks an order from the Bankruptcy Court (the "Bar Order") that further prevents any person, including the Directors, from making a claim against Hiscox or taking any action against Hiscox arising out of the Policy, without any prior input, discussion, or negotiation with the Directors. Specifically, the Proposed Settlement Agreement provides, in pertinent part:

> All persons and entities…, are hereby permanently enjoined, restrained, and barred from filing, commencing, conducting, asserting, litigating, or continuing in any manner, directly, indirectly,…, any suit, action, claim, demand, or other proceeding…against Hiscox, or any parent, subsidiary, affiliate…and assign thereof (collectively, "Hiscox"), arising out of, based upon, or in any way ***connected with any actual or alleged right to receive insurance coverage or any other payment or benefit from Hiscox under Hiscox Private Company Management Insurance Policy No. UVA1901769.17 (the "Policy")*** or any actual or alleged duty of Hiscox under the Policy, including, without limitation, any duty to defend, duty to indemnify, or duty of good faith and fair dealing.

*See* Trustee Mot., ECF No. 1585, Ex. B, Proposed Settlement Agreement, ¶ 3.  (Emphasis added.)

7.     Despite the Policy limits, the Trustee seeks to settle with Hiscox for the total payment amount of $3.4 million and an exhaustion of the Policy.

**B. Policy Coverage**

8.      Prior to the filing of the Bankruptcy, RDC and Hiscox entered into the Policy with a continuity date of March 8, 2007. A true and correct copy of the Policy for Policy Period March 8, 2018 to March 8, 2019, is attached hereto as **Exhibit "A."** The Policy provides coverage for three lines of insurance with a Policy Aggregate Limit of $15,000,000.00. *See* Ex. A, Declaration ("Dec."). Specifically, and relevant to this matter, the Policy provides D&O Coverage with a Limit of Liability of $5,000,000.00 with a $25,000.00 Retention and an Additional Executive Limit of Liability for $1,000,000.00. *See* Ex. A, Dec. and Endorsement 3, pg. 6 of 11.

9.      The D&O Coverage Part affords the following coverage:

**Coverage A: Individual Insurance Coverage**
This D&O Coverage Part shall pay the Loss of an Individual Insured arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of such Individual Insured, except when and to the extent that a Company has indemnified the Individual Insured for such Loss.

**Coverage B: Company Reimbursement Coverage**
This D&O Coverage Part shall pay the Loss of a Company arising from a Claim first made against an Individual Insured during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of such Individual Insured, but only when and to the extent that such Company has indemnified such Individual Insured for such Loss.

**Coverage C: Company Coverage**
This D&O Coverage Part shall pay the Loss of a Company arising from a Claim first made against a Company during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of a Company.

**Coverage D: Reputation Coverage**
This D&O Coverage Part shall pay the Reputation Loss of a Company solely with respect to a Reputation Risk Event that first commences and is reported to the Insurer during the Policy Period up to the amount of the Reputation Loss Limit of Liability. Payment of any Reputation Loss under this D&O Coverage Part shall not waive any of the Insurer's rights under this Policy or at law. Coverage D shall apply regardless of whether a Claim is ever made against an Insured arising from such Reputation Risk Event

5

and, in the case where a Claim is made, regardless of whether the amount is incurred prior to or subsequent to the making of the Claim.

*See* Ex. A, D&O Coverage Part, pg. 1 of 17.

10. The Policy defines certain terms which are relative to this matter and are as follows:

**C. Defense Costs** means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured, but excluding compensation of any Individual Insured. Defense Costs shall not include any fees, costs or expenses incurred prior to the time that a Claim is first made against an Insured.

**H. Executive** means:(i) any past, present or future duly elected or appointed director, officer, management committee member (of a duly constituted committee) or member of the Board of Managers and any advisory board members and committee members.

**M. Individual Insured** means any:(i) Executive of a Company; (ii) Employee of a Company; or (iii) Outside Entity Executive.

**N. Insured** means: (i) a Company; or (ii) an Individual Insured.

**P. Loss** means the amount that any Insured becomes legally obligated to pay in connection with any covered Claim, including, but not limited to: (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; (ii) Defense Costs; (iii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages. The enforceability of this subparagraph (iii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages; (iv) with respect to Coverage D, Reputation Loss; and (v) with respect to Coverage E, Investigation Costs.

