Ilan D. Scharf, Esq.
Jason S. Pomerantz, Esq.
Judith Elkin, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
ischarf@pszjlaw.com
jspomerantz@pszjlaw.com
jelkin@pszjlaw.com

*Counsel to the RDC Liquidating Trust*

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :  Chapter 11
                                                            :
**ROCHESTER DRUG**                                          :  Case No. 20-20230 (PRW)
**CO-OPERATIVE, INC.** [1]                                  :
                                                            :
           **Debtor.**                                      :
------------------------------------------------------------x

## OBJECTION TO CLAIM 282 ASSERTED BY SHAREHOLDER KLEIN PHARMACY, INC.

RDC Liquidating Trust, through its trustee Advisory Trust Group, LLC (the "Liquidating Trustee"), the successor-in-interest to Rochester Drug Co-Operative, Inc. (the "Debtor" or "RDC") files its *Objection to Claim 282 Asserted by Shareholder Klein Pharmacy, Inc.* (the "Objection"). In support of the Objection, the Liquidating Trustee respectfully states as follows:

---

[1] On February 26, 2021, the Bankruptcy Court entered an order confirming the *Second Amended Chapter 11 Plan of Liquidation* (the "Plan") of Rochester Drug Co-operative, Inc. ("RDC") which (along with that certain Liquidating Trust Agreement and Declaration of Trust) established the RDC Liquidating Trust and empowered it to collect and administer RDC's Assets and resolve Claims against RDC.

## PRELIMINARY STATEMENT

1.	Prior to its liquidation under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), RDC was a New York cooperative corporation owned by approximately 307 stockholding pharmacists and pharmacies (the "Shareholder Pharmacies"). RDC sold pharmaceutical products to many (if not all) of its Shareholder Pharmacies. As of the Petition Date, many Shareholder Pharmacies had accounts receivable owing to RDC (collectively, the "Shareholder Receivables"), which were in default.

2.	For many years, RDC distributed profits to the Shareholder Pharmacies, if available and at the discretion of the Board of Directors, in the form of a patronage dividend ("Patronage Dividends"). Each Shareholder Pharmacy was required to make minimum yearly purchases from RDC to remain in good standing, and Patronage Dividends were distributed based on each shareholder's total sales volume.

3.	RDC's board of directors last declared a Patronage Dividend (approximately $22.1 million) for the fiscal year ending March 31, 2017, which was paid in June of 2017 (the "2017 Patronage Dividend"). As is detailed below, the Liquidating Trustee has filed suit against the Debtor's Board of Directors in connection with the 2017 Patronage Dividend.

4.	Shareholder Pharmacies filed thirty-two proofs of claim against RDC (the "Shareholder Claimants") pursuant to which they assert claims for (a) undeclared Patronage Dividends (the "Dividend Claims"), (b) the value of their stock (the "Stock Claims"), and/or (c) breach of fiduciary duty or other corporate malfeasance (the "Bad Faith Claims"). (The Dividend Claims, the Stock Claims and the Bad Faith Claims are collectively, the "Shareholder Claims").[2] As is detailed below, this Objection addresses all three types of Shareholder Claims.

---

[2] Approximately 18 of the Shareholder Claims include a combination of Stock Claims, Dividend Claims and/or Bad Faith Claims; 9 assert only Stock Claims; 2 assert only Dividend Claims; 3 are amended or duplicate claims.

2

5. Klein Pharmacy, Inc. ("Claimant") is a shareholder in the Debtor. According to the Debtor's books and records, Claimant owns two shares of common stock in RDC (the "RDC Stock"),[3] one of which it acquired on or about November 19, 2010 for $26,500 pursuant to that certain *Subscription Agreement Under Confidential Summary Offering Statement Dated September 21, 2010* (the "Subscription Agreement").[4]

6. Claimant has represented that it has (or had) an interest in two retail pharmacies that did business with the Debtor: (i) one located at 123 Fifth Avenue, Pelham, NY (operated under the name of Klein Pharmacy) and (ii) one located at 7035 Parsons Blvd, Flushing NY operated under the name of Jewel Pharmacy RX) that purchased inventory (the "Goods") from the Debtor pre-petition (the "Pharmacies").[5] The Debtor extended credit to Claimant to finance the sale of the Goods (the "RDC Obligations"), which were personally guaranteed by Nadeem Kausar ("Kausar").

