**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| ROCHESTER DRUG CO-OPERATIVE, INC., | ) | Case No. 20-20230 (PRW) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**RENEWED MOTION FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT
AGREEMENT AND RELEASES BETWEEN THE RDC LIQUIDATING TRUST AND
HISCOX INSURANCE COMPANY, INC. PURSUANT TO RULE 9019(a) OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

JURISDICTION ...........................................................................................................2

FACTUAL BACKGROUND ..........................................................................................3

   A. The Bankruptcy Case ...................................................................................3

   B. The Insurance Policy, Investigations and Actions .............................................3

   C. The Amended Settlement Agreement ..............................................................5

RELIEF REQUESTED..................................................................................................8

LEGAL ARGUMENT ...................................................................................................9

   A. The Settlement is a Reasonable Compromise that Should be Approved...........................9

   B. The Policy Is Property of the Estate and the Settlement Does Not
      Adversely Affect Any Independent Rights of Additional Insureds...................................10

   C. The Settlement Satisfied Each of the *Iridium* Factors and Should be Allowed.................12

      (i) The Benefits of the Settlement Are Clear in Light of the Risk That
            No Coverage Will be Afforded Under the Policy...................................................12

      (ii) The Coverage Action Has Already Proved to Be Both Complex and
            Protracted and Does Not Appear to be Near Resolution Absent
            the Settlement.........................................................................................14

      (iii) The Amended Settlement Agreement is Clearly in the Paramount Interests
            of Creditors ...........................................................................................15

      (iv) The Form of Amended Settlement Agreement Was Submitted by the
            Objecting Directors...................................................................................16

      (v) The Trustee's Counsel and the Court Are Experienced, Knowledgeable,
            and Fully Competent to Determine that the Amended Settlement
            Agreement Is in the Best Interest of the Estate....................................................17

      (vi) The Amended Settlement Agreement Does Not Release Any Officer
            or Director, or Compromise the Independent Rights of Any Officer
            or Director of the Debtor.............................................................................18

(vii) The Amended Settlement Agreement is the Product of Arms-Length
Negotiation...........................................................................................................18

SUMMARY ....................................................................................................................19

NOTICE OF MOTION....................................................................................................19

CONCLUSION................................................................................................................20

DOCS_SF:108278.2 75015/003

# TABLE OF AUTHORITIES

## Cases

*In re Adelphia Communications Corp.*
    364 B.R. 518 (Bankr. S.D.N.Y. 2007).................................................................... 11, 12

*In re Best Prods. Co., Inc.*
    168 B.R. 35 (Bankr. S.D.N.Y. 1994), *aff'd*, 69 F.3d 26 (2d Cir. 1995) ............................ 9

*In re Caesars Enter. Operating Co., Inc.*
    533 B.R. 714 (Bankr. N.D. Ill. 2015) .............................................................................. 12

*In re Global Crossing Sec. & ERISA Litig.*
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................................... 10

*In re Ionosphere Clubs, Inc.*
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd* 17 F. 3d 600 (2d Cir. 1994) ................................... 9

*In re McCoy*
    496 B.R. 678 (Bankr. E.D.N.Y. 2011)............................................................................... 9

*In re Quigley Co.*
    676 F3d 45 (2d Cir 2012)................................................................................................. 10

*In re W.T. Grant Co.*
    699 F.2d 599 (2d Cir. 1983)............................................................................................... 9

*In re Worldcom, Inc.*
    347 B.R. 123 (Bankr. S.D.N.Y. 2006) ............................................................................. 10

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
    837 F.2d 89 (2d Cir.1988) ............................................................................................... 10

*Med. Malpractice Ins. Assn. v Hirsch (In re Lavigne)*
    114 F.3d 379 (2d Cir. 1997)............................................................................................. 10

*Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*
    478 F.3d 452 (2d Cir. 2007)........................................... 6, 9, 10, 12, 14, 15, 16, 17, 18, 19

*Newman v. Stein*
    464 F.2d 689 (2d Cir. 1972)............................................................................................... 9

*Protective Committee for Independent Stockholders of TMT Trailer
    Ferry, Inc. v. Anderson*
    390 U.S. 414 (1968)........................................................................................................... 9

DOCS_SF:108278.2 75015/003

*SoyNut Butter Co.*
    2018 Bankr. LEXIS 2300 (Bankr. N.D. Ill. Aug. 1, 2018)................................................ 11

**Statutes**

11 U.S.C. § 363 ................................................................................................................ 11

28 U.S.C. § 1334 ................................................................................................................ 2

28 U.S.C. § 1408 ................................................................................................................ 2

28 U.S.C. § 1409 ................................................................................................................ 2

28 U.S.C. § 157 ................................................................................................................. 2

