# EXHIBIT 1

```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------x
In Re                              2-20-20230(PRW)
                                   Chapter 11
Rochester Drug Co-Operative, Inc.,
                    Debtor.         November 2, 2022
                                    Rochester, New York
-------------------------------------------------x
```

**TELEPHONIC MOTION HEARING/DECISION**


               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE PAUL R. WARREN
             UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:
SEE CASE DOCKET







       TRANSCRIBER:        Diane S. Martens
                           dimartens55@gmail.com


    (Proceedings recorded by electronic audio recording,
     transcript produced by computer.)

In re RDC, Inc. - 20-20230

1    or disapprove what's in front of me. But I can't rewrite the

2    terms of it, can I?

3         **MR. SCHARF:** Judge, unfortunately, or fortunately, in

4    some cases Courts cannot, I agree with that statement, you

5    cannot rewrite the settlement agreement. It's something that

6    was heavily negotiated. And when it's my turn, I'll have a

7    couple of comments and questions.

8         **THE COURT:** Sure. Go ahead.

9         **MR. SCHARF:** Thank you, your Honor.

10        One, I think I heard from a number of the counsel for

11   directors. I just want to confirm this: That there would be

12   no objection to this settlement agreement if it did not

13   affect the rights of the directors; is that correct?

14        (No response.)

15        **MS. DHINOJWALA:** And if it did not exhaust the policy

16   limits. What you're trying to do is exhaust the $6 million

17   for us.

18        **MR. SCHARF:** Okay. So if we, if we, if we -- if this

19   was -- if this does, if this settlement -- approved

20   settlement between the Trustee, and as is for $3.4 million,

21   and Hiscox without affecting the additional, the directors'

22   rights or exhausting the policy, it would be acceptable,

23   correct?

24        (No response.)

25        **THE COURT:** Well, let me try to answer that question.

1    That's the question I opened today's discussion with was

2  why the directors -- I think as I read the directors'

3  requested edits that came under cover of July 22, that's how

4  I read their version.  And my question to open today's

5  discussion was why is that version not acceptable and what I

6  heard was Hiscox won't approve it.

7    But that's how I read their proposed, what I viewed, and

8  I don't mean this in an insulting fashion at all, their

9  simplistic edits seemed simplistic in a careful sense to make

10  it clear that the directors are not affected, their

11  contractual rights to the extent they have any, or property

12  rights to the extent they have any, are not part and parcel

13  of the settlement.  That's how I read their proposal.

14    What I heard this morning was that's a nonstarter.

15    **MR. SCHARF:**  So, your Honor, the Trustee again, of

16  course, is kind of caught between a rock and a hard place in

17  some respects because I -- from what I'm hearing, I think --

18  and for a number of reasons -- I think it would be helpful to

19  have the directors confirm that statement on the record and

20  address that.  Just because -- look, we have an insurance

21  contract.  We have a insurance coverage action that's been

22  pending for years.  The insurance settlement agreement as to

23  the estate, I think, is eminently reasonable and based on the

24  record, I don't think there's any dispute on this, just again

25  as to the dispute between Hiscox and the Trustee provides for

1  a fair resolution of complicated and, you know, coverage

2  litigation which, of course, (indiscernible).

3      But I think that it would be very helpful for Hiscox to

4  hear, loud and clear, from the directors on the record that

5  there will be no objection to this settlement, if the, if the

6  settlement of $3.4 million does not affect the directors'

7  rights under the policy or exhaust coverage as to them.

8      **MR. BRUECKNER:**  I think it would be more important for

9  the directors to hear from Hiscox that that settlement would

10  be available -- that it would be acceptable to Hiscox.

11      **THE COURT:**  Well, let me ask this question to both

12  Mr. Brueckner and Mr. Scharf.

13      What was handed to the Court today was the directors'

14  requested edits that I believe were dated July 22, 2022,

15  would that be acceptable to the directors, if Mr. Scharf

16  said, okay, we'll go with your version, Mr. Brueckner, does

17  that solve your problem?

18      **MR. BRUECKNER:**  Speaking on behalf of our clients, your

19  Honor, Pagnotta and Klein, it would be acceptable, yes.

20      **MR. BOONE:**  Your Honor, I think that this discussion is

21  not particularly constructive.

22      There was a statement by Mr. Brueckner that the

23  settlement itself seemed orchestrated and in bad faith

24  because the timing of the action against the directors and

25  officers.  But the record clearly shows this settlement was

In re RDC, Inc. - 20-20230

1  the Trustee is ignoring all of history here and the

2  precarious position that we believe the Trustee and the

3  estate are in vis-a-vis coverage for this matter.

4      **THE COURT:**  Well, that's certainly all well and good.

5  The problem for the Court is the Trust can only settle what

6  it has property rights in.

7      And not to be critical:  The two cases that the

8  directors relied on, I personally didn't find particularly

9  helpful or interesting.  And was a little surprised that the

10  directors didn't cite *Adelphia Communications*, 364-BR-518

11  Bankruptcy Court Southern District 2007 which dealt with a

12  similar issue where Adelphia, the Trustee there wanted to

13  compromise a D&O policy.  And in footnote four, the Southern

14  District made it very clear that, unlike this case, the

15  *Aldelphia* case did not have a priority of payments provision.

16      Here we do.  And little bit different there.  That was a

17  363(f) motion.  But at the end of the day, the Court found

18  that it could not approve the proposed settlement because it

19  was compromising rights of directors and objectors who may

20  have contract or property right, property rights to the pot

21  available from the insurers.

