# EXHIBIT 2

# AMENDED SETTLEMENT AGREEMENT AND RELEASES

This Amended Settlement Agreement and Releases ("Agreement") is entered into as of the Effective Date by and between: on the one hand, Advisory Trust Group, LLC, solely in its capacity as Liquidating Trustee of the RDC Liquidating Trust (the "Trustee") for the bankruptcy estate (the "Estate") of Rochester Drug Co-operative, Inc. ("RDC" or the "Debtor"); and, on the other hand, Hiscox Insurance Company Inc. ("Hiscox"). For purposes of this Agreement, the Trustee and Hiscox are each individually a "Party" and collectively the "Parties." By way of clarification, the term "Party" or "Parties" shall not include the current or former directors of the Debtor.

## RECITALS

**WHEREAS**, Hiscox issued Private Company Management Liability Insurance Policy No. UVA1901769.17 to RDC for the Policy Period of March 8, 2017 to March 8, 2018 (the "Policy");

**WHEREAS,** RDC provided notice to Hiscox of and sought coverage under the Policy for defense costs incurred in connection with over thirty-one (31) civil actions regarding RDC's sale of opioids brought by the State of New York and numerous counties, cities, and towns throughout the State of New York (the "NY Opioid Actions");

**WHEREAS**, RDC provided notice to Hiscox of and sought coverage under the Policy for defense costs incurred in connection with an investigation by the United States Drug Enforcement Agency and/or other agencies of the United States government into potential civil liability arising out of RDC's sale of opioids (the "Civil Investigation");

**WHEREAS**, RDC provided notice to Hiscox of and sought coverage under the Policy for defense costs incurred in connection with an investigation by the United States Attorney, the

United States Department of Justice, the United States Drug Enforcement Agency, and/or other agencies of the United States government, into actual or alleged criminal activity arising out of RDC's sale of opioids (the "Criminal Investigation");

**WHEREAS**, RDC provided notice to Hiscox of and sought coverage under the Policy for defense costs incurred in connection with the action captioned *United States of America v. Rochester Drug Co-operative, Inc.*, Case No. 1:19-cv-03568-LAK (S.D.N.Y.) (the "Civil Action");

**WHEREAS**, RDC provided notice to Hiscox of and sought coverage under the Policy for defense costs incurred in connection with the action captioned *United States of America v. Rochester Drug Co-operative, Inc.*, Case No. 1:19-cr-00290-NRB (S.D.N.Y.) (the "Criminal Action");

**WHEREAS**, RDC filed a civil action against Hiscox, captioned *Rochester Drug Co-Operative, Inc. v. Hiscox Insurance Company, Inc.*, Case No. 6:20-cv-6025 (W.D.N.Y.), seeking a declaration of coverage for the NY Opioid Actions and Criminal Investigation (the "Coverage Action");

**WHEREAS**, RDC filed a voluntary petition in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"), captioned *In re Rochester Drug Co-Operative, Inc.*, Case No. 20-20230, seeking relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Proceeding");

**WHEREAS,** on February 26, 2021, the *Second Amended Chapter 11 Plan of Liquidation* [Bankr. Docket No. 1145] (the "Plan") was confirmed by the Bankruptcy Court pursuant to its *Decision and Order and Findings of Fact and Conclusions of Law Confirming Second Amended Chapter 11 Plan of Liquidation* [Bankr. Docket No. 1256] (the "Confirmation Order");

**WHEREAS**, pursuant to the Plan, the Confirmation Order, and that certain Liquidating Trust Agreement and Declaration of Trust (attached to the Plan) (the "Trust Agreement"), all property of RDC's estate, including Causes of Action (as defined in the Plan) and the Policy, became property of the Liquidating Trust. Pursuant to section 5.6 of the Plan, the Trustee is vested with the power and authority to manage such property on behalf of the Liquidating Trust, including the power and authority to litigate, defend, settle, or withdraw Causes of Action, as well as the power to assign, transfer, compromise, and settle such actions;

**WHEREAS**, pursuant to section 5.6 of the Plan, the Trustee may settle Causes of Action "without supervision or approval of the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order." Notwithstanding such provision, Hiscox has requested an order approving this Agreement from the Bankruptcy Court and the Trustee has agreed to bring a motion to seek such an order;

