**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | Chapter 11 |
| ROCHESTER DRUG CO-OPERATIVE, INC., | Case No. 20-20230 (PRW) |
| Debtor. | |

## MOTION PURSUANT TO RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT AND MUTUAL LIMITED RELEASES BETWEEN THE RDC LIQUIDATING TRUST AND FORMER DIRECTORS AND OFFICERS OF THE DEBTOR

Advisory Trust Group, LLC (the "**Trustee**"), solely in its capacity as Trustee of the RDC Liquidating Trust (the "**Trust**") hereby moves for entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure approving that certain *Settlement Agreement and Mutual Limited Releases* (the "**Settlement Agreement**") entered into by the Trustee, on the one hand, and Laurence F. Doud III ("**Doud**"), Donald Arthur, Stephen Giroux, Christopher Casey, Garry Mrozek, Richard Klenk, Sherwood Klein, Joseph Lech, Boris Mantell, Joseph Scott Miskovsky, and Paul Pagnotta (collectively, the "**Directors**") (Doud and the Directors, collectively referred to as "**Defendants**"), on the other hand. In support of this Motion, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Trustee seeks approval of a settlement of an adversary proceeding, captioned *Advisory Trust Group, LLC v. Doud, et al.,* Case No. 22-2073- PRW (the "**D&O Action**"), against the Defendants for breach of fiduciary duties, among other claims, in connection with RDC's sale of opioids and violations of the Controlled Substances Act during the years preceding RDC's entry into a Deferred Prosecution Agreement and its eventual petition for voluntary bankruptcy.

2. The Trustee and the Directors participated in a mediation of the D&O Action on November 2 and 3, 2023. Following the mediation, the Parties negotiated the Settlement Agreement pursuant to which the Defendants will pay $2,500,000 to the Trust in exchange for mutual limited releases by the Parties. Given the amount of the settlement, the risks of litigation, and the benefit to the Trust and its beneficiaries, the Trustee respectfully submits that ample basis exists to approve the settlement pursuant to Fed. R. Bankr. P. 9019.

## JURISDICTION

3. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding pursuant to 28 U.S.C. §157(b).

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. In addition, the Court retained jurisdiction over this chapter 11 case under section 10.13 of the *Second Amended Chapter 11 Plan of Liquidation* [Docket No. 1145] (the "**Plan**") to the fullest extent permitted by law, including any action to determine any motion, contested matter, or other litigated matter pending on or after the confirmation date.

## FACTUAL BACKGROUND

### The Bankruptcy Case

6. On March 12, 2020 (the "**Petition Date**"), RDC filed a voluntary petition in this court (the "**Bankruptcy Court**") for relief under chapter 11 of the Bankruptcy Code. Prior to filing its chapter 11 case, RDC was a distributor of pharmaceutical drugs. RDC's bankruptcy was precipitated by the opioid crisis and RDC's eventual consent to a Deferred Prosecution Agreement and $20 million of penalties levied against the company in April 2019.

7.      On February 26, 2021, the Plan was confirmed by the Bankruptcy Court pursuant to its *Decision and Order and Findings of Fact and Conclusions of Law Confirming Second Amended Chapter 11 Plan of Liquidation* [Docket No. 1256] (the "**Confirmation Order**").

8.      Pursuant to the Plan, the Confirmation Order, and that certain Liquidating Trust Agreement and Declaration of Trust (as attached to the Plan, the "**Trust Agreement**"), the Trustee succeeded to the rights of RDC and retains the exclusive right, power and interest to pursue, commence, prosecute, compromise, settle, and dismiss causes of action belonging to the Debtor.

9.      Pursuant to section 5.6 of the Plan, the Trustee may settle causes of action "without supervision or approval of the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than restrictions expressly imposed by the Plan and Confirmation Order."  Notwithstanding such provision, the Trustee has agreed to request an order approving the Settlement Agreement described below.

**The D&O Action**

10.     On March 8, 2022, the Trustee filed the D&O Action asserting causes of action for Breach of Fiduciary Duty, Wrongful Declaration of Dividend, Avoidance and Recovery of Constructively Fraudulent Transfers, Avoidance and Recovery of Intentional Fraudulent Transfers, and Unjust Enrichment.  The D&O Action is based on alleged acts and omissions of the Defendants prior to the Petition Date between approximately 2012 and 2017 in connection with RDC's distribution and sale of opioids in violation of the Controlled Substances Act.  The Trustee alleges, among other matters, that the Defendants consciously ignored a prior investigation, legal action, and penalties imposed by the U.S. Drug Enforcement Agency ("**DEA**") against RDC and systematically disregarded RDC's compliance obligations under the

Controlled Substances Act, including the requirement that RDC investigate and report suspicious orders as set forth in the Code of Federal Regulations. The Trustee further alleges that such breach of fiduciary duties was in bad faith or constituted a knowing violation of the law that exposed the company to extraordinary liability, civil penalties, loss of its DEA registration and ultimately, loss of the business as a going concern. In addition, the Trustee alleges that RDC suffered damages based on attorneys' fees and costs incurred to respond to the government's investigation, as well as state and federal lawsuits, and damages from the wrongful distribution of patronage dividends when RDC was insolvent.

11.     The Defendants deny the Trustee's allegations of wrongdoing and dispute any liability, including for breach of fiduciary duties arising from bad faith, a knowing violation of the law, or resulting in personal gain to them individually.

12.     Between August 2022 and September 2023, prior to mediation, the Parties conducted substantial written discovery and completed six "pre-mediation" depositions. Mediation took place in-person before (Ret.) Judge Allen Hurkin-Torres on November 2 and 3, 2023. All matters are currently stayed pending approval of the Settlement Agreement. In the absence of a settlement, the Parties are scheduled to take over twenty-six (26) days of fact witness depositions, including depositions of numerous pharmacies owned by the Directors. In addition, expert discovery was scheduled to commence in March 2024 and finish in May 2024. The Defendants requested a jury trial, and four days of trial were tentatively scheduled in August/September 2024. *See* Adv. Docket No. 97.

**The Hiscox Policy**

13.     Hiscox Insurance Company, Inc. ("**Hiscox**") issued a certain Private Company Management Liability Insurance Policy (No. UVA1901769.17) to RDC for the policy period of March 8, 2017 through March 8, 2018 (the "**Hiscox Policy**").