**CC. Wrongful Act** means: (i) with respect to any Executive or Employee of a Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Executive or Employee in their respective capacities as such, or any matter claimed against such Executive or Employee of a Company solely by reason of his or her status as an Executive or Employee of a Company.

*See* Ex. A, D&O Coverage Part, pgs. 2-5, 7 of 17 and Endorsement 3, pg. 5 of 11.

6

11.     With respect to bankruptcy matters, pursuant to Section XVI of the Policy, Bankruptcy: "Bankruptcy or insolvency of any Insured or the Insured's estates shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy." *See* Ex. A, General Terms and Conditions, pg. 9 of 9. Importantly, the Directors are included in the definition of "Insured" under the Policy. *See* Ex. A, Endorsement 3, pg. 5 of 11. Moreover, any exclusions with respect to bankruptcy within the Policy are not applicable here as specifically provided in Endorsement 3, wherein it provides that the exclusion shall not apply to:

> (ii) in any bankruptcy proceeding by or against a Company, any Claim brought by the examiner, trustee, receiver, liquidator, rehabilitator, creditor committee, or debtor in-possession (or any assignee thereof) of such Company.

*See* Ex. A, Endorsement 3, pg. 6 of 11.

12.     Additionally, Endorsement 23 of the Policy provides a modification of the Discovery Period with an Effective Date of March 8, 2019.  *See* Ex. A, Endorsement 23.  This modification allows for a "period of three years following the Effective Date in which [RDC] can give [Hiscox] written notice of Claims first made against any Insured during that Discovery Period alleging any Wrongful Act occurring prior to the Effective Date." *See* Ex. A, Endorsement 23.

13.     Notably, Endorsement 23 was not attached to Trustee's Motion as an exhibit.

## OBJECTION TO MOTION

### A.     Standard of Review

Pursuant to the Federal Rules of Bankruptcy Procedure, a bankruptcy court may, in its discretion, approve compromise and settlement when it is fair, equitable, and in best interests of the estate, or, in the alternative, reject a settlement agreement if the foregoing standards are not adequately supported by the settlement proponent.  Fed. R. Bankr. P. 9019.  *See also Vaughn v. The Drexel Burnham Lambert Gr., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (bankruptcy court

has discretion whether to accept or reject compromise and settlement). Specifically, Bankruptcy Rule 9019(a), and the supporting legal precedent, govern the procedure for seeking approval of settlements. *See* Fed. R. Bankr. P. 9019 ("On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.").

In deciding whether to approve a proposed settlement, a bankruptcy court may give weight to a trustee's opinion that settlement is fair and equitable *but may not simply adopt a trustee's position without making its own independent inquiry. Id.* (Emphasis added). Indeed, as posited in the Motion, a bankruptcy court need not conduct an independent investigation into reasonableness of settlement. *Id.* With that said, however, in deciding whether to approve a settlement, a bankruptcy court's responsibility is to canvass issues and to determine whether the proposed settlement would be reasonable in light of the facts of the matter.

The Second Circuit developed the following factors to evaluate whether a settlement is above the lowest point in the range of reasonableness, as required for court to approve a settlement:

(1) the balance between litigation's possibility of success and settlement's future benefits;

(2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience and delay, including difficulty of collecting on judgment;

(3) the paramount interests of creditors, including each affected class's relative benefits and degree to which creditors either do not object to or affirmatively support the proposed settlement;

(4) whether other parties in interest support settlement;

(5) the competency and experience of counsel supporting, and experience and knowledge of bankruptcy court judge reviewing, the settlement;

(6) the nature and breadth of releases to be obtained by debtor's officers and directors; and

(7) the extent to which settlement is product of arm's length bargaining.

*In re Iridium Operating, LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *See also In re Worldcom, Inc.*,

347 B.R. 123, 127 (Bankr. S.D.N.Y. 2006).

Notably, the settlement proponent bears burden of persuading court that settlement is in best interests of estate. Fed. R. Bankr. P. 9019. *See generally In re NII Holdings, Inc., et al.,* 536 B.R. 61, 98-99 (Bankr. S.D.N.Y. 2015), citing *In re MF Global Inc.*, 466 B.R. 244, 248 (Bankr. S.D.N.Y. 2012).