7. Prior to the Petition Date, Claimant defaulted on the RDC Obligations by failing to pay for the Goods when and as due. Accordingly, on or about June 2, 2020, the Liquidating Trustee filed a Verified Complaint against Claimant and Kausar and, in the Supreme Court of the State of New York County of Westchester (the "State Court") (Index No. 55664/2020) (the "Collection Action").[6] The Collection Action was ultimately settled and on July 15, 2022, case was dismissed as to all defendants with prejudice. The settlement did not, however, address or otherwise resolve the Claim.

---

[3] Ownership is according to the Debtor's List of Equity Security Holders [Doc. No. 105-1].
[4] The Subscription Agreement is attached to the Greenblatt Declaration as **Exhibit 1.** A copy of the *Confidential Summary Offering Statement Dated September 21, 2010* (the "Offering Statement") is attached to the Greenblatt Declaration as **Exhibit 2.** It is not clear from the Debtor's books & records when Claimant acquired its second share of common stock.
[5] The Liquidating Trustee is informed and believes that Jewel Pharmacy RX is or was owned and operated by Jewel of Flushing Rx Inc. ("Jewel, Inc.") in which Kausar also has an interest.
[6] The Collection Action was also filed against Jewel of Flushing Rx Inc. and Syed J. Rizvi.

8. On or about July 30, 2020, Claimant filed a proof of claim (docketed as claim 282) in the amount of $95,106.13 (the "Claim").[7] A copy of the Claim is attached as **Exhibit A**. Claimant asserts that the basis of the Claim is "unpaid patronage dividends as part of the product sales program." In addition, Claimant notes:

> The Claim of Klein Pharmacy, Inc. ("Claimant") is based on unpaid patronage dividends which became due as part of the product sales program of the debtor Rochester Drug Co-Operative, Inc. ("Debtor"). The amount of Claimant's claim against the Debtor is approximately $95,106.13. Additionally, the Debtor has filed suit against the Claimant which is currently pending in the Supreme Court of the State of New York, County of Westchester, under Index No.: 55664/2020 (the "Action"). The amount of this claim is estimated only and is subject to further investigation. Accordingly, Claimant reserves its right to file an Amended Proof of Claim and/or attach or bring forth additional documents supporting its claim and additional documents setting forth the amount and classification of its claim, including but not limited to, pre-petition, attorneys' fees, potential indemnity obligations, amounts subject to rights of setoff and any other additional amounts due from the Debtor.

*See* Addendum to Claim at 4. Claimant also attaches to its Claim (i) A Confidential Summary Offering Statement dated May 23, 2016 (*Id*. at 5) and (ii) a press release from the Department of Justice dated April 2, 2020 entitled, "Manhattan U.S. Attorney Announces Settlement of Fraudulent Billing and Kickback Lawsuit against Compounding Pharmacies and Owners." *(Id.* at 35).

9. While it clear that the Claim asserts a Dividend Claim, it appears from the addendum and the attachments that Claimant is reserving its rights to assert, among other things, a Bad Faith Claim and a Stock Claim.[8] Accordingly, by this Objection, the Liquidating Trustee

---

[7] Jewel Inc. filed an almost identical Proof of Claim (docketed as Claim 283) for $548,205.46 for "unpaid patronage dividends" that includes the identical attachments. The Liquidating Trustee reserves his right to object to Claim 283 and intends to do so via a separate objection

[8] To the extent that the Claim asserts any other grounds or basis not addressed in this Objection, the Liquidating Trustee reserves the right to address those grounds or basis on reply.