**Rules**

Fed. R. Bankr. P. 9019 .......................................................................... 1, 2, 8, 9, 11

Advisory Trust Group, LLC (the "**Trustee**"), solely in its capacity as Trustee of the RDC Liquidating Trust (the "**Trust**") hereby moves for entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure approving that certain *Amended Settlement Agreement and Releases* (the "**Amended Settlement Agreement**") entered into by the Trustee, on the one hand, and Hiscox Insurance Company, Inc. ("**Hiscox**"), on the other hand.  The Trustee and Hiscox are referred to collectively as the "**Parties**."  A settlement among the Parties was previously the subject of objections by certain former directors of the Debtor (the "**Objecting Directors**").[1]  Following further negotiations, the Parties have agreed to the within Amended Settlement Agreement that is identical to the redline form of agreement proposed by the Objecting Directors and submitted to the Court by letter dated July 22, 2022.

In support of this Motion, the Trustee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Trustee seeks approval of the settlement of an insurance coverage action (the "**Coverage Action**"), initially commenced by Rochester Drug Co-operative Inc. (the "**Debtor**" or "**RDC**") against Hiscox to recover under a directors and officers insurance policy issued by Hiscox (the "**Policy**") for expenditures incurred by RDC in connection with various investigations and actions related to RDC's sale of opioids.  In January 2022, the Trustee and Hiscox participated in a mediation in an attempt to resolve the Coverage Action.  As a result of that mediation, the Parties negotiated a settlement that, among other things, provided for a cash payment of $3.4 million to the Trust in exchange for a release of all claims.

2.      In November 2022, the Court denied without prejudice the Trustee's request for approval of a form of settlement that was objectionable by the Objecting Directors.  The Court

---

[1] The Objecting Directors are the following former directors of RDC: Joseph Lech, Boris Mantell, Joseph Scott Miskovsky, Garry Mrozek, Sherwood Klein, Paul Pagnotta, Stephen Giroux, Richard Klenk, and Donald Arthur.

DOCS_SF:108278.2 75015/003

accepted that the settlement agreement was beneficial to the estate, entered into after arms' length negotiations, and a proper exercise of the Trustee's business judgment. After further negotiations between the Trustee and Hiscox, the Parties have agreed to the Amended Settlement Agreement that provides for payment of $3.4 million to the Trust, with releases limited to the Parties, and all objectionable provisions eliminated from the agreement. The Amended Settlement Agreement is now identical to the form of agreement sought by the Objecting Directors,[2] and the settlement amount is identical to the original terms.

3.     The amount of the settlement, the risk of litigation, and the benefit to the Trust and its beneficiaries amply support approval of the settlement pursuant to Fed. R. Bankr. P. 9019 and the terms of the Plan. The Trustee further submits that the Amended Settlement Agreement comports with the terms of the Policy and with the demands and rights of the Objecting Directors.

## JURISDICTION

4.     The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     In addition, the Court retained jurisdiction over this chapter 11 case under section 10.13 of the *Second Amended Chapter 11 Plan of Liquidation* [Docket No. 1145] (the "**Plan**") to the fullest extent permitted by law, including any action to determine any motion, contested matter, or other litigated matter pending on or after the confirmation date.

---

[2] A copy of the signed Amended Settlement Agreement is attached to the Declaration of Robert Michaelson, filed herewith, as **Exhibit A**.

## FACTUAL BACKGROUND

### A.    The Bankruptcy Case

7.      On March 12, 2020 (the "**Petition Date**"), RDC filed a voluntary petition in this court (the "**Bankruptcy Court**") for relief under chapter 11 of the Bankruptcy Code.  Prior to filing its chapter 11 case, RDC was a distributor of pharmaceutical drugs.

8.      On February 26, 2021, the Plan was confirmed by the Bankruptcy Court pursuant to its *Decision and Order and Findings of Fact and Conclusions of Law Confirming Second Amended Chapter 11 Plan of Liquidation* [Docket No. 1256] (the "**Confirmation Order**").

9.      Pursuant to the Plan, the Confirmation Order, and that certain Liquidating Trust Agreement and Declaration of Trust (as attached to the Plan, the "**Trust Agreement**"), the Trustee succeeded to the rights of RDC and retains the exclusive right, power and interest to pursue, commence, prosecute, compromise, settle, and dismiss causes of action belonging to the Debtor.

10.      Pursuant to section 5.6 of the Plan, the Trustee may settle causes of action "without supervision or approval of the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan and Confirmation Order."  Notwithstanding such provision, Hiscox has requested an order approving the Amended Settlement Agreement described below, and the Trustee has agreed to seek such an order.