22      The other case that I found particularly instructive

23  that wasn't cited is *In re SoyNut Butter Company*, 2018

24  Bankruptcy Lexis 2300, Bankruptcy Court, Northern District of

25  Illinois, 2018.  That, again, involved a little bit of 363(f)

1  but had a lot of comments that ring true here where the Trust

2  there, the Trustee, the debtor, was trying to compromise a

3  policy, exhaust a policy in which other parties had

4  contractual rights.

5      Whether or not those rights might win out in litigation

6  wasn't the issue before the Court.  The issue was whether the

7  Trustee could compromise or exhaust the policy limit and at

8  Page *9 of the Lexis version, the Court said SoyNut's

9  insurance policies and its resulting contractual right to the

10  proceeds under those policies undoubtedly constitute property

11  of the estate.

12      However, that does not mean all of the policy property

13  proceeds belongs solely to the estate.  In fact, the answer

14  to that question turns on the nature of the policy.

15      The Court went on to cite the *Caesars* case at

16  533-BR-714, Page 734 and said in *Caesars* the bankruptcy court

17  considered broadly-written policy that provided coverage to

18  the Chapter 11 debtor, non-debtor parent company and other

19  subsidiaries along with all of their respective directors and

20  officers.  Because the debtor and the objecting non-debtor

21  had the same organizational coverage, the Court found the

22  additional insureds held independent rights to policy

23  proceeds, rights that are their property alone.

24      The Court went on to say, citing another case, *Petters*,

25  at 419-BR-369 at Page 375, again, quoting, recognizing that

1  any additional insured has a contractually distinct status

2  that runs directly between itself and the insurer so that

3  right to receive payment on a covered claim is property of

4  that insured itself.  As such, even though the debtor's

5  rights and the proceeds constituted estate property, they

6  could not trump an additional insureds's quote, "equal and

7  independent right to the policy proceeds", closed quote,

8  which are not estate property.

9      And then the Court said the same principle holds true

10 here.  SoyNut in selling its contractual right to the policy

11 back to the carrier, that is all estate owns.  The objecting

12 parties are entitled to exercise their own right to seek

13 indemnification and defense under the sentinel policy until

14 the policy limits are exhausted.

15     And that Court reached the same conclusion as did Judge

16 Gerber in the *Adelphia* case and said because the directors

17 and officers had independent contractual rights, whether or

18 not those rights might ultimately be found to be

19 enforceable -- under state law's another matter -- but

20 because they had independent contractual rights, those rights

21 could not be adversely affected by a settlement.

22     And what I see in Paragraph 7 of the redline policy

23 before me does exactly that.  And based on the authority of

24 both the *SoyNut* case and the *Adelphia Communications* case,

25 this Court finds that the proposed settlement between the

1    Trustee and Hiscox is affecting, or may affect, the rights of

2    the directors in policy proceeds or contractual rights beyond

3    the estate's interest.

4         And for those reasons, the Court is not prepared today

5    to approve the settlement agreement.

6         Again, based on *SoyNut Butter* and *Adelphia*

7    *Communications*, I think this settlement agreement goes too

8    far.

9         Because the settlement is written in a manner in which

10   one's imagination is left open in what's not said, the fact

11   that it's exhausting the policy limits in which the directors

12   have a contractual right under coverage A and under the

13   priority of payments are the first priority insured party,

14   the way Paragraph 7 is set up, it appears to improperly

15   impair those directors' contractual rights.

16        Therefore, this Court -- while this under the Iridium

17   factors, the settlement certainly is in best interest of

18   estate.

19        However, that's not the end of the discussion.  The

20   Court cannot find based on the presentation made by the

21   Trustee that the settlement is fair and reasonable because it

22   appears to either directly or indirectly cut off the contract

23   rights of the directors who have independent contractual and

24   property rights under the D&O policy.

25        So, rather than write a decision that won't come out for

In re RDC, Inc. - 20-20230

1   a month, I'm entering this oral decision with all its

2   blemishes and bumps and bruises to put an end to this

3   discussion.

4        I'm going to deny the motion at ECF 1585 without

5   prejudice.

6        If the directors, the carrier and the Trustee, are able

7   to come up with a version of a settlement agreement that

8   leaves the directors' rights intact, so be it.

9        If that's a deal killer, you still have a case pending

10  in front of Judge Wolford.  I know she's keeping an eye on

11  what I'm doing up here.  And if that means that action is

12  going to go forward, so it be.  If that means that the

13  directors may need to intervene in that action to preserve

14  and protect their property rights, that's a litigation

15  decision that they'll need to make.

16       But the burden of proof under 9019 on the Trustee today

17  is to not only prove that the settlement is in the best

18  interest of the estate but also to prove that it's fair and

19  reasonable.  And based on the holdings in the *Adelphia*

20  *Communications* case and the *SoyNut Butter* case, this Court's

21  determination is that this proposed settlement is not fair

22  and reasonable to the covered directors given the priority of

23  payment provisions that are in the contract.

24       And had they been in the Adelphia contract, I suspect

25  that that decision would have been many pages fewer, would

In re RDC, Inc. - 20-20230

1  have reached the same result but for the same reason that

2  this Court is following the *SoyNut Butter* decision.

3       So, this oral decision, the transcript of which is

4  incorporated by reference, and all of your submissions are

5  the record in this case, that's the Court's ruling.  We are

6  going to be in recess and off the record.

7       And again, the motion is denied.  It is denied without

8  prejudice, however.

9       I want to thank you all for your presentations.  I wish

10 you good luck in the future.  And we are off the record.

11      (WHEREUPON, proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25