**WHEREAS**, the Parties desire to compromise, settle, and resolve any and all current and future disputes, claims, actions, suits, demands, and causes of action regarding, arising out of, or relating in any way to:

 (a) the NY Opioid Actions;

 (b) the Civil Investigation;

 (c) the Criminal Investigation;

 (d) the Civil Action;

 (e) the Criminal Action; and/or

 (f) the Coverage Action;

(collectively, "Released Claims"), as set forth herein;

**WHEREAS**, this Agreement amends and supersedes the Settlement Agreement to Release and Bar Claims entered by the Parties on or about March 30, 2022.

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1. **Conditions Precedent.** It shall be a condition precedent absolute to any obligation of the Parties under this Agreement that Hiscox first receive notice and a copy thereof, in accordance with the notice provisions of paragraph 10 of this Agreement, of the following:

    a. a copy of this Agreement, fully executed by all Parties;

    b. approval by the Bankruptcy Court of this Agreement, and the settlement effected thereby, in accordance with paragraph 2 of this Agreement and the Bankruptcy Code;

    c. a complete set of invoices for all defense costs incurred in connection with the NY Opioid Actions and Criminal Investigation, as required under the terms of the separate Confidentiality Agreement executed by the Parties (the "Confidentiality Agreement");

    d. complete instructions sufficient to effect payment of the Settlement Payment due in accordance with paragraph 5 of this Agreement; and

    e. an executed W-9 form as issued by the Internal Revenue Service of the United States of America with respect to the payee identified pursuant to paragraph 1.d. of the Agreement.

2. **Bankruptcy Court Approval.** Notwithstanding section 5.6 of the Plan, pursuant to which the Trustee may settle Causes of Action without further Bankruptcy Court approval, the Parties agree, as set forth in paragraph 1.b. of this Agreement, that approval of the Bankruptcy Court is a condition precedent to any obligation of the Parties under this Agreement. Such approval shall be deemed to have occurred if, and when:

    a. the Bankruptcy Court has entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving this Agreement (the "9019 Order"); and

> b. the 9019 Order has not been reversed, stayed, modified, or amended, and as to which (i) the time to appeal the 9019 Order, or petition for certiorari or move for reargument, rehearing, or a new trial has expired and no appeal, petition for certiorari, or motion for reargument, rehearing, or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure, or otherwise, fourteen (14) days after the entry of such 9019 Order) whereby the 9019 Order has become a final, non-appealable order (the "Final Order").

The Trustee may, but under no circumstances shall be required to, appeal or respond to any appeal of any 9019 Order that fails to approve this Agreement. It is otherwise understood and agreed that should the 9019 Order not become a Final Order, then this Agreement shall be of no force or effect.

3. **Non-Approval of Agreement.** Each Party understands, acknowledges, and agrees that in the event this Agreement is not approved by the Bankruptcy Court or the conditions precedent set forth in paragraph 1 are not satisfied, nothing herein shall be deemed a representation or admission by any Party as to any issue, and all rights and obligations of the Parties prior to entry into this Agreement shall be restored.

4. **Settlement Payment.** In consideration of the mutual agreements and covenants in this Agreement, within thirty (30) days of the date Hiscox has been provided, in accordance with paragraph 1 of this Agreement, all materials set forth therein, Hiscox shall pay or cause to be paid Three Million Four Hundred Thousand US dollars ($3,400,000.00) for the benefit of the Debtor (the "Settlement Payment"), in accordance with the payment instructions provided by the Trustee pursuant to paragraph 1.d. of this Agreement.