14.     As is pertinent here, the Hiscox Policy includes a Directors & Officers Liability Coverage Part, subject to a $5,000,000 limit of liability and a $25,000 retention.  Pursuant to Endorsement No. 17, the Hiscox Policy provides for an additional $1,000,000 in Defense Costs incurred in excess of the retention and an additional $1,000,000 Additional Executive Limit of Liability.

15.     Prior to the Petition Date, RDC provided notice and sought coverage under the Hiscox Policy for various actions and investigations regarding RDC's sale of opioids, which was the subject of an insurance coverage dispute, litigation, and settlement approved by this Court.[1]

16.     Following the commencement of the D&O Action, the Directors provided notice and sought coverage under the Hiscox Policy for defense costs and claims that are the subject of the Settlement Agreement.

**The Settlement Agreement**

17.     The Trustee and the Defendants (collectively, the "**Parties**") entered into the Settlement Agreement, attached hereto as **Exhibit A,** subject to its  approval by the Bankruptcy Court.  The salient terms of the Settlement Agreement are described below for descriptive purposes only and interested parties should refer to the complete agreement and its terms.

---

[1] *See Order Approving Settlement Agreement and Releases Between the RDC Liquidating Trust and Hiscox Insurance Company, Inc.* entered May 9, 2023 [Docket No. 2033].  Pursuant to the approved settlement, the Trust released all rights against the Hiscox; and relief from the automatic stay, to the extent that it applies, was granted to permit Hiscox to make payments to or on behalf of the Directors under the Hiscox Policy.

18.     The Settlement Agreement is a compromise, settlement, and the mutual limited releases between the Parties to resolve all current and future claims in any way arising out of or relating to the D&O Action and/or the Hiscox Policy.

19.     **Settlement Payment.**  Pursuant to the Settlement Agreement, and subject to certain conditions precedent, the Defendants will pay $2,500,000 to the Trustee for the benefit of the estate in exchange for mutual agreements and releases.

20.     **Conditions Precedent.**  Conditions precedent to the settlement include execution of the Settlement Agreement and an order by the Bankruptcy Court approving the Settlement Agreement. The Trustee has agreed to bring this motion and seek an order approving the Settlement Agreement at the request of the Directors and Hiscox and notwithstanding that the Plan provisions allow settlement of claims without further supervision or court approval.

21.     **Mutual Limited Releases.**  Pursuant to paragraphs 4 and 5 of the Settlement Agreement, the Parties will enter mutual releases relating to the D&O Action and the Hiscox Policy.  The Trustee, on behalf of the Debtor and the estate and all agents thereof, will release the Defendants from all actual or potential claims, counterclaims, expenses, or demands, now or in the future, based on factual matters asserted in the D&O Action, and any and all claims that could be asserted against Hiscox for payment from the Hiscox Policy.  Likewise, the Defendants release the Trustee from all actual or potential claims, counterclaims, expenses, or demands, now or in the future, solely based on the claims asserted in the D&O Action, and any and all claims that could be asserted against Hiscox for payment from the Hiscox Policy.  The releases do not affect the Parties' rights and obligations under the Settlement Agreement, and nothing in the Settlement Agreement alters the Trustee's right to pursue accounts receivable or trade debt owed to RDC from the Defendants or their pharmacies, including the pending action entitled, *Advisory*

*Trust Group LLC v. Rosenkrans Pharmacy Inc., et al.,* Sup. Ct. of New York, County of Monroe,

case number E2023 009815, nor do the releases affect any defenses thereto.

22.     The Trustee has reviewed the Settlement Agreement and is familiar with the D&O

Action and the Hiscox Policy.  Giving full consideration to the costs and risks of litigation and

the benefits of the settlement, the Trustee believes that the Settlement Agreement satisfies the

paramount interests of RDC's creditors and should be approved by this Court.  *See* Declaration

of Robert Michaelson filed herewith.

## RELIEF REQUESTED

23.     By this motion, the Trustee seeks entry of an order pursuant to section 105(a) of

the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Settlement Agreement, and

authorizing the Trustee to take all actions necessary or appropriate to effectuate the Settlement

Agreement.  A copy of the proposed order approving the Settlement Agreement is attached

hereto as **Exhibit B**.

## LEGAL ARGUMENT

24.     Settlements and compromises are favored and encouraged because they minimize

costs of litigation and further parties' interest in expediting administration of the bankruptcy

estate.  *See Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating*

*LLC)*, 478 F.3d 452, 455 (2d Cir. 2007).  Bankruptcy Rule 9019(a) governs the procedure for

seeking approval of settlements, and states in pertinent part: "On motion by the trustee and after

notice and a hearing, the court may approve a compromise or settlement."

25.     A bankruptcy court reviews a settlement to determine whether it is supported by

adequate consideration, fair and equitable, and in the best interests of the estate.  *In re*

*Ionosphere Clubs, Inc.,* 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd* 17 F. 3d 600 (2d Cir. 1994)

(citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968); affirming approval of settlement). The bankruptcy court does not need to conduct an independent investigation of the reasonableness of a settlement. *See In re McCoy*, 496 B.R. 678, 683 (Bankr. E.D.N.Y. 2011)(noting that the court need not rule on disputed issues of fact and law or "conduct a 'mini-trial' on the merits of the underlying litigation"). Rather, the bankruptcy court is only required to determine whether the settlement "fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 613 (2d Cir. 1983) quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *In re Best Prods. Co., Inc.*, 168 B.R. 35, 50-51 (Bankr. S.D.N.Y. 1994), *aff'd*, 69 F.3d 26 (2d Cir. 1995).

26.    In the Second Circuit, bankruptcy courts consider the following "interrelated factors" to assess whether a settlement is fair and reasonable:

1) the balance between the likelihood of success in the litigation compared to the present and future benefits offered by the settlement;

2) the prospect of complex and protracted litigation with its attendant expense, inconvenience, and delay, and the difficulties associated with collection of any judgment;

3) the paramount interests of the creditors, which includes the relative benefits to be received by members of any affected class and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

4) the degree to which the settlement is supported by other parties in interest;

5) the competency and experience of counsel supporting the settlement and the experience and knowledge of the bankruptcy court judge reviewing the settlement;

6) the nature and breadth of releases to be obtained by officers and directors; and

7) the extent to which the settlement is the product of arm's length bargaining.

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.