### B.     Directors' Standing as Interested Parties

As a general rule, "[t]he Supreme Court has identified three aspects of Article III standing: (1) an "injury in fact," which is an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *In re MF Global Holding, Inc*., 469 B.R. at 189 (Bankr. S.D.N.Y. 2012), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The Federal Rules of Bankruptcy Procedure broadly establish the rights of interested parties to be heard in a case. Specifically, 11 U.S.C. § 1109(b) provides:

> A party in interest*,* including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Bankruptcy courts, specifically those situated in the Second Circuit, "have liberally applied the term 'party in interest' to include most parties with a direct or indirect interest in the outcome of a case." *In re MF Global Holding, Inc.*, 469 B.R. 177, 189 (Bankr. S.D.N.Y. 2012). Relevant to the facts at issue, "[i]t is a well-settled premise of bankruptcy law that tort-claimants have standing as creditors in a bankruptcy case." *In re MF Global Holding, Inc.*, 469 B.R. at 189 (Bankr. S.D.N.Y. 2012), citing *Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman,* 277

9

B.R. 20, 20 (S.D.N.Y. 2002).

Here, the Directors are interested parties to the bankruptcy proceeding not only as alleged tortfeasors, but also as Defendants named in the Adversary Proceeding brought forth by Trustee. Should this Court approve the Proposed Settlement Agreement, the Directors face extreme prejudice, imminent harm, and a lack of protection as contractually obligated by Hiscox and the Policy. The Policy was designed to protect RDC's Executives, as defined therein to include Directors and Board Members, as well as RDC, from losses as exhibited by the D&O Coverage. *See* Ex. A, D&O Coverage Part, pgs. 1, 3 of 17.

The Proposed Settlement Agreement seeks only a portion of the Policy's limits for only one of the entities or individuals that are covered under the extensive Policy, and extinguishes the Directors' rights without due process rendering the Proposed Settlement Agreement unreasonable and improper. The Proposed Settlement Agreement causes harm to the Directors as it removes the Directors' protection as Individual Insureds and prohibits the Directors from pursuing additional claims for coverage even though the Policy limits are far from exhausted. Accordingly, a real controversy and claim now exists in light of the Trustee's Adversary Proceeding filed against the Directors.

**C. The Remaining Proceeds of the Policy Are Not a Part of the Estate**

Despite the argument asserted by Trustee in its Motion, under applicable federal and New York state law, the Policy proceeds are, in part, the property of Directors and, as such, may not be compromised in their entirety by Trustee.

Section 541(a) of the Bankruptcy Code defines property of the estate as "all legal or equitable interest of the debtor in property as of the commencement of the case." Generally, property of the estate is broadly construed by courts to include property in which the debtor has any

10

ownership interest. *See In re eToys, Inc.*, 331 B.R. 176, 201 (Bankr. D. Del. 2005). For example, "it is well-settled that a debtor's liability insurance is considered property of the estate." *In re MF Global Holding, Inc.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012).

However, New York courts have consistently held that *proceeds* of a liability insurance policy are not automatically deemed property of the estate. *See generally In re MF Global Holding, Inc.*, 469 B.R. at 190 (Bankr. S.D.N.Y. 2012), quoting *In re Downey Fin. Corp.,* 428 B.R. 595, 603 (Bankr. D.Del. 2010). "Courts that have addressed whether the proceeds of a liability insurance policy are property of the estate are guided by the language and scope of the specific policies at issue." *Id.*; *See also In re Medex Reg'l Labs, LLC*, 314 B.R. 716, 720 (Bankr. E.D.Tenn. 2004) ("In making its determination, the court must analyze the facts of each particular case, focusing primarily upon the terms of the actual policy itself.").

Foremost, it is well settled that, when an insurance policy *only provides direct coverage to a debtor*, courts generally rule that the proceeds are property of the estate. *See In re Allied Digital Techs. Corp.,* 306 B.R. at 512. (Emphasis added). However, when an insurance policy provides exclusive coverage to directors and officers, courts generally hold that the proceeds are not property of the estate in bankruptcy. *Id.* at 510; *See also In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D.Cal. 1991).