4

asks that the Court: (1) disallow any portion of the Claim that is a Dividend Claim on the grounds that the Debtor's Board of Directors exercised its discretion when it did not declare Patronage Dividends for years after the fiscal year ending March 31, 2017; therefore, any claims for Patronage Dividends are unenforceable against the Debtor or its property pursuant to 11 U.S.C. § 502(b)(1); (2) reclassify any portion of the Claim that is a Stock Claim as a Class 3 Interest pursuant to the terms of the Debtor's confirmed Plan; and (3) disallow any portion of the Claim that is a Bad Faith Claim, which claims belong to the estate pursuant to Bankruptcy Code section 541, which the Liquidating Trustee has the sole authority to pursue (and is pursuing) for the benefit of all of the Class 2 Unsecured Creditors. Finally, to the extent that the Court finds that any portion of the Claim is Allowed as a Class 2 Unsecured Claim, the Liquidating Trustee asks that it be subordinated to the Allowed Claims of all other Class 2 Unsecured Creditors pursuant to Bankruptcy Code section 510(b).

## STATUTORY BASIS FOR OBJECTION

10. The Objection is brought pursuant to sections 502(b) and 510(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and it is supported by Declaration of David Greenblatt (the "<u>Greenblatt Declaration</u>").[9]

## JURISDICTION

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the *Standing Order of Reference from the United States District Court for the Western District of New York*, dated February 29, 2012. The Liquidating Trustee confirms its consent, pursuant to

---

[9] A Proposed Order is attached as **Exhibit B**. The Greenblatt Declaration is attached as **Exhibit C.**

Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

13. On March 12, 2020 (the "Petition Date"), the Debtor filed a petition under chapter 11 the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court").

14. On March 27, 2020, the Debtor filed its schedules of assets and liabilities (the "Schedules") [Docket No. 105] pursuant to Bankruptcy Rule 1007 and the *Ex Parte Order Pursuant to Bankruptcy Rules 1007(c) and 9006(b)(1) Extending the Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases and Statements of Financial Affairs* [Docket No. 28].

15. On June 15, 2020, the Bankruptcy Court entered an order [Docket No. 401] (the "Bar Date Order") which, among other things, fixed July 31, 2020 as the date by which any person or entity holding (a) a Claim against the Debtor that arose or is deemed to have arisen prior to the Petition Date (the "General Bar Date"), or (b) an administrative expense claim against the Debtor that arose under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Bar Date") must file a written proof of claim (a "Proof of Claim") asserting such claim against the Debtor. The Debtor (or its agents) served the Bar Date Order, notice of the bar dates and a Proof

6

of Claim form (collectively, the "Bar Date Notice Package") in accordance with the Bar Date Order. *See* Certificate of Service [Docket No. 431].[10]

16. On February 26, 2021, the Bankruptcy Court entered an order (the "Confirmation Order") confirming RDC's *Second Amended Chapter 11 Plan of Liquidation* (the "Plan"). Pursuant to the Confirmation Order, the Plan of Liquidation and that certain Liquidating Trust Agreement and Declaration of Trust (the "Trust Agreement") (collectively, the "Plan Documents"), RDC's Assets were transferred to the RDC Liquidating Trust which was empowered, among other things, to: (i) collect and administer the Debtor's Assets (including Causes of Action) and (ii) resolve Claims against the Debtor and its estate.[11]

17. The Effective Date (as defined in the Plan) of the Plan occurred on March 19, 2021. As of the Effective Date, the Liquidating Trustee was appointed to act as trustee of the RDC Liquidating Trust. Pursuant to the Plan, among other things: (i) the Bankruptcy Court retained jurisdiction, "[t]o hear and determine objections to the allowance of Claims, whether filed, asserted or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of disputed Claims, in whole or in part;" and (ii) the Liquidating Trustee "may object to Claims at any time prior to the dissolution of the [RDC] Liquidating Trust." Plan, § 10.13(d); § 8.14.