### B.    The Insurance Policy, Investigations, and Actions

11.      Hiscox issued that certain Private Company Management Liability Insurance Policy (No. UVA1901769.17) to RDC for the policy period of March 8, 2017 through March 8, 2018 (the aforementioned "**Policy**").  As is pertinent here, the Policy includes a Directors & Officers Liability Coverage Part (the "**D&O Coverage**"), subject to a $5,000,000 limit of

liability and a $25,000 retention.  Pursuant to Endorsement No. 17, the Policy provides for an

additional $1,000,000 in Defense Costs incurred in excess of the retention.  Additionally,

pursuant to Item 6(c) of the Policy's Declarations and Section V of the D&O Coverage, as both

are amended by Endorsement No. 3, the Policy provides a $1 million Additional Executive Limit

of Liability.[3]

12.     RDC provided notice to Hiscox of, and sought coverage under the Policy for,

various investigations and actions as follows:

> a.     RDC provided notice to Hiscox of, and sought coverage under the Policy
> for, defense costs incurred in connection with over thirty one (31) civil
> actions regarding RDC's sale of opioids, which actions were brought by
> the State of New York and numerous counties, cities, and towns in New
> York (the "**NY Opioid Actions**").
>
> b.     RDC provided notice to Hiscox of, and sought coverage under the Policy
> for, defense costs incurred in connection with an investigation by the
> United States Drug Enforcement Agency and/or other agencies of the
> United States government into potential civil liability arising out of RDC's
> sale of opioids (the "**Civil Investigation**"), which ultimately resulted in
> the Department of Justice initiating an action captioned *United States of
> America v. Rochester Drug Co-operative, Inc.,* Case No. 1:19-cv-03568-
> LAK (S.D.N.Y.) (the "**Civil Action**").
>
> c.     RDC provided notice to Hiscox of, and sought coverage under the Policy
> for, defense costs incurred in connection with an investigation by the
> United States Attorney, the United States Department of Justice, the
> United States Drug Enforcement Agency, and/or other agencies of the
> United States government, into actual or alleged criminal activity arising
> out of RDC's sale of opioids (the "**Criminal Investigation**"), which
> ultimately resulted in the Department of Justice initiating an action
> captioned *United States of America v. Rochester Drug Co-operative, Inc.,*
> Case No. 1:19-cr-00290-NRB (S.D.N.Y.) (the "**Criminal Action**").

13.     Prior to the Petition Date, RDC filed a civil action against Hiscox captioned

*Rochester Drug Co-operative, Inc. v. Hiscox Insurance Company, Inc.,* Case No. 6:20-cv-6025

---

[3] A true and correct copy of the Policy is attached to the Michaelson Declaration as **Exhibit B**.

(W.D.N.Y.) (the "**Coverage Action**"), seeking a declaration of coverage for the NY Opioid Actions and the Civil Investigation.

14.     After the Petition Date, in November 2020, RDC's former Chief Executive Officer, Laurence F. Doud, III ("**Doud**") filed a motion for relief from the automatic stay to obtain an advance of costs under the Policy in connection with defense costs incurred by him as a result of his criminal indictment (the "**Doud Indictment**") captioned *United States of America v. Laurence F. Doud III,* Case No. 19-cr-285 (S.D.N.Y.)(the "**Criminal Case**"). *See* Docket No. 922.

15.     By its *Decision and Order*, entered March 22, 2021 [Docket No. 1303], the Court denied relief from stay for Doud to obtain an advance under the Policy in connection with the Doud Indictment.  However, in the exercise of its discretion, the Court permitted limited relief to allow Doud to intervene in the Coverage Action or seek direct payment from Hiscox solely under the Additional Executive Limit of Liability set out in Endorsement No. 3 of the Policy. Doud did not intervene in the Coverage Action.

16.     On February 2, 2022, Doud was convicted by a jury in the Criminal Case of one count of narcotics conspiracy and one count of conspiracy to defraud the United States. *See* Criminal Case Docket entry dated February 2, 2022; *see also* Gary Craig, *Former Rochester Drug CEO Laurence Doud Convicted of Opioid Trafficking in Historic Case*, Rochester Democrat & Chronicle (Feb. 3, 2022).

C.     **The Amended Settlement Agreement**

17.     In April 2022, the Trustee filed a motion [Docket Nos. 1585-87] to authorize approval of the settlement that included certain provisions that were deemed objectionable by the Objecting Directors, such as exhaustion provisions and an order barring further claims under the Policy to the extent permitted by law.  The Objecting Directors objected to the motion [Docket

Nos. 1608, 1610, 1611], the hearing was adjourned, and the matter was scheduled for a chambers' conference on July 26, 2022.

18.     On July 19 and July 22, 2022, in advance of the chambers conference, the Trustee and the Objecting Parties respectively submitted letters to the Court regarding proposed changes to potentially resolve the pending objections. The Objecting Parties sought certain additional changes to the form of settlement as reflected in a redline submitted therewith. The Parties were unable to reach agreement with the Objecting Directors and the matter was ultimately set for hearing.