5. **Claim and Policy Release by the Trustee.** Effective upon the Settlement Payment having been made, and in consideration of the mutual agreements and covenants in this Agreement, the Trustee, on behalf of the Debtor, the Estate, and to the extent permitted under the

Plan or otherwise by law or in equity, each of their respective ~~current and former directors, officers~~, employees, agents, representatives~~, attorneys~~, heirs, successors, and assigns (the foregoing persons or entities, collectively, the "Trust Releasing Parties")~~,~~ does hereby release, acquit, and forever discharge Hiscox, any member of the Hiscox group of companies, and their respective current and former directors, officers, employees, agents, representatives, ~~attorneys~~, heirs, successors, assigns, insurers, and reinsurers (collectively, the "Hiscox Released Parties") of and from any and all actual or potential claims, counterclaims, actions, causes of action, suits, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, rights of action, obligations, judgments, or demands whatsoever, in law or in equity, now existing or hereafter arising, whether contractual, compensatory, extra-contractual, bad-faith, intentional, fraudulent, punitive, exemplary, statutory, in tort, or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, that the Trust Releasing Parties had, have, or may have in the future against the Hiscox Released Parties related in any way to or arising out of the Released Claims, the facts or circumstances alleged or at issue therein, and/or the Policy; provided, however, that the release shall not affect~~: (1) the rights that any Insured may otherwise have to the $1 million Additional Executive Limit potentially available for claims under the Policy's Directors & Officers Liability Coverage Part pursuant to Item 6(e) of the Declarations, as amended by Endorsement No. 3; (2) any rights that any Insureds may otherwise have to pursue claims against his, her, or its own attorneys; and/or (3)~~ RDC's and/or the Trustee's rights regarding the enforcement of Hiscox's obligations pursuant to this Agreement. Notwithstanding any provision herein to the contrary, the term "Trust Releasing Parties" shall not include the current or former directors of the Debtor.

6. **Claim Release by Hiscox.** Effective upon the Settlement Payment having been made, and in consideration of the mutual agreements and covenants in this Agreement, Hiscox, on behalf of itself and any member of the Hiscox group of companies, their respective current and former directors, officers, employees, agents, representatives, heirs, successors, assigns, insurers, and reinsurers (collectively, the "Hiscox Releasing Parties") does hereby release, acquit, and forever discharge the Trustee, the Debtor, the Estate, and their respective current and former directors, officers, employees, agents, representatives, ~~attorneys~~, heirs, successors, and assigns (collectively, the "Trust Released Parties") of and from any and all actual or potential claims, counterclaims, actions, causes of action, suits, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, rights of action, obligations, judgments, or demands whatsoever, in law or in equity, now existing or hereafter arising, whether contractual, compensatory, extra-contractual, bad-faith, intentional, fraudulent, punitive, exemplary, statutory, in tort, or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, that the Hiscox Releasing Parties had, have, or may have in the future against the RDC Liquidating Trust and/or the Trust Released Parties related in any way to or arising out of the Released Claims, the facts or circumstances alleged or at issue therein, and/or the Policy; provided, however, that the release shall not affect~~: (1) Hiscox's rights regarding any claim for coverage under the $1 million Additional Executive Limit potentially available for claims under the Policy's Directors & Officers Liability Coverage Part pursuant to Item 6(e) of the Declarations, as amended by Endorsement No. 3; and/or (2)~~ Hiscox's rights regarding the enforcement of RDC's and/or the Trustee's obligations pursuant to this Agreement.

7. **Policy Cancellation, Termination, and Exhaustion.** ~~For the sake of clarity, each~~Each Party understands, acknowledges, and agrees that, effective upon the Settlement

Payment having been made, and in further consideration of the mutual agreements and covenants contained herein, this Agreement shall result in the termination of ~~all Insureds'~~ the Trustee's and RDC's rights under the Policy~~, including~~, to the fullest extent permitted under the Plan or otherwise by law or in equity, the rights of the Trustee~~,~~ and RDC, ~~and each and every other Insured,~~ and the limits of liability of the Policy potentially available to the Trustee or RDC shall be deemed fully exhausted with respect to the Parties, including, but not necessarily limited to: the $15 million Aggregate Limit of Liability potentially available pursuant to Item 3 of the Declarations; the $5 million Limits of Liability potentially available for each of the Policy's coverage parts pursuant to Item 4 of the Declarations; and the $1 million in Defense Costs Outside of Limit of Liability potentially available pursuant to Endorsement No. 17; provided, however, that the $1 million Additional Executive Limit potentially available for claims under the Policy's Directors & Officers Liability Coverage Part pursuant to Item 6(c) of the Declarations, as amended by Endorsement No. 3, shall remain available for the payment of any Loss in accordance with the terms of the Policy.