3d 452, 462 (2d Cir. 2007). *See also In re Worldcom, Inc.,* 347 B.R. 123, 127 (Bankr. S.D.N.Y.

2006).

27. The court can give more weight to one or more of the *Iridium* factors than to the

other factors. *See In re Motors Liquidation Co.,* 555 B.R. 355, 367 (Bankr. S.D.N.Y. 2016)

("Not all factors must point in the same direction, and not all factors must be given the same

weight."). In addition, the factors are not exclusive. *See id.* at 364 (discussing the seven non-

exclusive factors that a court should consider under *Iridium*).

28. The proposed Settlement Agreement far exceeds the lowest point in the range of

reasonableness under *W.T. Grant Co.* and the *Iridium* factors. Here, the Settlement Agreement

resolves all issues between the Trustee and the Defendants, prevents what could otherwise be

long and protracted litigation, avoids litigation risk and further expense to the Trust and its

beneficiaries, and is in the best interests of creditors and the estate. Accordingly, both the

*Iridium* factors and all other relevant considerations support approval of the Settlement

Agreement.

**A.     First Factor: The Present Benefits of the Settlement Agreement Are Clear in Light
         of the Future Risks Associated with Litigation.**

29. The first *Iridium* factor considers "the balance between the likelihood of success

in the litigation compared to the present and future benefits offered by the settlement." Here,

there are risks associated with prosecution of the D&O Action as with any action. The Trustee

bears the burden of proving bad faith, knowing violation of the law, or breach of fiduciary duty

resulting in personal gain. Based on available evidence, the Trustee is confident that litigation

would be successful at trial, but that would be approximately ten to eleven months from now and

all Parties would incur substantial litigation expense. The litigation expense through trial would

likely be very expensive based on (a) three months of intensive depositions of dozens of fact witnesses, (b) expert disclosures, reports, and depositions on issues of solvency, fiduciary duties, and drug compliance, and (c) trial preparation, briefing, and testimony.

30.    Aside from litigation expense, the Trustee recognizes that pursuit of the D&O Action to trial or through further discovery would likely cause the Defendants to exhaust available insurance proceeds based on the wasting nature of the Hiscox Policy, and a verdict of intentional wrongdoing would eliminate insurance coverage altogether.  Finally, assuming a substantial verdict in favor of the Trustee against the Defendants, there are risks and expenses associated with collection against the Defendants individually and jointly.

31.    The Settlement Agreement is in the best interests of the estate because it provides an immediate and substantial payment of $2.5 million, while eliminating the risks and expense of litigation and trial.  For the foregoing reasons, the first *Iridium* factor strongly supports approval of the Settlement Agreement.

**B.    Second Factor: The D&O Action Has Already Proven to Be Both Complex and Protracted and Settlement Avoids Any Difficulties Associated with Collection of a Judgment.**

32.    The second *Iridium* factor is "the prospect of complex and protracted litigation with its attendant expense, inconvenience, and delay, and the difficulties associated with collection of any judgment."  The D&O Action is clearly complex, involving separate communications between and among each of the Defendants and/or RDC's management or representatives over a period of approximately eight years, corporate minutes over the same period of time, and relating to issues of federal drug compliance and corporate governance.  Thus far, the parties have exchanged over 125,000 pages of documents and, absent this settlement, are scheduled to conduct three months of depositions before commencing expert discovery.  The Settlement Agreement is in the best interests of the estate because it avoids what would certainly

be protracted and costly litigation.  Furthermore, the settlement avoids any difficulties relating to collection of a judgment.  For these reasons, the second *Iridium* factor strongly supports approval of the Settlement Agreement.

**C.    Third Factor: The Settlement Agreement Is Clearly in the Paramount Interests of Creditors.**

33.    The third *Iridium* factor is "the paramount interests of the creditors, which includes the relative benefits to be received by members of any affected class and the degree to which creditors either do not object to or affirmatively support the proposed settlement." *In re Iridium Operating, LLC,* 478 F. 3d at 462.

34.    As discussed above, the Settlement Agreement results in a $2.5 million payment for the benefit of creditors as beneficiaries of the Trust, while reducing litigation expenses and risks.  Those risks include a possibility that the estate will recover nothing despite protracted and costly litigation if, for example, the Trustee is unsuccessful or if the Defendants lack recoverable assets.  As a result, the Trustee believes that the Settlement Agreement satisfies the paramount interests of creditors, and that creditors will fully support the resolution reached by the Parties. Michaelson Declaration, ¶¶ 6-7.

35.    For the foregoing reasons, the third *Iridium* factor strongly supports approval of the Settlement Agreement.

**D.    Fourth Factor: The Trustee Does Not Anticipate Objections to Settlement of the D&O Action.**

36.    The fourth *Iridium* factor is "the degree to which the settlement is supported by other parties in interest." *Id.*  The Trustee has no information regarding objections by other parties in interest or whether they will support the Settlement Agreement.  To date, no parties have sought to intervene in the D&O Action for purposes of discovery or otherwise.

Considering the posture of the D&O Action and the terms of the Settlement Agreement, the Trustee does not anticipate any objections to the settlement.

37. Accordingly, the Trustee believes the fourth *Iridium* factor is neutral.

**E.  Fifth Factor: The Trustee's Counsel and the Court Are Experienced, Knowledgeable, and Fully Competent to Determine that the Settlement Agreement Is in the Best Interest of the Estate.**

38. The fifth *Iridium* factor is "the competency and experience of counsel supporting the settlement and the experience and knowledge of the bankruptcy court judge reviewing the settlement." *Id.* Here, the Trustee's counsel and the Court are significantly experienced and knowledgeable and, therefore, fully competent to determine that the Settlement Agreement is in the best interest of the estate. The Defendants are individually and jointly represented by competent counsel who are experienced in matters of complex litigation.

39. Pachulski Stang Ziehl & Jones LLP ("**PSZJ**") represents the Trustee and has extensive experience with bankruptcy issues and complex litigation relating to bankruptcies. PSZJ participated in the mediation and negotiations with the Defendants that led to the Settlement Agreement and believes that the settlement is reasonable and beneficial to the estate for the reasons discussed herein.

40. In addition to experienced counsel, the Bankruptcy Court is familiar with the complexity of coverage issues based on the Complaint, Answers, and initial and amended trial scheduling orders. *See, e.g.,* Adv. Docket Nos. 87 and 97 (scheduling orders).