Importantly, New York courts draw a further distinction regarding insurance liability policies that "potentially provide coverage to both the Individual Insureds and the Debtors," such as the policy at issue in the Motion. *In re MF Global Holding, Inc.*, 469 B.R. at 190 (Bankr. S.D.N.Y. 2012). Specifically,

> [i]n cases where liability insurance policies provide direct coverage to both directors and officers and debtors, courts have held that "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the

11

estate's other assets from diminution.

*In re Downey Fin. Corp.,* 428 B.R. at 603.  Meaning, New York courts further distinguish liability insurance policies that provide dual coverage to both the debtor corporation in making determinations of entitlement to policy proceeds. In doing so, New York courts have held that proceeds of an insurance policy that provides dual coverage may be property of both the debtor corporation *and* the individual insureds, to the extent that the applicable policy is not exhausted by the debtor corporation, thus granting rights to each set of parties under the applicable policy.

For instance, the Court in *In re MF Global Holding, Inc.* held that the individual insureds were entitled to "advancement or reimbursement of…defense costs pursuant to the policies" because the applicable policies provided for dual coverage of both the debtor and the individual insureds. 469 B.R. at 191.  There, the Court specifically stated: "Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provided direct coverage to the debtor." *Id.,* at 192, citing *Adelphia Commc'ns Corp. v. Assoc. Ins. Serv., Ltd. (In re Adelphia Commc'ns Corp.),* 285 B.R. 580, 598 (Bankr.S.D.N.Y.2002) (granting relief from stay in order to permit primary insurer to advance defense costs) *vacated on other grounds,* 298 B.R. 49 (S.D.N.Y.2003); *see also In re Downey Fin. Corp.,* 428 B.R. 595 (granting relief from stay for cause in order to permit use of D&O policy proceeds for payment of defense costs). Notably, the S.D.N.Y. holds that where insurance proceeds are available to both a debtor and individual insureds, "the individual insureds have a right to use the policies' proceeds to cover their defense and settlement costs in litigation." *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 463 (S.D.N.Y.2004).

Further, New York State Insurance Law requires that Trustee and Hiscox abide by the terms of the Policy, notwithstanding any other provision of the Bankruptcy Code.  Specifically, section

3420(a)(1) of the New York Insurance Law provides that:

> The insolvency or bankruptcy of the person insured, or the insolvency of the insured's estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract.

N.Y. INS. LAW § 3420(a). As indicated by the Court in *In re MF Global Holding, Inc.*, "[t]he filing of a bankruptcy petition does not alter the scope or terms of a debtor's insurance policy and preserves such proceeds for those covered by the insurance policy." 469 B.R. at 194-95. Additionally, the Court in *In re MF Global Holding, Inc.* analyzed equity concerns related to disbursement of the policies therein, determining "equity favors [the trustee and insurance company] pay defense costs on behalf of the [i]ndividual [i]nsureds." 469 B.R. at 196.

In application to the present matter, the Policy at issue is comprised of several coverage parts including, without limitation, D&O Coverage which was obtained and maintained by RDC for the explicit benefit of its directors and corporate officers, including Directors, to, in part, serve as financial protection in the event of litigation arising from their roles in the management of the corporation. As indicated herein, the D&O Coverage under the Policy provides for four (4) coverage parts, as follows: (1) Coverage A, Individual Insurance Coverage; (2) Coverage B, Company Reimbursement Coverage; (3) Coverage C, Company Coverage, and (4) Coverage D, Reputation Coverage.

Importantly, the scope of Coverage A extends to provide coverage for losses suffered by RDC's Executives in connection with any covered claim. Coverage A belongs exclusively to RDC's Executives, in their individual capacities, for "any actual or alleged Wrongful Act…, except when and to the extent that a Company [here, RDC and/or the Trustee] has indemnified the Individual Insured [defined therein to include RDC's directors and officers] for such Loss" (*i.e.*, under circumstances equivalent to the Adversary Proceeding). *See* Ex. A, D&O Coverage Part, pg.