.

---

[10] On December 18, 2020, the Debtor amended certain of its Schedules (the Amended Schedules") and claimants whose Claims were affected by the amendment were allowed to file Proofs of Claim until January 31, 2021 [Docket Nos. 1014, 1016].

[11] The bankruptcy case docket numbers for the applicable documents are as follows: Confirmation Order (Dkt. No. 1257); Plan of Liquidation (Dkt. No. 1145); Notice of Effective Date (Dkt No. 1305). If not defined herein, capitalized terms have the definitions given to them in the Plan Documents.

**LEGAL ARGUMENT**

18. As was noted above, pursuant to the Claim, Claimant assert that RDC owes it $95,106.13 for alleged unpaid Patronage Dividends, and it has reserved its rights to assert other grounds which may include, *inter alia*, a Stock Claim and/or a Bad Faith Claim. Each component of the Claim is addressed below.

**A.     Applicable Standard.**

19. A filed proof of claim is deemed allowed unless a party-in-interest objects. 11 U.S.C. § 502(a). Correctly filed proof of claims constitute *prima facie* evidence of the validity and amount of the claim. *In re Residential Capital, LLC*, 524 B.R. 465, 477 (Bankr. S.D.N.Y. 2015); Fed. R. Bank. P. 3001(f).

20. If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim. *In re Ditech Holding Corp.,* 2021 Bankr. LEXIS 1299, *10 (Bankr. S.D.N.Y. May 13, 2021). If there is an objection to a claim, the bankruptcy court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, subject to certain exceptions identified in the statute. 11 U.S.C. § 502(b). One such exception is that the court shall not allow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

**B.     The Dividend Claim should be disallowed in full.**

21. Any portion of the Claim that is a Dividend Claim should be disallowed in full because no Patronage Dividends are owing to Claimant.

22. Pre-petition, Shareholders were eligible to receive annual Patronage Dividends at the discretion of RDC's Board of Directors ("BOD"). More specifically, pursuant to the "Dividend Policy" set forth in the Offering Statement:

> The patronage dividend is calculated annually based upon the Company's earnings during the most recently concluded fiscal year. Once the aggregate amount of the patronage dividend pool has been established, it is allocated to the Company's shareholders based upon their purchases. The Company had insufficient earnings from which to pay dividends in a number of years prior to 1986, but has paid a patronage dividend in each year since 1986. . . . *Shareholders are eligible to receive distributions when, as and if declared by the Board of Directors of the Company, in amounts related to the shareholder's purchases of pharmaceutical and other products from the Company and payments to the Company for other services.* These distributions, known as "patronage dividends", totaled $5,200,000 for the fiscal year ended March 31, 2010, with no single shareholder receiving more than $435,088 for such fiscal year. . . . *There can be no assurance that funds will be available to pay patronage dividends in any year.*

Offering Statement at 11-12 (emphasis added).

23. The Offering Statement makes clear that the investment, including the payment of Patronage Dividends is (a) up to the discretion of the Debtor's BOD and (b) risky. It provides:

> **THERE ARE SIGNIFICANT RISKS ASSOCIATED WITH AN INVESTMENT IN THE VOTING COMMON STOCK. AN INVESTMENT IN THE SECURITIES OFFERED HEREBY IS SUITABLE ONLY BY PERSONS WHO CAN AFFORD THE LOSS OF THEIR ENTIRE INVESTMENT. PROSPECTIVE INVESTORS SHOULD CAREFULLY CONSIDER, AMONG OTHER THINGS, THE FOLLOWING RISK FACTORS**:
> . . .
> **Patronage Dividends Uncertain**. As a cooperative corporation, the Company may, at the discretion of the Board of Directors, pay pro-rata patronage dividends to its shareholders based on their purchases from the Company during a given period. A prospective investor is unlikely to receive significant return on his investment unless such investor conducts substantial business with the Company. *In addition, if the Company's retained earnings in any year are not sufficient to establish adequate reserves, the Board of Directors may determine not to pay any patronage dividends. Patronage dividends have been paid annually since 1986, but were not paid for a number of years before that time. There can be no assurance*

9

> *that patronage dividends will be paid at any time in the future or, if paid, will be at levels similar to those previously paid.*

Offering Statement at 3-4 (emphasis added).