19.     On November 1, 2022, the Court entered an oral decision denying without prejudice approval of the Trustee's settlement motion for reasons set forth on the record. The Court expressed concern regarding paragraph 7 of the agreement insofar as an exhaustion and termination of rights under the Policy applied to all "Insureds," subject an exception for claims under the Additional Executive Limit, potentially compromised the independent rights of directors to proceeds under the Policy.[4] The Court noted approvingly that the requested edits by the Objecting Directors appeared to make clear that the directors' contractual rights under to the policy, to the extent they have any, and property rights, to the extent they have any, "are not part and parcel of the settlement."[5] Furthermore, absent any impairment of the Objecting Directors' contractual rights, the settlement is in the best interest of the estate under the *Iridium* factors.[6]

20.     The Trustee and Hiscox have engaged in further settlement discussions and, subject to the Bankruptcy Court's approval, are now prepared to enter into the accompanying

---

[4] *See* 11/1/22 Hearing Transcript, pp. 22-23, lines 25 - 3 ("[T]his Court finds that the proposed settlement agreement between the Trustee and Hiscox is affecting, or may affect, the rights of the directors in policy proceeds or contractual rights beyond the estate's interest."), attached as **Exhibit 1** to the Declaration of Ilan Scharf.
[5] *Id.* at p. 14, lines 7-13. In response to the Court's inquiry, counsel for certain Objecting Directors confirmed that the proffered redline would be acceptable. *Id.* at p. 15, lines 13-19.
[6] *Id.* at p. 21, lines 16-18.

6

Amended Settlement Agreement (**Exhibit A** to Michaelson Decl.) that is identical to the form previously proffered by the Objecting Directors. The salient terms of the Amended Settlement Agreement are described below for descriptive purposes only and interested parties should refer to the complete agreement and its terms.

21.     The Amended Settlement Agreement is a compromise, settlement, and mutual releases between the Parties to resolve all current and future claims in any way arising out of or relating to: the N.Y. Opioid Actions, the Civil Investigation, the Criminal Investigation, the Civil Action, the Criminal Action, and/or the Coverage Action (collectively, the "**Released Claims**").

22.     **Settlement Payment.** Pursuant to the Amended Settlement Agreement, and subject to certain conditions precedent, Hiscox will pay $3.4 million to the Trust, as successor to the Debtor pursuant to and in accordance with the terms of the Plan, in exchange for mutual agreements and releases.

23.     **Conditions Precedent.** Conditions precedent to the settlement include execution of the Amended Settlement Agreement, an order by the Bankruptcy Court approving the Amended Settlement Agreement, production to Hiscox of invoices for all defense costs incurred in connection with certain actions, payment instructions, and an executed W-9 form. The Trustee has agreed to bring this motion and seek an order approving the Amended Settlement Agreement at the request of Hiscox and notwithstanding that the Plan provisions allow settlement of claims without further supervision or court approval.

24.     **Releases.** Pursuant to paragraphs 5 and 6 of the Amended Settlement Agreement, the Parties will enter mutual releases. The Objecting Directors are not Parties to the Amended Settlement Agreement and are not releasees or releasors. The Trustee, on behalf of the Debtor and the estate and all agents thereof, releases Hiscox from all actual or potential claims arising

7

out of the Released Claims, the facts or circumstances alleged or at issue therein, and/or the Policy. Likewise, Hiscox releases the Trustee from all actual or potential claims arising out of the Released Claims, the facts or circumstances alleged or at issue therein, and/or the Policy. However, the releases do not affect the Parties' rights and obligations under the Amended Settlement Agreement.

25.     Consistent with comments by the Court, paragraph 7 of the Amended Settlement Agreement only terminates and exhausts the rights of the Trustee and RDC under the Policy, and does not affect the rights of any other insureds, including the Objecting Directors. Furthermore, paragraph 7 specifically states that the $1 million Additional Executive Limit under the Policy's Directors & Officers Liability Coverage Part shall remain available for payment of any Loss in accordance with the terms of the Policy.

26.     The Trustee has reviewed the Amended Settlement Agreement and is familiar with the Coverage Action, the NY Opioid Actions, the Criminal Action, as well as the preceding Civil Investigation and Criminal Investigation. Giving full consideration to the costs and risks of litigation and the benefits of the settlement, the Trustee believes that the Amended Settlement Agreement satisfies the paramount interests of RDC's creditors and should be approved by this Court. *See* Declaration of Robert Michaelson filed herewith.

## **RELIEF REQUESTED**

27.     By this motion, the Trustee seeks entry of an order pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Amended Settlement Agreement, and authorizing the Trustee to take all actions necessary or appropriate to effectuate the Amended Settlement Agreement.