8. **No Admissions.** Each Party understands, acknowledges, and agrees that, by entering into this Agreement, they do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings or litigation and expressly disclaim any liability to any other party or person. Accordingly, this Agreement carries no precedential value in this or any other matter. This Agreement shall never be treated as an admission by any Party or Insured of any liability whatsoever or as an admission of any violation of the rights of any other party or person, or the violation of any law, statute, regulation, duty, or contract whatsoever. Further, this Agreement should not be relied upon by any person or introduced as evidence of any obligation

of Hiscox under the Policy, or of Hiscox or any other Hiscox member company under an identical or similar policy.

9. **Unknown Claims or Facts.** Each Party understands, acknowledges, and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each Party expressly assumes the risk of such difference in fact and agrees that this Agreement shall be and will remain effective notwithstanding any such difference in fact. Additionally, each Party specifically acknowledges that it may have rights, claims, or causes of action, or may have sustained damages, losses, costs, charges, attorneys' and other fees, and expenses that are presently unknown and unsuspected, and that it may sustain additional amounts in the future. Nevertheless, each Party understands, acknowledges, and agrees that this Agreement has been negotiated and agreed upon in light of such additional amounts, which are covered by this Agreement.

10. **Notices.** Each Party understands, acknowledges, and agrees that, in the event notice shall be required under this Agreement for any reason, such shall be in writing and delivered via email and by Overnight Mail via Federal Express or United Parcel Service addressed as follows:

    <u>Trustee</u>:                               Advisory Trust Group, LLC
                                                  10645 N. Oracle Road
                                                  Suite 121-371
                                                  Oro Valley, AZ 85737

    <u>Trustee's copy to</u>:             Pachulski Stang Ziehl & Jones LLP
                                                  780 Third Avenue, 34th Floor
                                                  New York, NY 10017
                                                  Attention: Ilan D. Scharf, Esq.
                                                  ischarf@pszjlaw.com

|              | Harter Secrest & Emery LLP |
|--|--|
|              | 50 Fountain Plaza, Suite 1000 |
|              | Buffalo, NY 14202 |
|              | Attention: Lauren R. Mendolera, Esq. |
|              | lmendolera@hselaw.com |
| <u>Hiscox</u>: | Hiscox USA |
|              | 5 Concourse Parkway |
|              | Suite 2150 |
|              | Atlanta, GA 30328 |
|              | Attention: Karen Dunbar, Esq. |
|              | karen.dunbar@hiscox.com |
| <u>Hiscox copy to</u>: | Wilson, Elser, Moskowitz, Edelman & Dicker LLP |
|              | 150 East 42nd Street |
|              | New York, NY 10017 |
|              | Attention: Richard W. Boone, Esq. |
|              | richard.boone@wilsonelser.com |

11. **<u>Default.</u>** Each Party understands, acknowledges, and agrees that, in the event that any Party shall default in any obligation under this Agreement and this default is not cured within twenty (20) business days of receipt of a notice of default sent in compliance with paragraph 11 of this Agreement, which notice shall specify with full particulars the basis for the claimed default and what is required to cure, the sole remedy of a Party claiming a default shall be the enforcement of this Agreement.

12. **<u>Acknowledgement of Terms.</u>** Each Party represents, warrants, and covenants that he, she, they, or it has or have read and understand the terms of this Agreement, have consulted with his, her, their, or its respective counsel, and understand and acknowledge the significance and consequence of each such term. No Party is relying on information provided by or from the other Party in entering into this Agreement and there are no duties of disclosure by either Party to the other. This Agreement was executed after arm's-length negotiations between the Parties and their respective counsel, and reflects the conclusion of each Party that this Agreement is in his, her, their, or its best interests. Each Party represents, warrants, and

covenants that the person executing this Agreement on his, her, their, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Agreement.