41. For the foregoing reasons, the fifth *Iridium* factor supports approval of the Settlement Agreement.

**F.  Sixth Factor: The Settlement Agreement Provides Limited Mutual Releases Between the Parties Solely Based on the Claims Asserted in the D&O Action.**

42.     The sixth *Iridium* factor is "the nature and breadth of releases to be obtained by officers and directors." *Id.* The very nature of the D&O Action is the conduct of directors and officers. The Settlement Agreement releases the Directors from known and unknown claims solely based on the claims asserted in the D&O Action and precludes further claims by the Parties for payment from the Hiscox Policy. Under the Settlement Agreement, there is no release of trade debt or accounts receivable owed to the estate by the Defendants or their pharmacies. The Trustee, on behalf of the estate, is not waiving, reducing, or eliminating claims that are unrelated to the facts at issue in the D&O Action.

43.     Accordingly, the sixth *Iridium* factor supports approval of the Settlement Agreement.

## G.     Seventh Factor: The Settlement Agreement Is the Product of Arms-length Negotiation.

44.     The seventh and final *Iridium* factor is "the extent to which the settlement is the product of arm's length bargaining." *Id.* The Settlement Agreement is plainly a product of hard fought negotiations and arm's length bargaining.

45.     In addition to the aforementioned counsel representing the Trustee, the Defendants were represented in settlement negotiations by four separate law firms with experience representing defendants in bankruptcy and/or complex litigation. In addition, the Defendants' insurer, Hiscox, participated in the mediation and settlement negotiations and was represented by Peabody & Arnold. The Defendants, Hiscox, and the Trustee are litigation adversaries and do not suffer any conflicts of interest.

46.     For these reasons, the final *Iridium* factor strongly supports approval of the Settlement Agreement.

## SUMMARY

47.     For all the foregoing reasons, the proposed Settlement Agreement exceeds the lowest point in the range of reasonableness under *W.T. Grant Co.* and the *Iridium* factors. Here, the Settlement Agreement resolves all issues related to the D&O Action and the Hiscox Policy as between the Trustee and the Defendants, prevents what could otherwise be expensive and protracted litigation, and is in the best interests of creditors and the estate. Accordingly, the Trustee respectfully submits that the Settlement Agreement is a fair and reasonable resolution of the litigation against the Defendants, and requests that it be approved by this Court.

## NOTICE OF MOTION

48.     Notice of this Motion will be served on (i) the Office of the United States Trustee by ECF, (ii) counsel for all of the Defendants, (iii) counsel for Hiscox, and (iv) all parties that have filed a request for service of papers under Bankruptcy Rule 2002.

## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit B**: (i) approving the Settlement Agreement in its entirety, (ii) authorizing the Parties to take all actions necessary or appropriate to effectuate the Settlement Agreement, and (iii) granting such other and further relief that the Court deems appropriate.

Date: January 10, 2024                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Gail S. Greenwood*
Ilan D. Scharf (NY Bar No. 4042107)
Jason S. Pomerantz
Gail S. Greenwood
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email:    ischarf@pszjlaw.com

jpomerantz@pszjlaw.com
ggreenwood@pszjlaw.com

*Counsel to Advisory Trust Group, LLC, in its*
*capacity as Trustee of the RDC Liquidating Trust*

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL LIMITED RELEASES

This Settlement Agreement and Mutual Limited Releases ("Agreement") is entered into as of the Effective Date by and between, on the one hand, Advisory Trust Group, LLC, solely in its capacity as Liquidating Trustee of the RDC Liquidating Trust (the "Trustee") for the bankruptcy estate of Rochester Drug Co-operative, Inc. ("RDC" or the "Debtor"), and, on the other hand, Laurence F. Doud III ("Doud"), Donald Arthur, Stephen Giroux, Christopher Casey, Garry Mrozek, Richard Klenk, Sherwood Klein, Joseph Lech, Boris Mantell, Joseph Scott Miskovsky, and Paul Pagnotta (collectively, the "Directors") (Doud and the Directors are hereinafter collectively referred to as "Defendants"). For purposes of this Agreement, the Trustee and Defendants are each a "Party", and collectively the "Parties."

## RECITALS

**WHEREAS**, on March 12, 2020, RDC filed a voluntary petition in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"), captioned *In re Rochester Drug Co-Operative, Inc.*, Case No. 20-20230, seeking relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Proceeding");

**WHEREAS,** on February 26, 2021, the *Second Amended Chapter 11 Plan of Liquidation* [Bankr. Docket No. 1145] (the "Plan") was confirmed by the Bankruptcy Court pursuant to its *Decision and Order and Findings of Fact and Conclusions of Law Confirming the Debtor's Second Amended Chapter 11 Plan of Liquidation dated January 15, 2021* [Bankr. Docket No. 1256] (the "Confirmation Order");

**WHEREAS**, pursuant to the Plan, the Confirmation Order, and that certain Liquidating Trust Agreement and Declaration of Trust (attached to the Plan), all property of RDC's estate, including Causes of Action (as defined in the Plan), became property of the Liquidating Trust. Pursuant to section 5.6 of the Plan, the Trustee is vested with the power and authority to manage

Settlement Agreement and Releases – Page 1 of 13

such property on behalf of the Liquidating Trust, including the power and authority to litigate, defend, settle, or withdraw Causes of Action, as well as the power to assign, transfer, compromise, and settle such actions;

**WHEREAS**, on March 8, 2022, the Trustee filed an adversary proceeding in the Bankruptcy Court, captioned *Advisory Trust Group, LLC v. Doud, et al.,* Case No. 2:22-2073-PRW (the "D&O Action"), asserting causes of action for Breach of Fiduciary Duty, Wrongful Declaration of Dividend, Avoidance and Recovery of Constructively Fraudulent Transfers, Avoidance and Recovery of Intentional Fraudulent Transfers, and Unjust Enrichment. The D&O Action is based on alleged acts and omissions of the Defendants prior to the bankruptcy in connection with RDC's distribution and sale of opioids and the company's violations of the Controlled Substances Act, as described in a Deferred Prosecution Agreement and associated agreements entered on April 23, 2019.