13

1 of 17. As an aside, arguments related to the indemnification of Directors are not directly addressed in this Objection because Trustee and Hiscox have not, by and through the terms and conditions of the Proposed Settlement Agreement, agreed to the same.

Notwithstanding the Coverage A provision of the Policy, Coverage provisions B–D actually provide for the dual coverage of both RDC as the "Debtor" and the Directors as the "Individual Insureds," as contemplated by the Court in *In re MF Global Holding, Inc.* Therefore, contrary to the position taken by Trustee in its Motion, Directors do have a cognizable, direct property interest in the proceeds of the Estate, particularly because Trustee is not seeking to exhaust all funds available thereunder. *See generally In re MF Global Holding, Inc.*, 469 B.R. 177 (Bankr. S.D.N.Y. 2012).

Pursuant to its Motion, Trustee has indicated that it is able and willing to settle the Hiscox Policy for less than Policy limits to resolve the pending litigation between Trustee and Hiscox. The Proposed Settlement Agreement would, in turn, exhaust the Policy in its entirety and preclude Directors from raising claim(s) subsequent to entry of the Proposed Settlement Agreement for purpose of coverage in the Adversary Proceeding — in direct conflict with the overwhelming purpose of the D&O coverage (*i.e.*, to protect Directors).

As explained herein, the proceeds of the Policy attributable to the Directors are not being sought by Trustee, and vice versa. Trustee is settling claims for RDC as a company and not the Directors, as Individual Insureds, leaving significant funds remaining available to the Directors under the Policy. Because there is not an exhaustion of Policy limits under the Proposed Settlement Agreement, the remaining proceeds of the Policy are not a part of the Estate. Rather, in consideration of applicable New York law, the remaining proceeds of the Policy are property of the Directors. As such, Trustee and Hiscox may not permissibly enter into the Proposed Settlement

14

Agreement providing for the Bar Order that infringes on Directors' property rights without due process of law.

Importantly, to the extent that Trustee attempts to assert property rights in the balance of presently unclaimed funds under the Policy (*i.e.*, the remaining coverage balance) to disallow Directors' coverage under the Policy, New York case law bars Trustee from doing so. *See generally In re MF Global Holding, Inc.*, 469 B.R. at 196-97, citing *In re Beach First Nat'l Bancshares, Inc.,* 451 B.R. 406, 411 (Bankr.D.S.C.2011) ("[The individual insureds] cannot now be prevented from using the Policy for its intended purpose simply because Debtor wishes to save the policy limit for any potential claims of his own"); *In re First Cent. Fin. Corp.,* 238 B.R. 9, 21 (Bankr.E.D.N.Y.1999) (rejecting argument that trustee as a claimant against the directors and officers has a superseding right to recover insurance proceeds before all others). In other words, pursuant to New York precedent applicable to this matter, Trustee is only entitled to the relief requested in its Motion and the Proposed Settlement Agreement and may not, in consideration of this Objection, seek to hold the unused Policy balance in abeyance as the balance is the lawful property of Directors.

### D. The Proposed Settlement Agreement Does Not Satisfy Basic Principles of Equity Required to Be Observed in Bankruptcy Proceedings for Approval of a Settlement Agreement

The Second Circuit considers the *Iridium* factors when evaluating whether a settlement agreement is above the lowest point in range of reasonableness. *In re Iridium Operating, LLC*, 478 F.3d 452, 462 (2d Cir. 2007). *See also In re Worldcom, Inc.*, 347 B.R. 123, 127 (Bankr. S.D.N.Y. 2006).

The *Iridium* factors support the Directors' Objection and the denial of Trustee's Motion to Approve Settlement Agreement and are analyzed herein as follows:

### i. The Balance Between Litigation's Possibility of Success and Settlement's Future Benefits

The Trustee has failed to include and involve indispensable parties to the Proposed Settlement Agreement and negotiations of the same and, therefore, the settlement was not reached in good faith, presents extreme prejudice to the Directors, and is unreasonable. *See Chao v Slutsky*, 01-CV-7593SLTETB, 2009 WL 3174711, at *4 [EDNY Oct. 2, 2009] citing *Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1031 (2d Cir.1992).