24. The Subscription Agreement executed by the Claimant echoes both the risky nature of the investment:

> The undersigned acknowledges that: (a) he has read the Offering Documents and has evaluated the risks of investing in the Shares; (b) he is able to bear the economic risk of such investment; and (c) the Shares have not been and will not be registered under the Securities Act of 1933, as amended (the "1933 Act").

Subscription Agreement ¶ 3.

25. Accordingly, RDC was not required to pay Patronage Dividends. Patronage Dividends were authorized by the BOD and at its discretion.

26. The Liquidating Trustee is informed and believes that the Claimant has been paid in full for any Patronage Dividends that were declared by the BOD through and including the FYE March 31, 2017, when the BOD declared and subsequently paid in excess of $22.1 million in Patronage Dividends, which the Liquidating Trustee alleges was done in violation of state law. More specifically, according to the Debtor's books and records, the Debtor paid Claimant a total of $233,697 in Patronage Dividends in 2017 ($22,973 related to Klein Pharmacy and $210,724 related Jewel RX Pharmacy).

27. On or about March 8, 2022, the Liquidating Trustee, on behalf of the estate, filed a suit against the Debtor's Board of Directors (the "Board Action") [12] in connection with the 2017 Patronage Dividend on the grounds that it was paid when the Debtor was insolvent

---

[12] *See Complaint for Breach of Fiduciary Duties and Recovery of Wrongful Declaration of Dividends* (the "BOD Complaint") filed by the Liquidating Trustee against Donald Arthur, Christopher Casey, Laurence F. Doud III, Stephen Giroux, Sherwood Klein, Richard Klenk, Joe Lech, Boris Mantell, Joseph Scott Miskovsky, Garry Mrozek, Paul Pagnotta, which is pending in the United States Bankrutpcy Court for the Western District of New York as 22-AP-02073. A trial in the action is set for April 2024.

10

in violation of New York Debtor & Creditor Law ("NY DCL") section 271[13] and New York Business Corporation Law ("NY BCL") section 510(a).[14]

28. The BOD decided, in its discretion, not to issue Patronage Dividends following Fiscal Year ending March 31, 2017. Based on the same allegations that the Liquidating Trustee has plead in the complaint in the Board Action, any Patronage Dividend declared **after** FYE March 31, 2017 would have been prohibited by section which prohibits the payment of dividends if the corporation is insolvent or would be made insolvent as a result of the paid dividend. NY BCL § 510(a).

29. As was fully detailed above, RDC was not required to pay Patronage Dividends; Patronage Dividends were authorized by the BOD and at its discretion; and RDC's BOD's decided, in its discretion, not to issue Patronage Dividends following Fiscal Year ending March 31, 2017; and no Patronage Dividends are owing to Claimant. As any claim for Patronage Dividends is unenforceable under the clear language of the Offering Statement and the Subscription Agreement, any portion of the Claim that is a Dividend Claim should be disallowed pursuant to Bankruptcy Code section 502(b)(1).

**C.     The Stock Claim (if any) should be reclassified
         as a Class 3 Interest pursuant to the terms of the Plan.**

30. It is unclear whether the Claim includes a Stock Claim (*i.e.*, a portion of the total claim that is allocated to the value or purchase price of its RDC Stock). To the extent it does, however, any such Stock Claim should be reclassified as a Class 3 Interest that will receive

---

[13] Section 271(1) provides, "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NY DCL § 271(1).