## LEGAL ARGUMENT

### A. The Settlement Is a Reasonable Compromise That Should Be Approved.

28.     Settlements and compromises are favored and encouraged because they minimize costs of litigation and further parties' interest in expediting administration of the bankruptcy estate. *See Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007). Bankruptcy Rule 9019(a) governs the procedure for seeking approval of settlements, and states in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

29.     A bankruptcy court reviews a settlement to determine whether it is supported by adequate consideration, fair and equitable, and in the best interests of the estate. *In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd* 17 F. 3d 600 (2d Cir. 1994) (citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); affirming approval of settlement). The bankruptcy court does not need to conduct an independent investigation of the reasonableness of a settlement. *See In re McCoy*, 496 B.R. 678, 683 (Bankr. E.D.N.Y. 2011) (noting that the court need not rule on disputed issues of fact and law or "conduct a 'mini-trial' on the merits of the underlying litigation"). Rather, the bankruptcy court is only required to determine whether the settlement "fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co*., 699 F.2d 599, 613 (2d Cir. 1983) quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *In re Best Prods. Co., Inc.*, 168 B.R. 35, 50-51 (Bankr. S.D.N.Y. 1994), *aff'd*, 69 F.3d 26 (2d Cir. 1995).

30.     In the Second Circuit, bankruptcy courts consider the following "interrelated factors" to assess whether a settlement is fair and reasonable:

> 1)  the balance between the likelihood of success in the litigation compared to the present and future benefits offered by the settlement;

2)  the prospect of complex and protracted litigation with its attendant
    expense, inconvenience, and delay, and the difficulties associated with
    collection of any judgment;

3)  the paramount interests of the creditors, which includes the relative
    benefits to be received by members of any affected class and the degree to
    which creditors either do not object to or affirmatively support the
    proposed settlement;

4)  the degree to which the settlement is supported by other parties in interest;

5)  the competency and experience of counsel supporting the settlement and
    the experience and knowledge of the bankruptcy court judge reviewing the
    settlement;

6)  the nature and breadth of releases to be obtained by officers and directors;
    and

7)  the extent to which the settlement is the product of arm's length
    bargaining.

*In re Iridium Operating LLC,* 478 F. 3d 452, 462 (2d Cir. 2007).  *See also In re Worldcom, Inc.,*

347 B.R. 123, 127 (Bankr. S.D.N.Y. 2006).

31.    The Amended Settlement Agreement satisfies the fair and reasonable standards

under the *Iridium* factors.  Here, the Amended Settlement Agreement resolves all issues between

the Trustee and Hiscox, prevents what could otherwise be long and protracted litigation, avoids

litigation risk to the Trust and its beneficiaries, and is in the best interests of creditors and the

estate.

**B.  The Policy Is Property of the Estate and the Settlement Does Not Adversely
      Affect Any Independent Rights of Additional Insureds.**

32.    There is no dispute that insurance policies are property of the bankruptcy estate.

*See, e.g., In re Quigley Co.*, 676 F3d 45, 53 (2d Cir 2012); *Med. Malpractice Ins. Assn. v Hirsch*

*(In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *MacArthur Co. v. Johns-Manville Corp. (In re*

*Johns-Manville Corp.)*, 837 F.2d 89, 92 (2d Cir.1988); *In re Global Crossing Sec. & ERISA*

*Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004).  Additionally, when, as here, the insurance policy

includes "entity coverage," courts have held that the proceeds of the insurance policy are also

property of the debtor's estate. *See In re Adelphia Communications Corp.,* 364 B.R. 518, 526 (Bankr. S.D.N.Y. 2007).

33.     Citing to *In re Adelphia Communications Corp.* and *In re SoyNut Butter Co.,* the Court declined to approve the terms of an earlier settlement based on concerns that the agreement adversely impacted the independent rights of additional insureds. In *Adelphia Communications Corp.,* the bankruptcy court reviewed a proposed settlement between the debtor and its D&O insurers under Bankruptcy Code section 363 and Rule 9019 where the debtor agreed to receive $32.5 million in exchange for a sale of its interests under the insurance policies and a channeling injunction that would prohibit any other insured from asserting claims against the insurers, while directing such claims to the estate. Judge Gerber denied settlement approval without prejudice based strictly on the proposed channeling injunction. *Id.* at 521, 528-30. There was "nothing wrong with a settlement that happened to give Adelphia a head start in getting policy proceeds that might otherwise be claimed by the Objectors" (*id.* at 520) in light of the fact that the debtor and directors held independent claims on a "first-come, first-served basis" (*Id.* at 527).[7] By contrast, a channeling injunction would "proscribe litigation between two non-debtor entities, with respect to independent contractual rights they have against each other." *Id.* at 528. The channeling injunction was impermissible under Second Circuit authority and third-party release standards. *Id.* at 529.