13. **<u>Advice of Counsel.</u>** Each Party represents, warrants, and covenants that he, she, they, or it has or have been represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement, have read this Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same. The Parties have had the Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Agreement and its nature and effect. The Parties further represent that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

14. **<u>Attorneys' Fees and Costs.</u>** Each Party understands, acknowledges, and agrees that they shall each bear their own attorneys' fees and expenses in connection with all matters relating to the preparation and execution of this Agreement, satisfaction of any condition precedent to this Agreement, enforcement of this Agreement, and/or in connection with the Coverage Action or any of the Released Claims.

15. **<u>No Assignment.</u>** The Trustee, on behalf of itself, the Debtor, and the Estate, hereby represents, warrants, and covenants that neither it nor anyone acting on its behalf or on behalf of the Debtor or the Estate has heretofore assigned any of his, her, their, or its obligations, respective rights, privileges, or claims under the Policy or as regards the Released Claims to any other person or entity not a party to this Agreement. Hiscox similarly represents, warrants, and

covenants that neither it nor anyone acting on its behalf has heretofore assigned any of his, her, their, or its respective obligations, rights, privileges, or claims under the Policy or as regards the Released Claims to any other person or entity not a party to this Agreement.

16. **Parties Affected.**  Each Party understands, acknowledges, and agrees that this Agreement shall enure to the benefit of, and shall be binding upon, each of the Parties and their respective parents, subsidiaries, affiliates, shareholders, members, partners~~, directors, officers~~, employees, trustees~~, attorneys~~, agents, representatives, spouses, successors, heirs, and assigns.

17. **Entire Agreement.**  Each Party understands, acknowledges, and agrees that this Agreement sets forth the entire agreement between the Parties with respect to the subject matter of this Agreement, that it supersedes all prior agreements and understandings of the Parties, and that this Agreement shall not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a writing duly executed by all of the Parties.

18. **Waiver of Term or Breach.**  Each Party understands, acknowledges, and agrees that any term of this Agreement, or any breach thereof, may be waived only by a writing signed by all of the Parties.  No delay or failure by a Party to exercise any right under this Agreement shall operate to waive any rights under this Agreement in the absence of a signed writing. Waiver of any one breach shall not be deemed to constitute a waiver of any other breach of the same or any other provision of this Agreement.

19. **Severability.**  Each Party understands, acknowledges, and agrees, in the event that, once all conditions precedent to this Agreement have been satisfied, any of the provisions of this Agreement is deemed to be invalid and unenforceable, such provision(s) shall be severed from the remainder of this Agreement only if and to the extent agreed upon by the Parties in

writing and, in any event, shall not cause the invalidity and/or unenforceability of the remaining provisions of this Agreement.

20. **Neutral Interpretation.** Each Party understands, acknowledges, and agrees that this Agreement shall not be construed in favor of any particular Party, but shall be construed as if it were drafted by all Parties equally.

21. **Division and Headings.** Each Party understands, acknowledges, and agrees that the division of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

22. **Execution of Documents.** Each Party understands, acknowledges, and agrees that this Agreement may be executed in one or more counterparts, and in both original form and one or more copies, each of which shall be deemed to be an original, but all of which shall be deemed to be and constitute one and the same instrument.

23. **Governing Law/Forum Selection.** Each Party understands, acknowledges, and agrees that the Bankruptcy Court shall have jurisdiction to interpret, effectuate, and enforce the terms of this Agreement and the Parties expressly consent to the exercise of personal jurisdiction for that limited purpose. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to its conflict-of -law principles.

[continued on next page]

24. **Effective Date.** Each Party understands, acknowledges, and agrees that this Agreement shall become effective on the date that the last signatory duly executes the Agreement.

[signature page follows]

WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL. WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) set forth below.

Trustee

_____     Dated: December___, 2022

By: ___
Its: ___

Hiscox Insurance Company Inc.

_____     Dated: December___, 2022

By: ___
Its: _____

4874-4463-2870, v. 1

Document comparison by Workshare Compare on Wednesday, January 4, 2023 2:48:40 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/107662/1 |
| Description | DOCS_SF-#107662-v1-[RDC_Settlement_Agreement_(WE_Edits_7-14-22) |
| Document 2 ID | PowerDocs://DOCS_SF/108275/1 |
| Description | DOCS_SF-#108275-v1-[RDC]_Hiscox_Settlement_(December) |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 17 |
| Deletions | 18 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 35 |