**WHEREAS**, Hiscox Insurance Company, Inc. issued Private Company Management Liability Insurance Policy No. UVA1901769.17 to RDC for the policy period of March 8, 2017 to March 8, 2018 (the "Hiscox Policy"), which was subject to claims by the Trustee on behalf of the Debtor and by the Defendants on behalf of themselves individually;

**WHEREAS**, the Parties desire to compromise, settle, and resolve any and all current and future disputes, claims, actions, suits, demands, and causes of action regarding, arising out of, or relating in any way to the D&O Action and the Hiscox Policy.

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants contained herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.  **Bankruptcy Court Approval.** Notwithstanding section 5.6 of the Plan, pursuant to which the Trustee may settle Causes of Action without further Bankruptcy Court approval, the Defendants and Hiscox have requested that the Trust obtain approval of the Bankruptcy Court as a condition precedent to any obligation of the Parties under this Agreement. Such approval ("Approval") shall be deemed to have occurred if, and when:

    a.  the Bankruptcy Court has entered an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving this Agreement (the "9019 Order"); and

    b.  the 9019 Order has not been reversed, stayed, modified, or amended, and as to which (i) the time to appeal the 9019 Order, or petition for certiorari or move for re-argument, rehearing, or a new trial has expired and no appeal, petition for certiorari, or motion for re-argument, rehearing, or a new trial, respectively, has been timely filed (which time period shall mean, with respect to motions to correct such 9019 Order under Rule 9024 of the Federal Rules of Bankruptcy Procedure, Rule 60 of the Federal Rules of Civil Procedure, or otherwise, fourteen (14) days after the entry of such 9019 Order) whereby the 9019 Order has become a final, non-appealable order.

The Trustee may, but under no circumstances shall be required to, appeal or respond to any appeal of an order that fails to approve this Agreement. Absent the Bankruptcy Court's approval, this Agreement shall be of no force or effect and all rights and obligations of the Parties prior to entry into this Agreement shall be restored.

2.  **Settlement Payment.** Subject to paragraph 1, and in consideration of the mutual agreements and covenants herein, the Defendants shall pay the Trustee a total amount of two million five hundred thousand dollars ($2,500,000.00) (the "Settlement Payment") within ten (10) business days after Approval in accordance with wire instructions and a W-9 Form to be provided by the Trustee.

3.  **Dismissal of D&O Action.** Within ten (10) business days after receipt of the Settlement Payment described in paragraph 2 above, the Trustee shall file a Request for Dismissal

of the D&O Action, with prejudice, pursuant to Federal Rules of Bankruptcy Procedure 7041 and Federal Rule of Civil Procedure 41(a)(2). Notwithstanding any counterclaim filed by any Defendant in the D&O Action, no signatory to this Agreement shall object to the Trustee's Request for Dismissal.

4. **Limited Release by the Trustee.** Effective upon the Settlement Payment having been made, and in consideration of the mutual agreements and covenants in this Agreement, the Trustee, on behalf of the Debtor, the Estate, and to the extent permitted under the Plan or otherwise by law or in equity, each of their respective, employees, agents, representatives, heirs, successors, and assigns (the foregoing persons or entities, collectively, the "Trust Releasing Parties") does hereby release, acquit, and forever discharge the Defendants and their current and former agents, representatives, heirs, successors, assigns, insurers, and reinsurers, as well as any and all persons and entities that are Insureds as defined in this Hiscox Policy (collectively, the "Released Defendant Parties") of and from any and all actual or potential claims, counterclaims, actions, causes of action, suits, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, rights of action, obligations, judgments, or demands whatsoever, in law or in equity, now existing or hereafter arising, whether contractual, compensatory, extra-contractual, bad-faith, intentional, fraudulent, punitive, exemplary, statutory, in tort, or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, that the Trust Releasing Parties had, have, or may have in the future against the Released Defendant Parties solely based on the factual matters asserted in the D&O Action, and any and all claims that could be asserted by the Trust against Hiscox for payment from the Hiscox Policy; provided, however, that the release shall not affect the Trustee's rights regarding the enforcement of the Defendants' obligations pursuant to this Agreement. For the avoidance of doubt, nothing herein shall release or eliminate the Trustee's

right to pursue trade debt owed to RDC from the Defendants or their pharmacies, including, without limitation, the pending action entitled, *Advisory Trust Group LLC v. Rosenkrans Pharmacy Inc., et al.,* Sup. Ct. of New York, County of Monroe, case number E2023 009815, nor shall this Agreement affect any defenses thereto. For the further avoidance of doubt, by and through this Settlement Agreement, to the extent such claims relate to or arise from the patronage dividend distributed by RDC in June, 2017, the Trustee intends to compromise, settle, resolve and release any and all claims contending that the Released Defendant Parties and/or their pharmacies: (i) received any transfer (whether actually or constructively fraudulent, or otherwise legally improper), or (ii) were unjustly enriched in connection with the patronage dividend.

5.      **Limited Release by the Defendants.**  Effective upon the Settlement Payment having been made, and in consideration of the mutual agreements and covenants in this Agreement, the Defendants on behalf of themselves and each of their agents, representatives, heirs, successors, and assigns (collectively, the "Defendant Releasing Parties") does hereby release, acquit, and forever discharge the Trustee, the Debtor, the Estate, and their respective current and former directors, officers, employees, agents, representatives, heirs, successors, and assigns (collectively, the "Released Trust Parties") of and from any and all actual or potential claims, counterclaims, actions, causes of action, suits, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, rights of action, obligations, judgments, or demands whatsoever, in law or in equity, now existing or hereafter arising, whether contractual, compensatory, extra-contractual, bad-faith, intentional, fraudulent, punitive, exemplary, statutory, in tort, or otherwise, whether known or unknown, suspected or unsuspected, asserted or unasserted, that the Defendant Releasing Parties had, have, or may have in the future against the Released Trust Parties solely based on claims asserted in the D&O Action, and any and all claims that could

be asserted by the Trust against Hiscox for payment from the Hiscox Policy; provided, however, that the release shall not affect the Defendants' rights regarding the enforcement of the Trustee's obligations pursuant to this Agreement. For the avoidance of doubt, nothing herein shall release or eliminate the right of Stephen Giroux or any other defendant in the pending action entitled *Advisory Trust Group LLC v. Rosenkrans Pharmacy Inc., et al.,* Sup. Ct. of New York, County of Monroe, case number E2023 009815, from asserting any defenses or from defending any claims asserted against them therein.