Although there may be risk in the success of the Coverage Action, there has been no final determination on the merits. In addition, Trustee has not taken into consideration the Policy claims that will arise from the Adversary Proceeding filed against the Directors which are currently covered under the Policy. The Proposed Settlement Agreement—as it stands—cannot provide future benefits to the Estate if Trustee has not considered all possible claims resulting from the Hiscox Policy and/or possible claims against the Estate.

### ii. The Likelihood of Complex and Protracted Litigation, With Its Attendant Expense, Inconvenience and Delay, Including Difficulty of Collecting on Judgment

Trustee is arguing that litigation would be delayed and subject the Estate to further expense; however, Trustee filed an Adversary Proceeding against Directors while the Policy at issue is still in effect protecting the Directors from these exact claims. Instead of Trustee attempting to settle all possible claims with Hiscox that could result under the Policy—including claims covering the Individual Insureds—Trustee is only attempting to settle claims between RDC and Hiscox leaving the Estate and Hiscox open to potential claims against them. Trustee could have simply included the Directors in the settlement negotiations with Hiscox to otherwise reduce the cost, expense, and time of further dispute.

### iii. The Paramount Interests of Creditors, Including Each Affected Class's Relative Benefits and Degree to Which Creditors Either Do Not Object to or Affirmatively

***Support the Proposed Settlement***

Directors, as interested parties and alleged tortfeasors, are considered a creditor within the realm of the bankruptcy court. *See In re MF Global Holding, Inc.*, 469 B.R. at 189 (Bankr. S.D.N.Y. 2012), citing *Official Comm. of Asbestos Claimants of G–I Holding, Inc. v. Heyman*, 277 B.R. 20, 20 (S.D.N.Y. 2002). As such, Directors, as creditors and interested parties, object to the Proposed Settlement Agreement to the extent it is a complete exhaustion of the Policy limits and a bar to additional claims and recovery. The determination to exhaust Policy limits extremely prejudices the rights of the Directors as it prohibits available proceeds from being disbursed to the Directors pursuant to covered claims such as Defense Costs for the Adversary Proceeding.

Moreover, not only does the Proposed Settlement Agreement exclude the Directors from proceeds, but it also prohibits the Directors from making any claims under the Policy. The Policy and the D&O Coverage were specifically purchased for the protection of the Directors and Individual Insureds from losses arising from claims made against the Directors and Individual Insureds during the Policy Period or Discovery Period for actual or alleged wrongful acts. If the Policy limits are not exhausted, then the Directors have a right to bring their claims under the Policy under basic contract law and the express provisions of the Policy, as well as relevant federal and state legal precedent, as provided herein.

### iv. *Whether Other Parties in Interest Support Settlement*

Trustee argues that it has no information regarding other parties in interest and whether they will support the Proposed Settlement Agreement. Trustee's position is contradicted by the fact that it filed an Adversary Proceeding against the other parties in interest, presumably after negotiating the complete exhaustion of the Policy with Hiscox. As previously discussed at length, the Directors are interested parties and are certainly prejudiced by the Proposed Settlement Agreement at issue.

17

Accordingly, the Directors do not support the Proposed Settlement Agreement.

### v. The Competency and Experience of Counsel Supporting, and Experience and Knowledge of Bankruptcy Court Judge Reviewing, The Settlement

The Directors have no reason to doubt Trustee's assertion of Counsel. In addition, the Directors firmly believe that this Court has the requisite knowledge and experience to evaluate the Proposed Settlement Agreement and make just determination of its reasonableness in light of Directors' arguments herein.

### vi. The Nature and Breadth of Releases to Be Obtained by Debtor's Officers and Directors

Contrary to Trustee's argument, the Proposed Settlement Agreement does release Directors' and Officers' claims as clearly laid out in paragraph 6 of the Proposed Settlement Agreement wherein it states, "on behalf of the Debtor. . . each of their respective current and former directors, officers . . . (the foregoing persons or entities, collectively, the "Trust Releasing Parties)."