[14] Section 510(a) provides, "A corporation may declare and pay dividends or make other distributions in cash or its bonds or its property, including the shares or bonds of other corporations, on its outstanding shares, except when currently the corporation is insolvent or would thereby be made insolvent, or when the declaration, payment or distribution would be contrary to any restrictions contained in the certificate of incorporation." NY BCL § 510(a).

11

no distribution under the Plan, instead of a Class 2 General Unsecured Claim, which will share pro rata with other general unsecured claims, including trade and tort claims.

31. Pursuant to the Plan, Holders of Class 3 Interests in the Debtor are subordinated to Holders of Class 2 General Unsecured Claims. The Plan defines an "Interest" as "the interest of any holder of an equity security, within the meaning of sections 101(16) and (17) of the Bankruptcy Code, represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in the Debtor, or any membership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in the Debtor." (Plan § 1.45). Any portion of the Claim that seeks to recover the value of the Claimant's RDC Stock, is, therefore, an Interest under the Plan.

32. More specifically, the Plan of Liquidation classifies the Claims against the Debtor into three Classes: Class 1 Unsecured Priority Claims; Class 2 General Unsecured Claims and Class 3 Interests. (Plan § 3). The Plan of Liquidation further provides that (i) Holders of Allowed Class 2 Unsecured Claims will receive a pro rata share of the RDC's Liquidating Trust's assets; (ii) Holders of Class 3 Interests will not receive any Distribution on account of such Interest unless all holders of Allowed Class 2 Claims are paid in full, and (iii) "In light of the magnitude of the Class 2 Unsecured Claims, it is unlikely that holders of Class 3 Interests will receive any Distributions in this Chapter 11 Case." (*Id*. §§ 3.2.2-3.2.3.). *See also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) ("[T]he absolute priority rule provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan.").

12

33. Accordingly, the Stock Claim (if any) should be reclassified as a Class 3 Interest pursuant to the Plan.

### D. The Bad Faith Claim (if any) should be disallowed.

34. As was noted above, it is unclear whether the Claim includes a Bad Faith Claim. Based on the Department of Justice press release attached to the Claim, however, the Liquidating Trustee believes that it the Claimant may allege such claims. To the extent it does, any such Bad Faith Claim should be disallowed.

35. This issue has already arisen and been determined by this Court in connection with the claim of one Shareholder Pharmacy Drug Mart Solutions, LLC (dba Quality RX Pharmacy) ("Drug Mart"). On June 17, 2020, Drug Mart filed a *Motion for Relief from Stay* [Docket 411] (the "Stay Motion") pursuant to which it sought relief from the automatic stay to assert counterclaims against RDC in a state court Collections Action for fraud, breach of fiduciary duty and breach of contract. More specifically, Drug Mart contended, "Debtor owed and owes a fiduciary duty to its shareholder members, which it violated by maintaining, at all relevant times, that it was in compliance with state and federal laws, rules and regulations, while it, and its CEO and COO were being investigated for, and ultimately charged with a number of crimes, including unlawful distribution of narcotics (e.g. drug trafficking), and conspiracy to defraud the Drug Enforcement Agency. Debtor, through its wrongful and criminal acts, severely impaired and disrupted Movants' businesses, which Debtor knew were reliant upon it for pharmaceuticals." (Stay Motion at 6.)

36. This Court denied the Stay Motion on the grounds that "the necessary element of mutuality of claims is not present." *In re Rochester Drug Coop., Inc.*, 2020 Bankr. LEXIS 1935 (Bankr. W.D. N.Y. July 22, 2020) ("*RDC I*"). The Court further found: (1) the

13

Claimants stand in "different rights and capacities vis a vis the debtor," and (2) the counterclaims that the Claimants sought to bring against RDC in the Collections Action "are derivative claims that belong to the estate." *Id*. at *7-*8. The Bankruptcy Court explained, "[a]ny claims for breach of fiduciary duty or mismanagement against the Debtor or its management are property of the Estate, to be pursued by the Committee on behalf of all unsecured creditors—if at all. To the extent Mead Square has claims that are not derivative, those claims can be litigated in this Court." *Id.*