34.     In *SoyNut Butter Co.,* 2018 Bankr. LEXIS 2300 (Bankr. N.D. Ill. Aug. 1, 2018), the bankruptcy court similarly rejected a settlement with insurers that sought to enjoin independent and non-derivative claims by additional insureds under an insurance policy. *Id.* at

---

[7] *See also In re Adelphia Communications Corp.,* 364 B.R. at 527 ("The Objectors' entitlements, if any, to policy proceeds are not to the *Estate's* recovery of policy proceeds, but rather to whatever proceeds are available when any of the Objectors makes a request – even if that is only what is left after the Estate gets whatever policy proceeds to which the Estate is entitled.") (emphasis in original).

11

*8-9 (denying approval of settlement that enjoined future claims by additional insureds). *See also In re Caesars Enter. Operating Co., Inc.,* 533 B.R. 714, 734-35 (Bankr. N.D. Ill. 2015) (denying injunction of litigation against debtor's parent company where the parent company held independent rights to policy proceeds).

35.     In this case, the Trustee and Hiscox have settled all claims arising between them relating to the N.Y. Opioid Actions, the Civil Investigation, the Criminal Investigation, the Civil Action, the Criminal Action, and/or the Coverage Action.  The Amended Settlement Agreement does not purport to prohibit litigation or channel claims by other insureds, including, for example, by means of a bar order provision.  As with *In re Adelphia Communications,* the Trustee in its capacity as successor to RDC was first-in-line to make claims under the Policy. The Trustee is entitled to negotiate and secure a settlement on behalf of the estate even if that leaves fewer or no proceeds for other insureds (*Adelphia Communications,* 364 B.R. at 527), provided that the Trustee cannot broadly enjoin independent claims or litigation between Hiscox and the Objecting Directors.  The Amended Settlement Agreement satisfies these criteria.

### C. The Settlement Satisfies Each of the *Iridium* Factors and Should Be Approved.

#### (i) The Benefits of the Settlement Are Clear in Light of the Risk That No Coverage Will Be Afforded Under the Policy

36.     The first *Iridium* factor considers "the balance between the likelihood of success in the litigation compared to the present and future benefits offered by the settlement."  Here, there are risks associated with prosecution of the Coverage Action and, absent certain circumstances, the benefits of the litigation are likely contractually capped by the Policy limits plus interest.  In fact, there is a possibility that the Policy will not provide coverage for the claims at issue in the Coverage Action, or for any of the Released Claims.  In addition to the litigation risk, further prosecution of the Coverage Action would incur substantial legal expense and delay.

The Amended Settlement Agreement maximizes the value of the Policy for the benefit of the Debtor's estate by providing an immediate and substantial payment of $3.4 million, which is more than half of the $6 million limit available to the Debtor, while eliminating the risks and expense of litigation and trial.

37.     After initially agreeing to furnish a defense to RDC in connection with the NY Opioid Litigation, Hiscox denied coverage upon learning of a settlement entered into by RDC with the United States (the "**DOJ Settlement**").  The DOJ Settlement, among other things, resolved any civil claims against the company and deferred the prosecution of any criminal claims in exchange for the payment by RDC of $20 million.  The DOJ Settlement was subsequently memorialized in a consent judgment entered into by RDC in the Civil Action and a deferred prosecution agreement entered into by RDC in the Criminal Action.

38.     Hiscox denied coverage for reasons set forth in the various pleadings in the Coverage Action.  This includes, but is not limited to, the "Illegal Conduct Exclusion" at Section IV.A.(iv) of the Policy's D&O Coverage, which Hiscox contends precludes coverage for "Loss in connection with any Claim made against any Insured … arising out of, based upon or attributable to the … committing of any deliberate criminal or deliberate fraudulent act, or any willful violation of any statute, rule or law, if any final adjudication establishes that such deliberate criminal or deliberate fraudulent act, or willful violation of statute, rule or law was committed."

39.     Hiscox contends that the Illegal Conduct Exclusion bars coverage for all insureds under the Policy based on certain purported admissions made by RDC in connection with the Underlying Settlement.  Additionally, Hiscox has asserted that Doud's criminal conviction also triggers the Illegal Conduct Exclusion, further barring coverage for RDC or Doud under the

Policy. RDC disputes Hiscox's coverage position in all respects for reasons also set forth in the various pleadings in the Coverage Action, including, specifically, the applicability of the Illegal Conduct Exclusion.