6. **Hiscox Policy Termination and Exhaustion.** Each Party understands, acknowledges, and agrees that, effective upon the Settlement Payment having been made, and in further consideration of the mutual agreements and covenants contained herein, this Agreement shall result in the termination of the Parties' rights under the Hiscox Policy to the fullest extent permitted by law or in equity; and the rights of the Parties and the limits of liability potentially available to the Parties under the Hiscox Policy shall be deemed fully exhausted.

7. **No Admissions.** Each Party understands, acknowledges, and agrees that, by entering into this Agreement, they do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings or litigation and expressly disclaim any liability to any other party or person. Accordingly, this Agreement carries no precedential value with regard to factual matters or the liability of any person, in this or any other matter.

8. **Unknown Claims or Facts.** Each Party understands, acknowledges, and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each Party expressly assumes the risk of such difference in fact and agrees that this Agreement shall be and will remain effective notwithstanding any such difference in fact. Additionally, each Party specifically acknowledges that it may have rights, claims, or causes of

action, or may have sustained damages, losses, costs, charges, attorneys' and other fees, and expenses that are presently unknown and unsuspected, and that they may sustain additional amounts in the future.

9. **Notices.** Each Party understands, acknowledges, and agrees that, in the event notice shall be required under this Agreement for any reason, such shall be in writing and delivered via email or by Overnight Mail (provided that any notice by Overnight Mail is also emailed to the persons listed below) addressed as follows:

| | |
|---|---|
| <u>Trustee's counsel:</u> | Pachulski Stang Ziehl & Jones LLP<br>780 Third Avenue, 34th Floor<br>New York, NY 10017<br>Attention: Ilan D. Scharf, Esq.<br>ischarf@pszjlaw.com |
| <u>Pagnotta and Klein's Counsel:</u> | Woods Oviatt Gilman LLP<br>1900 Bausch & Lomb Place<br>Rochester, NY 14604<br>Attention: William E. Brueckner, Esq.<br>wbrueckner@woodsoviatt.com |

[continued on next page]

Case 2-20-20230-PRW, Doc 2132, Filed 01/10/24, Entered 01/10/24 13:03:03, Description: Main Document , Page 23 of 42

Mrozek, Mantell, Lech, and Miskovsky's Counsel: Brennan Manna & Diamond, LLC
                                                Attn: Amanda L. Waesch
                                                75 E. Market St.
                                                Akron, OH 44308
                                                alwaesch@bmdllc.com

Arthur, Giroux and Klenk's Counsel: Kenney Shelton Liptak Nowak, LLP
                                                Attn: Jeffrey A. Carlino
                                                233 Franklin Street
                                                Buffalo, New York 14202
                                                jacarlino@kslnlaw.com

Casey's Counsel:                        Davidson Fink, LLP
                                                Attn: Richard N. Franco
                                                400 Meridian Centre Blvd., Suite 200
                                                Rochester, NY 14618
                                                rfranco@davidsonfink.com

Doud's Counsel:                         The Janey Law Firm P.C.
                                                Attn: Derrelle M. Janey
                                                111 Broadway, Suite 701
                                                New York, NY 10006
                                                djaney@thejaneylawfirm.com

Copies to:                               Gail Greenwood (ggreenwood@pszjlaw.com)
                                                Jason Pomerantz (jspomerantz@pszjlaw.com)
                                                Warren B. Rosenbaum (wrosenbaum@woodsoviatt.com)
                                                Amanda L. Waesch (alwaesch@bmdllc.com)
                                                Aalok J. Karambelkar (ajkarambelkar@kslnlaw.com)

10.     **Acknowledgement of Terms.** Each Party represents, warrants, and covenants that

he, she, they, or it has or have read and understand the terms of this Agreement, have consulted

with his, her, their, or its respective counsel, and understand and acknowledge the significance and

consequence of each such term. No Party is relying on information provided by or from the other

Party in entering into this Agreement and there are no duties of disclosure by either Party to the

other. This Agreement was executed after arm's-length negotiations between the Parties and their

respective counsel, and reflects the conclusion of each Party that this Agreement is in his, her,

their, or its best interests. Each Party represents, warrants, and covenants that the person executing

Settlement Agreement and Releases – Page 8 of 13

this Agreement on his, her, their, or its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this settlement and shall survive execution of this Agreement.

11.     **Advice of Counsel.** Each Party represents, warrants, and covenants that he, she, they, or it has or have been represented by counsel of their own choice in the negotiations leading up to the execution of this Agreement, have read this Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same.  The Parties have had the Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Agreement and its nature and effect.  The Parties further represent that they are entering into this Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

12.     **Attorneys' Fees and Costs.** Each Party understands, acknowledges, and agrees that they shall each bear their own attorneys' fees and expenses in connection with all matters relating to the preparation and execution of this Agreement, satisfaction of any condition precedent to this Agreement, enforcement of this Agreement, and in connection with the D&O Action.

13.     **No Assignment.** Each Party represents, warrants, and covenants that he, she, or it has not assigned to any third party any of the claims and rights that are the subject of this Agreement.

14.     **Further Assurances.** Each Party shall execute any and all additional documents and take all additional steps which may be appropriate and/or necessary to consummate and effectuate this Agreement.

Settlement Agreement and Releases – Page 9 of 13

15.     **Entire Agreement.** Each Party understands, acknowledges, and agrees that this Agreement sets forth the entire agreement between the Parties with respect to the subject matter of this Agreement, that it supersedes all prior agreements and understandings of the Parties, and that this Agreement shall not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a writing duly executed by all of the Parties.

16.     **Waiver of Term or Breach.** Each Party understands, acknowledges, and agrees that any term of this Agreement, or any breach thereof, may be waived only by a writing signed by all of the Parties. No delay or failure by a Party to exercise any right under this Agreement shall operate to waive any rights under this Agreement in the absence of a signed writing. Waiver of any one breach shall not be deemed to constitute a waiver of any other breach of the same or any other provision of this Agreement.

17.     **Severability.** Each Party understands, acknowledges, and agrees, in the event that, once all conditions precedent to this Agreement have been satisfied, any of the provisions of this Agreement is deemed to be invalid and unenforceable, such provision(s) shall be severed from the remainder of this Agreement only if and to the extent agreed upon by the Parties in writing and, in any event, shall not cause the invalidity and/or unenforceability of the remaining provisions of this Agreement.