In addition, the Proposed Settlement Agreement provides, in pertinent parts:

> All persons and entities…, are hereby permanently enjoined, restrained, and barred from filing, commencing, conducting, asserting, litigating, or continuing in any manner, directly, indirectly,…, any suit, action, claim, demand, or other proceeding…against Hiscox, or any parent, subsidiary, affiliate…and assign thereof (collectively, "Hiscox"), arising out of, based upon, or in any way *connected with any actual or alleged right to receive insurance coverage or any other payment or benefit from Hiscox under Hiscox Private Company Management Insurance Policy No. UVA1901769.17 (the "Policy")* or any actual or alleged duty of Hiscox under the Policy, including, without limitation, any duty to defend, duty to indemnify, or duty of good faith and fair dealing. (Emphasis added).

> Each Party understands, acknowledges, and agrees that, effective upon the Settlement Payment having been made, and in further consideration of the mutual agreements and covenants contained herein, this Agreement shall result in the termination of the Trustee's and RDC's rights under the Policy, and, to the fullest extent permitted under the Plan or otherwise by law or in equity, *shall result in the termination of any and all obligations of Hiscox under the Policy, and that the limits of liability of the Policy potentially available shall be deemed fully exhausted*. (Emphasis added).

18

*See* Trustee Mot., ECF No. 1585, Ex. B, Proposed Settlement Agreement, ¶¶ 3 and 8.

As previously discussed, it is these provisions that improperly limit and extremely prejudice the rights of the Directors under the Policy. These provisions within the Proposed Settlement Agreement were not agreed to by the Directors. Rather, Trustee is attempting to take away the rights of the Directors under the Policy, without due process, and then collect against the Directors through an Adversary Proceeding subsequently filed after contemplation of settlement with Hiscox, for which they would no longer be insured if the Proposed Settlement Agreement is approved.

### vii. The Extent to Which Settlement Is Product of Arm's Length Bargaining

Directors were excluded from the negotiations and bargaining of the Proposed Settlement Agreement despite having a clear interest in a potential settlement regarding the Policy. The Directors were a necessary party to those negotiations. Trustee knew or should have known that the Directors should have been included within the negotiations to prevent prejudice to them. Trustee failed to include the Directors within the negotiations which resulted in a Proposed Settlement Agreement that deprives the rights of others without their consent and due process. The "hard fought negotiations" were inadequate to satisfy the standard to achieve equity and were not made in good faith. *See Chao v Slutsky*, 01-CV-7593SLTETB, 2009 WL 3174711, at *4 [(EDNY Oct. 2, 2009)] *citing Masters Mates & Pilots Pension Plan and IRAP Litig*., 957 F.2d 1020, 1031 (2d Cir.1992).

### E. The Proposed Settlement Agreement and Bar Order Unfairly Prejudices and Extinguishes the Directors' Rights

"Notwithstanding the [*Iridium*] factors, the Second Circuit has explicitly instructed 'that when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties.' *Stanwich Fin. Servs.*

*Corp. v. Pardee* (*In re Stanwich Fin. Servs. Corp.*), 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (*citing In re Drexel Burnham Lambert Grp., Inc.*, 995 F.2d 1138, 1146–47 (2d Cir. 1993)); *see also In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir. 1992) ('Where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval .... [I]f third parties complain to a judge that a decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside.')." *In re Ditech Holding Corp.*, 606 BR 544, 624 [Bankr SDNY 2019].

Moreover, "[a] settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *Chao v Slutsky*, 01-CV-7593SLTETB, 2009 WL 3174711, at *4 [EDNY Oct. 2, 2009] citing *Masters Mates & Pilots Pension Plan and IRAP Litig.,* 957 F.2d 1020, 1031 (2d Cir.1992). "Not all claims by a non-settling defendant against a settling defendant are properly extinguishable by a bar order. A settlement bar order is overly broad and unfair if it extinguishes an independent claim by a non-settling defendant against a settling defendant that seeks damages which are not based on the liability of the non-settling defendant to a plaintiff." *Chao v Slutsky*, 01-CV-7593SLTETB, 2009 WL 3174711, at *4 [EDNY Oct. 2, 2009].

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), citing *Milliken v. Meyer*, 311 U.S. 457 (1940). Generally, New York bankruptcy courts have upheld the due process requirements stated by the *Mullane* Court. *See In Re Residential Capital, LLC*, 497

B.R. 720, 747 (Bankr. S.D.N.Y. 2013) ("Due process requires… 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'").