37. The Bankruptcy Court addressed this issue again in *In re Rochester Drug Coop., Inc.*, 620 B.R. 699 (Bankr. W.D.N.Y. 2020) ("<u>RDC II</u>"). In that case, RDC sued Echo Drugs in state court to recover a pre-petition receivable. *See RDC II*, 620 B.R. at 702. Echo Drugs filed a motion for relief from stay in the Bankruptcy Court so that it could assert counterclaims against RDC. This Court noted:

> Echo like Mead Square, also seeks to assert a counterclaim for unpaid "shareholder patronage dividends" that Echo (and Mead Square) would have received, but for alleged misconduct and misrepresentations by the Debtor's management. Echo has been careful to avoid being too forthcoming about its legal theory in pursuing recovery of the unpaid "shareholder patronage dividends," but there is little doubt that it is based on alleged misrepresentations made by the Debtor's management to Echo and other shareholder-purchasers of products from the Debtor.

*Id.* at 703. As it had in *RDC I*, this Court held that the claims were derivative and belonged to the estate:

> Here, Echo appears to tip-toe around describing its proposed counterclaim as arising out of a claim of corporate mismanagement or a breach of fiduciary by the Debtor to its shareholders. Instead, Echo asserts that "the debtors [sic] own sales manager indicates how the *shareholders were intentionally kept in the dark* about if and when payments would be forthcoming." (ECF No. 772 ¶ 10 (emphasis added)). Despite Echo's best efforts to mask the basis for its proposed setoff counterclaim for unpaid "shareholder patronage dividends," it is clear that Echo's claim (as a shareholder) is derivative in nature. Such a claim belongs to the estate and is, therefore, not Echo's claim to advance.

14

*Id*. at 706. With respect to whether an individual (i.e., not derivative claim) could be set off against the trade receivable, the Court held:

> Echo has failed to show that it has a mutual claim to setoff as regards the "shareholder patronage dividends." Echo has made no effort to demonstrate that the unpaid "shareholder patronage dividend," that Echo claims is owed by the Debtor, and the debt Echo owes to the Debtor for goods Echo failed to pay for, are "mutual debts [that] are due to and from the same person in the same capacity."

*Id*. at 706 (citation omitted).[15]

38. As was noted above, the Liquidating Trustee has filed an action on behalf of the estate against members of the Debtor's BOD for breach of fiduciary duty and wrongful declaration of over $22 million in Patronage Dividends related to Fiscal Year ended March 31, 2017.

39. As this Court has already decided in *RDC I* and *RDC II*, the Bad Faith Claims belong to the estate to be pursued for the benefit of all creditors, and the Liquidating Trustee is actively pursuing those claims. Accordingly, any portion of the Claim that is a Bad Faith Claim should be disallowed.

**E.     Any portion of the Claim that is allowed as General Unsecured Claim should be subordinated to the Allowed Claims of Class 2 General Unsecured Creditors pursuant to Bankruptcy Code section 510(b).**

40. The Claim should be subordinated to the claims of Holders of Allowed Class 2 General Unsecured Claims pursuant to Bankruptcy Code section 510(b), which provides:

> For the purpose of distribution under this title, a claim . . . for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that

---

[15] To the extent the Claimant asserts a "right of setoff" against the Prepetition Receivable, the Court should find as it did in both *RDC I* and *RDC II* that no such right of setoff exists. The debts are not due to and from the same person in the same capacity. The debt that Claimant owed to RDC was a trade debt that it owed as a customer that purchased products from RDC. The debt that RDC allegedly owes to the Claimant for an undeclared Patronage Dividend or Stock is based on its status as a shareholder in RDC. Accordingly, the Claimant cannot establish mutuality.