40. Despite years of motion practice, discovery has not commenced in the Coverage Action. As such, even apart from the coverage issues, the Trustee faces considerable expense related to discovery, potential motions for summary judgment, and trial in the Coverage Action. Accordingly, the Trustee agreed to participate in mediation, seeking both to limit potential costs and to eliminate the risks of trial. The Amended Settlement Agreement achieves both objectives by securing a $3.4 million payment to the estate, the majority of the $6 million available to RDC under the Policy, despite a strongly contested dispute where Hiscox claims the estate is entitled to nothing. *See* Michaelson Declaration, ¶6.

41. For the foregoing reasons, the first *Iridium* factor strongly supports approval of the Amended Settlement Agreement.

### (ii) The Coverage Action Has Already Proven to Be Both Complex and Protracted, and Does Not Appear to Be Near Resolution Absent the Settlement.

42. The second *Iridium* factor is "the prospect of complex and protracted litigation with its attendant expense, inconvenience, and delay, and the difficulties associated with collection of any judgment." The Coverage Action is clearly complex, involving coverage for two separate matters, the N.Y. Opioid Actions and the Civil Investigation, as well as numerous disputed issues as set forth in the pleadings in that action and as discussed above. The Amended Settlement Agreement is in the best interests of the estate because it avoids what would certainly be protracted litigation.

43. Hiscox contends that, in addition to the Illegal Conduct Exclusion, RDC's admissions that it was engaged in ongoing, intentional criminal activity at the time the Policy

14

was issued, and that it had notice of the government's investigation prior to the Policy's inception, demonstrate that any Loss (as defined under the Policy) resulting from RDC's criminal activity is barred as a matter of law by the "Prior Knowledge Exclusion," included in RDC's application for coverage and incorporated into the Policy by Endorsement No. 6.

44.    RDC disputes this assertion and that the Prior Knowledge Exclusion precludes coverage under the Policy.  However, because the application of that exclusion likely relies on facts known to RDC and its employees prior to the issuance of the Policy, it will require extensive discovery, which would be costly and take a significant amount of time.

45.    Additionally, even if RDC were to ultimately prevail in the Coverage Action, Hiscox has repeatedly indicated its intention to appeal the District Court's interpretation of the Policy, and previously did appeal the District Court's order granting a preliminary injunction. Accordingly, the Coverage Action would not likely be resolved by trial and RDC's estate would be subject to further expense, delay, and risk based on appeals if the Amended Settlement Agreement is not approved.

46.    For the foregoing reasons, the second *Iridium* factor strongly supports approval of the Amended Settlement Agreement.

### (iii)   The Amended Settlement Agreement Is Clearly in the Paramount Interests of Creditors.

47.    The third *Iridium* factor is "the paramount interests of the creditors, which includes the relative benefits to be received by members of any affected class and the degree to which creditors either do not object to or affirmatively support the proposed settlement." *In re Iridium Operating, LLC,* 478 F. 3d at 462.

48.    As previously discussed, the Amended Settlement Agreement results in a $3.4 million payment for the benefit of creditors as beneficiaries of the Trust, while reducing

litigation expenses and risks.  As noted, those risks include a possibility that the estate will recover nothing under the Policy, despite protracted and costly litigation.  As a result, the Trustee believes that the Amended Settlement Agreement satisfies the paramount interests of creditors, and that creditors will fully support the resolution reached by the Parties.  Michaelson Declaration, ¶¶ 6-8.

49.     For the foregoing reasons, the third *Iridium* factor strongly supports approval of the Amended Settlement Agreement.

   **(iv)   The Form of Amended Settlement Agreement Was Submitted by the Objecting Directors.**

50.     The fourth *Iridium* factor is "the degree to which the settlement is supported by other parties in interest."  *Id.*  The current form of the Amended Settlement Agreement was previously submitted by the Objecting Directors to the Court as their version of acceptable language.  The Trustee notes that no other party previously objected to the proposed settlement.

51.     Consistent with the Objecting Directors' concerns, there is no reference to "Insureds" in the Amended Settlement Agreement, which only governs the rights between the Parties (i.e., Hiscox and the Trustee).  All edits proposed by the Objecting Directors are incorporated in the Amended Settlement Agreement.

52.     To the extent that the Objecting Parties complain that the Settlement Agreement unfairly exhausts the primary $6 million of proceeds available to RDC, the objection should be overruled.  As discussed above, RDC made pre-Petition Date claims against the Policy and is entitled to recover those proceeds.  Hiscox raises numerous grounds to deny coverage altogether and is only prepared to settle in exchange for a limitation of its liability, namely the claim exposure raised by the Trustee on behalf of RDC.

DOCS_SF:108278.2 75015/003

53. Based on the information presently available, the Trustee believes the fourth *Iridium* factor weighs in favor of approval of the Amended Settlement Agreement or is, at worst, neutral.