18.     **Neutral Interpretation.** Each Party understands, acknowledges, and agrees that this Agreement shall not be construed in favor of any particular Party, but shall be construed as if it were drafted by all Parties equally.

19.     **Division and Headings.** Each Party understands, acknowledges, and agrees that the division of this Agreement into sections and subsections and the use of captions and headings

in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

20. **Execution of Documents.** Each Party understands, acknowledges, and agrees that this Agreement may be executed in one or more counterparts, and in both original form and one or more copies, each of which shall be deemed to be an original, but all of which shall be deemed to be and constitute one and the same instrument.

21. **Governing Law/Forum Selection.** Each Party understands, acknowledges, and agrees that the Bankruptcy Court shall have jurisdiction to interpret, effectuate, and enforce the terms of this Agreement and the Parties expressly consent to the exercise of personal jurisdiction for that limited purpose. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to its conflict-of-law principles.

[continued on next page]

22. **Effective Date.** Each Party understands, acknowledges, and agrees that this Agreement shall become effective (the "Effective Date") on the date that the last signatory duly executes the Agreement.

**WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL. WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) set forth below.

Advisory Trust Group, LLC

*Robert N. Michaelson*
_____     Dated: ~~December __, 2023~~
Name: _____Robert Michaelson_____                 January 9, 2024
Its: _____Co-managing Member_____

Donald Arthur

_____     Dated: December __, 2023


Stephen Giroux

_____     Dated: December __, 2023


Christopher Casey

_____     Dated: December __, 2023


Garry Mrozek

_____     Dated: December __, 2023


Richard Klenk

_____     Dated: December __, 2023


Settlement Agreement and Releases – Page 12 of 13

once all conditions precedent to this Agreement have been satisfied, any of the provisions of this Agreement is deemed to be invalid and unenforceable, such provision(s) shall be severed from the remainder of this Agreement only if and to the extent agreed upon by the Parties in writing and, in any event, shall not cause the invalidity and/or unenforceability of the remaining provisions of this Agreement.

18. **Neutral Interpretation.** Each Party understands, acknowledges, and agrees that this Agreement shall not be construed in favor of any particular Party, but shall be construed as if it were drafted by all Parties equally.

19. **Division and Headings.** Each Party understands, acknowledges, and agrees that the division of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Agreement.

20. **Execution of Documents.** Each Party understands, acknowledges, and agrees that this Agreement may be executed in one or more counterparts, and in both original form and one or more copies, each of which shall be deemed to be an original, but all of which shall be deemed to be and constitute one and the same instrument.

21. **Governing Law/Forum Selection.** Each Party understands, acknowledges, and agrees that the Bankruptcy Court shall have jurisdiction to interpret, effectuate, and enforce the terms of this Agreement and the Parties expressly consent to the exercise of personal jurisdiction for that limited purpose. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to its conflict of -law principles.

[continued on next page]

22. **Effective Date.** Each Party understands, acknowledges, and agrees that this Agreement shall become effective (the "Effective Date") on the date that the last signatory duly executes the Agreement.

**WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL. WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) set forth below.

Advisory Trust Group, LLC

Dated: December ___, 2023

Name:

Its:

Donald Arthur

Dated: December ___, 2023

Stephen Giroux

Dated: December ___, 2023

Christopher Gago

22.    **Effective Date.** Each Party understands, acknowledges, and agrees that this Agreement shall become effective (the "Effective Date") on the date that the last signatory duly executes the Agreement.

**WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL. WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) set forth below.

Advisory Trust Group, LLC

_____     Dated: December ___, 2023
Name: _____
Its: _____

Donald Arthur

_____     Dated: December ___, 2023

Stephen Giroux

_____     Dated: December 29, 2023

Christopher Casey

_____     Dated: December ___, 2023

Garry Mrozek

_____     Dated: December ___, 2023

Richard Klenk

_____     Dated: December ___, 2023

Settlement Agreement and Releases – Page 12 of 3

22.    **Effective Date.**  Each Party understands, acknowledges, and agrees that this Agreement shall become effective (the "Effective Date") on the date that the last signatory duly executes the Agreement.

**WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL. WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.**

**IN WITNESS WHEREOF,** the Parties have executed this Agreement on the date(s) set forth below.

Advisory Trust Group, LLC

_____          Dated: December __, 2023
Name: _____
Its: _____

Donald Arthur

_____          Dated: December __, 2023

Stephen Giroux

_____          Dated: December __, 2023

Christopher Casey

_____          Dated: December __, 2023

Garry Mrozek

_____          Dated: December __, 2023

Richard Klenk

_____          Dated: December __, 2023

Settlement Agreement and Releases – Page 12 of 3

22. **Effective Date.** Each Party understands, acknowledges, and agrees that this Agreement shall become effective (the "Effective Date") on the date that the last signatory duly executes the Agreement.

**WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL. WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) set forth below.

Advisory Trust Group, LLC

_____     Dated: December ___, 2023
Name: _____
Its: _____

Donald Arthur

_____     Dated: December ___, 2023

Stephen Giroux

_____     Dated: December ___, 2023

Christopher Casey

_____     Dated: December ___, 2023

Garry Mrozek

*GARRY MROZEK*
GARRY MROZEK (Jan 2, 2024 14:12 EST)     Dated: Jan 2, 2024
_____

Richard Klenk

_____     Dated: December ___, 2023

Settlement Agreement and Releases – Page 12 of 13

21.  **Governing Law/Forum Selection.**  Each Party understands, acknowledges, and agrees that the Bankruptcy Court shall have jurisdiction to interpret, effectuate, and enforce the terms of this Agreement and the Parties expressly consent to the exercise of personal jurisdiction for that limited purpose. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to its conflict-of-law principles.

[continued on next page]

☐

22.  **Effective Date.**  Each Party understands, acknowledges, and agrees that this Agreement shall become effective (the "Effective Date") on the date that the last signatory duly executes the Agreement.

**WE, THE UNDERSIGNED, HEREBY CERTIFY THAT WE HAVE READ THIS ENTIRE AGREEMENT AND HAVE HAD THE OPPORTUNITY TO HAVE TERMS USED AND THE CONSEQUENCES HEREOF EXPLAINED BY COUNSEL.  WE FULLY UNDERSTAND ALL OF THE TERMS AND CONSEQUENCES OF THIS AGREEMENT AND BASED UPON SUCH, EXECUTE IT.**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement on the date(s) set forth below.