In contexts analogous to that at issue in this Objection, New York bankruptcy courts have held that due process is satisfied where interested parties are "provided adequate information regarding the benefits of the Settlement and all parties [have] an opportunity to object to the Settlement and to cross-examine the Trustee." *In re Soup Kitchen International Inc.*, 506 B.R. 29, 46 (Bankr. E.D.N.Y. 2014), citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950).

For example, in *In re Residential Capital, LLC*, the Court held that the interested parties to the proposed settlement agreement *had been offered adequate due process* under the law because, there, the trustee "provided due process to the [interested parties] in negotiating and entering the Settlement." 497 B.R. 720, 743 (Bankr. S.D.N.Y. 2013). Moreover, in *In re Residential Capital, LLC*, the "[t]rustees, in negotiating the Settlement Agreement, insisted that the Settlement Agreement not have any effect unless all the [interested parties]… received prompt notice of the proposed agreement…." 497 B.R. 720, 747 (Bankr. S.D.N.Y. 2013).

Here, Directors—as non-settling, interested parties to the Proposed Settlement Agreement—were, and continue to be, entitled to certain due process rights under federal and New York law which Trustee and Hiscox, by and through their exclusive negotiations and the resulting Proposed Settlement Agreement, have blatantly violated.

Unlike in *In re Residential Capital, LLC*, here, the Directors were not present at any mediation, did not negotiate the Proposed Settlement Agreement, were not consulted regarding the Proposed Settlement Agreement, and certainly do not agree to the Proposed Settlement Agreement

that ultimately strips the Directors of their rights under the Policy. The Proposed Settlement Agreement does not take into consideration potential claims of the Directors against Hiscox and/or the Estate, especially in light of the Adversary Proceeding filed on March 8, 2022. The Proposed Settlement Agreement does not exhaust Policy limits, yet bars covered claims for all Insureds under the Policy—importantly—the Directors. The Proposed Settlement Agreement was not made in good faith as evidenced by the attempt to prohibit the Directors' ability to file claims under the Policy and then file an Adversary Proceeding against them—a claim covered under the Policy. Likewise, the Proposed Settlement Agreement is wholly improper as it takes away the rights of Directors' individual rights without due process of law. *See generally In re Residential Capital, LLC*, 497 B.R. 720 (Bankr. S.D.N.Y. 2013).

Accordingly, the Directors respectfully request that this Court take the Directors' position into consideration and deny Trustee's Motion to Approve Settlement Agreement and Releases as the Proposed Settlement Agreement is extremely prejudicial to the Directors' rights, and was not entered into in good faith.

## <u>CONCLUSION</u>

The Directors oppose the Proposed Settlement Agreement and Trustee's Motion for the foregoing reasons. The Directors would respectfully request this Court issue an Order denying Motion to Approve Settlement Agreement and Releases and other relief the Court may deem just and proper. In the alternative, should the Court be inclined to approve the Proposed Settlement Agreement, the Directors respectfully request removal of the language and terms that impede on the Directors' rights. Finally, the Directors hereby request an evidentiary hearing on the Motion and the objections thereto.

## NOTICE OF OBJECTION

Notice of this Limited Objection will be served on (i) the Office of the United States Trustee by ECF, (ii) Counsel for Hiscox, (iii), all parties that have filed a request for service of papers under Bankruptcy Rule 2002.

Dated: April 25, 2022

BRENNAN, MANNA & DIAMOND LLC

*/s/ Duriya Dhinojwala*
Duriya Dhinojwala (OH Bar No 0074982)
*Admitted Pro Hac Vice on April 18, 2022*
Kathryn E. Hickner (NY Bar No. 4883302)
75 East Market St.
Akron, OH 44308
Ph: (330) 253-5790; Fax: (330) 253-6896
Primary Email: dd@bmdllc.com
Primary Email: kehickner@bmdllc.com
Secondary Email: jcgomez@bmdllc.com

*Counsel to Defendants Garry Mrozek, Joseph Lech, Boris Mantell, and Joseph Scott Miskovsky*

4869-9455-7725, v. 1