15

> if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

41. Section 510(b) "safeguards the absolute priority rule, a bedrock principle of bankruptcy law, under which creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. . . . To that end, we construe section 510(b) broadly." *Adler v. Lehman Bros. Holdings (In re Lehman Bros. Holdings)*, 855 F.3d 459, 470-71 (2d Cir. 2017). Section 510(b) "prevents disappointed shareholders from recovering their investment by asserting claims for damages on parity with general unsecured creditors." *In re: ALTA+CAST, LLC*, 301 B.R. 150, 154 (Bankr. D. Del. 2003) (breach of agreement to repurchase stock subject to mandatory subordination). *See also* 4 Collier on Bankruptcy P 510.04 (16th ed.) ("The clear mandate of section 510(b) is that shareholder claimants will not be permitted to elevate their interests from the level of equity to general claims.").

42. The form in which the equity interest is held is "ultimately irrelevant. So long as the claimant's interest enabled him to participate in the success of the enterprise and the distribution of profits, the claim will be subordinated pursuant to section 510(b)." *In re WorldCom, Inc.,* 2006 Bankr. LEXIS 5129, at *15 (Bankr. S.D.N.Y. Dec. 21, 2006). If a claim falls within Section 510(b), subordination is mandatory. *SeaQuest Diving LP v. S & J Diving Inc. (In re SeaQuest Diving LP),* 579 F.3d 411, 417 (5th Cir. 2009).

43. A claim is subject to subordination pursuant to section 510(b) if: (i) the claimant owns a security; (ii) the claimant acquired the security by means of a purchase or sale, and (iii) the claimant's damages arose from the purchase or sale of the security or the rescission of such a purchase or sale. *In re Lehman Bros. Holdings Inc.*, 855 F.3d at 472-78.

44. Any Claim related to a Patronage Dividend meets this test. (i) Claimant owns a security (2 shares of the Debtor's common stock); (ii) it acquired the security by virtue of a purchase; and (iii) its damages (alleged unpaid Patronage Dividends) arose from the purchase of its stock. Accordingly any Claim related to as Patronage Dividend (if any) that is Allowed should be subordinated to the Claims of other Class 2 General Unsecured Creditors. *See e.g., French v. Linn Energy, L.L.C. (In re Linn Energy, LLC),* 936 F.3d 334, 338 (5th Cir. 2019) ("[P]ayments owed to a shareholder by a bankrupt debtor, which are not quite dividends but which certainly look a lot like dividends, should be treated like the equity interests of a shareholder and subordinated to claims by creditors of the debtor.").

## RESERVATION OF RIGHTS

45. This Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Liquidating Trustee or any other party in interest to object to the Claim (to the extent not disallowed and expunged pursuant to this Objection) on any grounds whatsoever, and the Liquidating Trustee expressly reserves all further substantive or procedural objections it may have.

## NOTICE

46. Pursuant to this Court's Administrative Order dated December 21, 2020, the Objection will be served and electronically filed at least 30 days prior to the return date and time, and service on the Claimant holding the Claim will comply with Fed. R. Bankr. P. 7004.

47. In addition, the Liquidating Trustee will provide notice of this Objection to: (a) the Office of the United States Trustee, 100 State Street, Room 6090, Rochester, New York, Attn: Kathleen Dunivin Schmitt; (b) counsel to RDC; (c) the twenty largest unsecured

creditors; (d) Bankruptcy Management Solutions, Inc. d/b/a Stretto, and (e) all parties that have filed a request to receive service of court filings pursuant to Bankruptcy Rule 2002.

WHEREFORE, for the reasons stated in the Objection, the Liquidating Trustee respectfully requests that the Court sustain the Objection, disallow and/or reclassify the Claim in accordance with the proposed order attached hereto as **Exhibit B** and grant such other relief as the Court deems just and proper.

Dated: September 21, 2022  PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Ilan D. Scharf*
Ilan D. Scharf, Esq.
Jason S. Pomerantz, Esq.
Judith Elkin, Esq.
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777

*Counsel to the RDC Liquidating Trust*