**(v)   The Trustee's Counsel and the Court Are Experienced, Knowledgeable, and Fully Competent to Determine that the Amended Settlement Agreement Is in the Best Interest of the Estate.**

54. The fifth *Iridium* factor is "the competency and experience of counsel supporting the settlement and the experience and knowledge of the bankruptcy court judge reviewing the settlement." *Id.* Here, the Trustee's counsel and the Court are significantly experienced and knowledgeable and, therefore, fully competent to determine that the Amended Settlement Agreement is in the best interest of the estate.

55. Harter Secrest & Emery LLP ("**HSE**") represents RDC in the Coverage Action and has years of experience litigating complex insurance coverage issues.  HSE successfully pursued a motion to amend the complaint after the Petition Date, which allowed RDC to recover substantial costs that are reflected in the negotiated settlement.

56. Pachulski Stang Ziehl & Jones LLP ("**PSZJ**") represents the Trustee and has extensive experience with bankruptcy issues and complex litigation relating to bankruptcies. Both HSE and PSZJ participated in the mediation and related negotiations with Hiscox that led to the Amended Settlement Agreement and both firms believe that the settlement is reasonable and beneficial to the estate.

57. In addition to experienced counsel, the Bankruptcy Court is familiar with the Policy and the complexity of coverage issues based on extensive prior briefing and hearings, as well as briefing related to Doud's motion for relief from stay.  *See, e.g.,* Docket Nos. 922, 948, 1174, 1238, 1240, and 1303.

DOCS_SF:108278.2 75015/003

58.     For the foregoing reasons, the fifth *Iridium* factor strongly supports approval of the Amended Settlement Agreement.

### (vi)     The Amended Settlement Agreement Does Not Release Any Officer or Director, or Compromise the Independent Rights of Any Officer or Director of the Debtor.

59.     The sixth *Iridium* factor is "the nature and breadth of releases to be obtained by officers and directors."  *Id.*  The Amended Settlement Agreement releases Hiscox from known and unknown claims arising from or related to the Released Claims.  Under the Amended Settlement Agreement, no officer or director is obtaining a release.

60.     The Amended Settlement Agreement does not bar all further claims under the Policy, including, for example, claims by the Objecting Directors.  It is only an agreement between the Parties and a compromise of their respective rights under the Policy.  The Trustee, on behalf of the estate, is not waiving, reducing, or eliminating any independent claims that may continue to exist by or between other insureds and Hiscox, or between RDC and its insiders, officers, or directors.

61.     Accordingly, the sixth *Iridium* factor supports approval of the Amended Settlement Agreement.

### (vii)     The Amended Settlement Agreement Is the Product of Arms-length Negotiation.

62.     The seventh, and final, *Iridium* factor is "the extent to which the settlement is the product of arm's length bargaining."  *Id.*  The Amended Settlement Agreement is plainly a product of hard fought negotiations and arm's length bargaining.

63.     In addition to the aforementioned counsel representing the Debtor and Trustee, Hiscox was represented in the Coverage Action by Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, which like RDC's coverage counsel, has years of experience litigating complex

insurance coverage issues.  Hiscox and the Trustee are litigation adversaries and do not suffer any conflicts of interest.

64.    For these reasons, the final *Iridium* factor strongly supports approval of the Amended Settlement Agreement.

## SUMMARY

65.    For all the foregoing reasons, the proposed Amended Settlement Agreement far exceeds the lowest point in the range of reasonableness under the *Iridium* factors and has been renegotiated to address concerns raised by the Objecting Directors.  The Amended Settlement Agreement resolves all issues between the Trustee and Hiscox, prevents what could otherwise be long and protracted litigation, and is in the best interests of creditors and the estate.  Accordingly, the Trustee respectfully submits that the Amended Settlement Agreement is a fair and reasonable resolution of the litigation against Hiscox, and should be approved by this Court.

## NOTICE OF MOTION

66.    Notice of this Motion will be served on (i) the Office of the United States Trustee by ECF, (ii) counsel for Hiscox, (iii) counsel for the Objecting Directors, and (iv) all parties that have filed a request for service of papers under Bankruptcy Rule 2002, including Doud.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order (i) approving the Amended Settlement Agreement in its entirety, (ii) authorizing the Parties to take all actions necessary or appropriate to effectuate the Amended Settlement Agreement, and (iii) granting such other and further relief that the Court deems appropriate.

Date:  January 5, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Ilan D. Scharf*
Ilan D. Scharf (NY Bar No. 4042107)
Jason S. Pomerantz
Gail S. Greenwood
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:      ischarf@pszjlaw.com
            jpomerantz@pszjlaw.com
            ggreenwood@pszjlaw.com

*Counsel to Advisory Trust Group, LLC, in its
capacity as Trustee of the RDC Liquidating Trust*

DOCS_SF:108278.2 75015/003