Advisory Trust Group, LLC

Dated:     December  __,
2023
Name:
Its:

Donald Arthur

Dated:     December  __,
2023

Stephen Giroux

Dated:     December  __,
2023

Christopher Casey

Dated:     December  __,
2023

Garry Mrozek

Dated:     December  __,
2023

Richard Klenk

2023

Sherwood Klein

_____ Dated: December 31, 2023

Joseph Lech

_____ Dated: December ___, 2023

Boris Mantell

_____ Dated: December ___, 2023

Joseph Scott Miskovsky

_____ Dated: December ___, 2023

Paul Pagnotta

_____ Dated: December ___, 2023

Laurence F. Doud III

_____ Dated: December ___, 2023

Sherwood Klein

_____        Dated: December __, 2023


Joseph Lech

*Joseph Lech*
Joseph Lech (Jan 4, 2024 07:50 EST)
_____        Dated: **Jan 4, 2024**


Boris Mantell

_____        Dated: _____


Joseph Scott Miskovsky

*Joseph S. Miskovsky*
Joseph S. Miskovsky (Jan 2, 2024 12:01 EST)
_____        Dated: **Jan 2, 2024**


Paul Pagnotta

_____        Dated: December __, 2023


Laurence F. Doud III

_____        Dated: December __, 2023


4870-8028-3802, v. 1

Sherwood Klein

_____     Dated: December ___, 2023


Joseph Lech

_____     Dated: December ___, 2023


Boris Mantell

_~~Boris Mantell~~_____     Dated: _1/5/74_


Joseph Scott Miskovsky

_____     Dated: December ___, 2023


Paul Pagnotta

_____     Dated: December ___, 2023


Laurence F. Doud III

_____     Dated: December ___, 2023


4872-3006-5050, v. 1

Sherwood Klein

_____    Dated: December __, 2023


Joseph Lech

_____    Dated: December __, 2023


Boris Mantell

_____    Dated: December __, 2023


Joseph Scott Miskovsky

_____    Dated: December __, 2023


Paul Pagnotta

_____    Dated: December 31, 2023


Laurence F. Doud III

_____    Dated: December __, 2023

Sherwood Klein

_____          Dated: December ___, 2023


Joseph Lech

_____          Dated: December ___, 2023


Boris Mantell

_____          Dated: December ___, 2023


Joseph Scott Miskovsky

_____          Dated: December ___, 2023


Paul Pagnotta

_____          Dated: December ___, 2023


Laurence F. Doud III

_____          Dated: ~~December ___, 2023~~ January 5, 2024

*On behalf of Laurence F. Doud, III,*
*Durelle M Jancy, Esq.*
*Council of record*

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| ROCHESTER DRUG CO-OPERATIVE, INC., | ) Case No. 20-20230 (PRW) |
| | ) |
| Debtor. | ) |
| | ) |

### ORDER APPROVING SETTLEMENT AGREEMENT
### AND MUTUAL LIMITED RELEASES BETWEEN THE RDC LIQUIDATING
### TRUST AND FORMER OFFICERS AND DIRECTORS OF THE DEBTOR

Upon consideration of the *Motion Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure for Entry of an Order Approving a Settlement Agreement and Mutual Limited Releases Between the RDC Liquidating Trust and Former Directors and Officers of the Debtor* [Docket No. ___] (the "**Motion**")[1] filed by Advisory Trust Group, LLC (the "**Trustee**"), in its capacity as Trustee of the RDC Liquidating Trust (the "**Trust**"), and seeking entry of an order approving the *Settlement Agreement and Mutual Limited Releases* ("**Settlement Agreement**") attached as Exhibit A to the Motion,

**NOW, THEREFORE, IT IS HEREBY FOUND THAT**:

1.      The Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334,consideration of the Motion and the relief requested in the Motion is a core proceeding under to 28 U.S.C. § 157(b), and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409;

2.      The statutory predicates for the relief sought in the Motion are § 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and that such relief is further authorized by the Plan;

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

3. Proper, timely, adequate, and sufficient notice of the Motion and the settlement contemplated thereby has been provided in accordance with §§102(1) and 105 of the Bankruptcy Code and Bankruptcy Rules 2002 and 9019, which notice adequately described the nature of the relief requested in the Motion and which notice was good, sufficient, and appropriate under the particular circumstances, and no other or further notice of the Motion and the settlement contemplated thereby, or of the entry of this Order, is required;

4. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee; (ii) counsel for Laurence F. Doud III, Donald Arthur, Stephen Giroux, Christopher Casey, Garry Mrozek, Richard Klenk, Sherwood Klein, Joseph Lech, Boris Mantell, Joseph Scott Miskovsky, and Paul Pagnotta (the "**Defendants**"); (iii) counsel for Hiscox Insurance Company, Inc., and (iv) all parties that have filed a request for service of papers under Bankruptcy Rule 2002;

5. The Settlement Agreement is entered between the Defendants and the Trustee. The Trustee has standing to commence and prosecute the underlying claims and full power and authority to consummate the settlement contemplated by the Motion and the Settlement Agreement attached thereto;

6. The settlement contemplated by the Settlement Agreement must be approved and consummated promptly in order to preserve the value of the settlement for the benefit of the estate;

7. The Trustee has advanced sound business justifications for seeking to resolve the D&O Action as set forth in the Motion under the terms and conditions set forth therein, and as more particularly set forth in the Settlement Agreement, and the settlement under those terms

and conditions is both a reasonable exercise of the Trustee's business judgment and in the best interests of the estate and its creditors; and

8. On balance, the Settlement Agreement is supported by the interrelated factors set forth in *In re Iridium Operating LLC,* 478 F. 3d 452, 462 (2d Cir. 2007), and is fair, reasonable, and in the best interests of the estate and its creditors for the reasons set forth in the Motion;

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, upon the Motion of the Trustee and pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, other applicable law, and the terms of the Plan, that**:**

1. The Motion is GRANTED;

2. The Settlement Agreement is approved in its entirety;

3. All objections to the Motion or the relief requested therein, if any, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled;

4. The Parties to the Settlement Agreement are authorized to take all actions necessary or appropriate to effectuate the Settlement Agreement; and

5. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.


Dated: _____, 2024
      Rochester, New York

                                      _____
                                        Hon. Paul R. Warren
                                        United States Bankruptcy Judge